UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KERRIGAN, LORI MIKOVICH
and RYAN M. VALLI, individually, and on
behalf of all others similarly situated,

        Plaintiffs,

v.

VISALUS, INC., a corporation, et al.,

        Defendants.

Case No. 2:14-cv-12693
Hon. Matthew F. Leitman

(ORAL ARGUMENT
REQUESTED)

## VISALUS DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants ViSalus, Inc. ("ViSalus"), ViSalus Holdings, LLC, Ryan Blair, Blake Mallen, Todd Goergen, and Robert Goergen, Sr. (collectively, "ViSalus Defendants" or "Defendants") move to dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure for the reasons set forth in the attached Brief.

Counsel for the ViSalus Defendants held a telephone conference on October 22, 2014 with counsel for Plaintiffs in which counsel for the ViSalus Defendants explained the nature of its motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, the ViSalus Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  October 27, 2014                    Respectfully submitted,

                                            By:   /s/Nicholas B. Gorga
                                            Attorney for the ViSalus Defendants

QUARLES & BRADY LLP                         HONIGMAN MILLER SCHWARTZ
                                            AND COHN LLP

James A. Ryan (AZ Bar #009253)              Nicholas B. Gorga (P72297)
Kevin D. Quigley (AZ Bar #015972)           Mitra Jafary-Hariri (P74460)
Edward A. Salanga (AZ Bar #020654)          660 Woodward Avenue
Brian A. Howie (AZ Bar #026021)             2290 First National Building
*All Admitted to Practice in ED MI*         Detroit, MI  48226-3506
2 North Central Avenue                      Telephone Number: (313) 465-7640
Renaissance One                             Fax Number: (313) 465-7641
Phoenix, AZ 85004                           E-Mail: ngorga@honigman.com
Telephone Number: (602) 229.5200            mjafary-hariri@honigman.com
Fax Number: (602) 229.5690
E-Mail: james.ryan@quarles.com
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KERRIGAN, LORI MIKOVICH
and RYAN M. VALLI, individually, and on
behalf of all others similarly situated,

        Plaintiffs,

v.

VISALUS, INC., a corporation, et al.,

        Defendants.

Case No. 2:14-cv-12693
Hon. Matthew F. Leitman

(ORAL ARGUMENT
REQUESTED)

## <u>VISALUS DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

The ViSalus Defendants submit this Brief in Support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED............................................................ viii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES............................x

INTRODUCTION ........................................................................................1

LEGAL STANDARD....................................................................................3

I.    THE COMPLAINT FAILS AS TO ALL OF THE VISALUS
      DEFENDANTS BECAUSE IT DOES NOT IDENTIFY WHICH
      DEFENDANT ALLEGEDLY COMMITTED WHICH WRONG. ..............4

II.   PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS PLAUSIBLY
      DEMONSTRATING THAT VISALUS IS A PYRAMID SCHEME............5

      A.    The Test To Distinguish Legal MLMs From Pyramid
            Schemes. ........................................................................6

      B.    Plaintiffs Have Not Pled Plausible, Factual Allegations
            That  ViSalus IPs Are Paid Primarily For Recruiting,
            Rather Than For  The Sale Of Products To Ultimate
            Users..............................................................................9

      C.    The Allegedly Unenforced "Amway Rules" Are
            Irrelevant At The  Pleading Stage, And The "Market
            Saturation" Allegations Are  Conclusory. ................................14

III.  THE COMPLAINT FAILS TO PLEAD ACTIONABLE CIVIL
      RACKETEERING CLAIMS (COUNTS I—III). .........................................15

      A.    As A Matter Of Law, RICO Claims Cannot Be Based On
            Allegations That Plaintiffs Invested And Lost Money In
            A  Pyramid Scheme. ..............................................................16

      B.    Plaintiffs Fail To Plead Plausible Facts Demonstrating
            That Any  Of The ViSalus Defendants Committed A
            Single Act Of  "Racketeering Activity," Much Less A
            "Pattern" Of Such Acts. ........................................................20

C.    Plaintiffs Fail To Plead An Actionable Claim For Relief Under  RICO Section 1962(a)....................................................24

D.    Plaintiffs Fail To Plead An Actionable Claim For RICO Conspiracy Under Section 1962(d)............................................25

IV.    PLAINTIFFS' STATE LAW CLAIMS ALL FAIL (COUNTS IV-IX)..................................................................................................25

A.    Michigan Consumer Protection Act (Count IV).......................26

B.    Plaintiffs Fail To State An Unjust Enrichment Claim (Count V). .................................................................................28

C.    Plaintiffs Fail To State A Conversion Claim (Count VI). ........29

D.    Plaintiffs Fail To State A Civil Conspiracy Claim (Count VII)..................................................................................30

E.    Plaintiffs Fail To State A Claim Under The Michigan Franchise  Investment Law (Count VIII)..................................31

F.    Plaintiffs Fail To State A Claim For An Accounting (Count IX). ................................................................................32

G.    Plaintiffs Are Not Entitled To A Constructive Trust (Count IX). ................................................................................33

CONCLUSION .........................................................................................34

# TABLE OF AUTHORITIES

## CASES

*In re Amway Corp.*,
   93 F.T.C. 618 (1979) ............................................................................... 7

*APJ Assocs., Inc. v. N. Am. Philips Corp.*,
   317 F.3d 610 (6th Cir. 2003) ...................................................................28

*Aries Aluminum Corp. v. King*,
   1999 WL 801523 (6th Cir. Sept. 30, 1999)..........................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................3, 6

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
   189 F.3d 321 (3d Cir. 1999) ............................................................ 18, 19

*Barber v. SMH (US), Inc.*,
   509 N.W.2d 791 (Mich. Ct. App. 1993)................................................28

*Barkho v. Homecomings Fin., LLC*,
   657 F. Supp. 2d 857 (E.D. Mich. 2009) ......................................... 32, 33

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................3, 30

*Bender v. Southland Corp.*,
   749 F.2d 1205 (6th Cir. 1984) ...............................................................21

*Bondy v. Davis*,
   198 N.W.2d 418 (Mich. Ct. App. 1972)........................................ 32, 33

*Bovee v. Coopers & Lybrand C.P.A.*,
   272 F.3d 356 (6th Cir. 2001) .................................................................12

*Carter v. Carter*,
   2008 WL 5662081 (E.D. Mich. July 22, 2008)....................................22

*Cook v. Little Caesar Enters.*,
   972 F. Supp. 400 (E.D. Mich. 1997) .....................................................32

*Craighead v. E.F. Hutton*,
    899 F.2d 485 (6th Cir. 1990) ........................................................................ 24, 25

*Davis v. Avco Fin. Servs., Inc.*,
    739 F.2d 1057 (6th Cir. 1984) ...................................................................... 17

*DeLorean v. Cork Gully*,
    118 B.R. 932 (E.D. Mich. 1990) ................................................................ 21, 24

*Dudley Enters., Inc. v. Palmer Corp.*,
    822 F. Supp. 496 (N.D. Ill. 1993) ................................................................ 21

*Fremont Reorganizing Corp. v. Duke*,
    811 F. Supp. 2d 1323 (E.D. Mich. 2011) .................................................... 30

*French v. Essentially Yours Indus.*,
    2008 WL 2065223 (W.D. Mich. May 13, 2008) .......................................... 17

*FTC v. BurnLounge*,
    753 F.3d 878 (9th Cir. 2014) ................................................................ passim

*Gen'l Ret. Sys. of the City of Detroit v. Onyx Capital Advisors, LLC*,
    2011 WL 4528304 (E.D. Mich. Sept. 29, 2011) .......................................... 19

*Ger-Ro-Mar, Inc. v. FTC*,
    518 F.2d 33 (2d Cir. 1975) .................................................................... passim

*Gillis v. Wells Fargo Bank, N.A.*,
    875 F. Supp. 2d 728 (E.D. Mich. 2012) ...................................................... 29

*Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*,
    863 F. Supp. 447 (E.D. Mich. 1994) ............................................................ 22

*Grider v. Texas Oil & Gas Corp.*,
    868 F.2d 1147 (10th Cir. 1989) .................................................................... 24

*Gutierrez v. Lynch*,
    826 F.2d 1534 (6th Cir. 1987) ...................................................................... 30

*Head v. Phillips Camper Sales & Rental, Inc.*,
    593 N.W.2d 595 (Mich. Ct. App. 1999) ...................................................... 29

*Heinrich v. Waiting Angels Adoption Serv.*,
  668 F.3d 393 (6th Cir. 2012) ...............................................................23

*Holman v. Indiana*,
  211 F.3d 399 (7th Cir. 2000) ...............................................................26

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ...........................................................................23

*Howley v. United States Patent & Trademark Office*,
  2008 WL 4852684 (E.D. Mich. Nov. 7, 2008) ........................................4

*In re Gen. Motors ERISA Litig.*,
  2006 WL 897444 (E.D. Mich. Apr. 6, 2006) ...........................................3

*In re Koscot Interplanetary, Inc.*,
  86 F.T.C. 1106 (1975) ..........................................................................6

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ...............................................................30

*Javitich v. First Montauk Fin. Corp.*,
  279 F. Supp. 2d 931 (N.D. Ohio 2003) .................................................19

*Michigan Bank, N.A. v. William J. Kahlich, Inc.*,
  179 N.W.2d 29 (Mich. Ct. App. 1970)............................................. 11, 33

*Reilly v. Vadlamudi*,
  680 F.3d 617 (6th Cir. 2012) .................................................................3

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ..............................................................3, 4

*SEC v. Glenn W. Turner Enters., Inc.*,
  474 F.2d 476 (9th Cir. 1973) ...............................................................17

*SEC v. Int'l Heritage*,
  4 F. Supp. 2d 1368 (N.D. Ga. 1998) .....................................................18

*SEC v. Koscot Interplanetary, Inc.*,
  497 F.2d 473 (5th Cir. 1974)................................................................17

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ....................................................................................20

*Sivak v. United Parcel Serv.*,
   2014 WL 2938088 (6th Cir. July 1, 2014) .........................................28

*State ex rel. Miller v. Am. Prof'l Mktg., Inc.*,
   382 N.W.2d 117 (Iowa 1986)..................................................................8

*Stull v. YTB Int'l, Inc.*,
   2011 WL 4476419 (S.D. Ill. Sept. 26, 2011) .................................7, 13

*Sudden Serv., Inc. v. Brockman Forklifts, Inc.*,
   647 F. Supp. 2d 811 (E.D. Mich. 2008) ...............................................29

*Taborac v. Nisource, Inc.*,
   2011 WL 5025214 (S.D. Ohio Oct. 21, 2011) ....................................25

*United States v. Gold Unlimited, Inc.*,
   177 F.3d 472 (6th Cir. 1999) ...................................................... passim

*United States v. Valenzeno*,
   123 F.3d 365 (6th Cir. 1997) ................................................................23

*Utica Steel, Inc. v. Amormino*,
   2014 WL 1401939 (Mich. Ct. App. Apr. 10, 2014)...........................33

*VanDorn v. Howington*,
   623 F. Supp. 1548 (N.D. Ohio 1985) ...................................................21

*Washington v. Thomas*,
   2009 WL 1424193 (E.D. Mich. May 18, 2009) ................................... 4

*Webster v. Omnitrition Int'l, Inc.*,
   79 F.3d 776 (9th Cir. 1996) ......................................................... passim

*Weiner v. Klais & Co.*,
   108 F.3d 86 (6th Cir. 1997) ..................................................................12

*Whole Living, Inc. v. Tolman*,
   344 F. Supp. 2d 739 (D. Utah 2004) .....................................................8

## <u>STATUTES</u>

15 U.S.C. § 78j(b) ..............................................................................18

15 U.S.C. §§ 77b(a)(1) and 78c(a)(10) ................................................17

18 U.S.C. § 1341 ...............................................................................16

18 U.S.C. § 1343 ...............................................................................17

18 U.S.C. § 1951 ...............................................................................21

18 U.S.C. § 1951(b)(2) ................................................................. 17, 22

18 U.S.C. § 1961(1)(A)-(G) ......................................................... 20, 21

18 U.S.C. § 1961(5) ...........................................................................20

18 U.S.C. § 1962(a), (c), (d) ........................... 16,18, 20, 23, 24 25

18 U.S.C. § 1962(c) ..................................................... 16, 20, 25

18 U.S.C. § 1964(c) .................................................... 18, 20, 23

M.C.L. § 445.1500 et seq. ...................................................................26

M.C.L. § 445.1505 .............................................................................31

M.C.L. § 445.1513 .............................................................................31

M.C.L. § 445.1525 .............................................................................31

M.C.L. § 445.1528 .............................................................................31

M.C.L. § 445.1528(2) .........................................................................32

M.C.L. § 445.1531(1) .........................................................................31

M.C.L. § 445.902(a)(iv) ......................................................................27

M.C.L. § 445.902(g) ...........................................................................26

M.C.L. § 445.903b ..............................................................................27

M.C.L. § 445.911(c) ...........................................................................27

M.C.L. § 600.2919a ............................................................................29

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Does the Complaint plead sufficient facts identifying the conduct in which each of the six ViSalus Defendants allegedly engaged that could plausibly warrant a finding of liability on each of Plaintiffs' claims?

   **ViSalus Defendants' Answer:  No.**

2. Does the Complaint plead sufficient facts plausibly demonstrating that ViSalus is a pyramid scheme?

   **ViSalus Defendants' Answer:  No.**

3. Does the Complaint state a valid civil RICO claim in Counts I-III?

   **ViSalus Defendants' Answer:  No.**

4. Does the Complaint state a valid claim under the Michigan Consumer Protection Act in Count IV?

   **ViSalus Defendants' Answer:  No.**

5. Does the Complaint state a valid claim for unjust enrichment in Count V?

   **ViSalus Defendants' Answer:  No.**

6. Does the Complaint state a valid claim for conversion in Count VI?

   **ViSalus Defendants' Answer:  No.**

7. Does the Complaint state a valid claim for civil conspiracy in Count VII?

   **ViSalus Defendants' Answer:  No.**

8. Does the Complaint state a valid claim under the Michigan Franchise Investment Law in Count VIII?

   **ViSalus Defendants' Answer:  No.**

9.    Does the Complaint state a valid claim for an accounting and constructive trust in Count IX?

**ViSalus Defendants' Answer:  No.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Regarding the pleading standard**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
*Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012)
*In re Gen. Motors ERISA Litig.*, 2006 WL 897444 (E.D. Mich. Apr. 6, 2006)

**Regarding the need to identify which defendant allegedly committed which wrongful act**

*Washington v. Thomas*, 2009 WL 1424193 (E.D. Mich. May 18, 2009)
*Howley v. United States Patent & Trademark Office*, 2008 WL 4852684 (E.D. Mich. Nov. 7, 2008)

**Regarding Plaintiffs' allegations that ViSalus is a pyramid scheme**

*FTC v. BurnLounge*, 753 F.3d 878 (9th Cir. 2014)
*United States v. Gold Unlimited, Inc.*, 177 F.3d 472 (6th Cir. 1999)
*Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996)
*Ger-Ro-Mar, Inc. v. FTC*, 518 F.2d 33 (2d Cir. 1975)
*In re Amway Corp.*, 93 F.T.C. 618 (1979)

**Regarding the RICO claims (Counts I-III)**

*Aries Aluminum Corp. v. King*, 1999 WL 801523 (6th Cir. Sept. 30, 1999)
*Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996)
*Davis v. Avco Fin. Servs., Inc.*, 739 F.2d 1057 (6th Cir. 1984)
*Gen'l Ret. Sys. of the City of Detroit v. Onyx Capital Advisors, LLC*, 2011 WL 4528304 (E.D. Mich. Sept. 29, 2011)

**Regarding the Michigan Consumer Protection Act claim (Count IV)**

None – Argument is based on language of statute and allegations of Complaint.

**Regarding the unjust enrichment claim (Count V)**

*Sivak v. United Parcel Serv.*, 2014 WL 2938088 (6th Cir. July 1, 2014)
*APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610 (6th Cir. 2003)

x

**Regarding the conversion claim (Count VI)**

*Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811 (E.D. Mich. 2008)

*Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595 (Mich. Ct. App. 1999)

**Regarding the civil conspiracy claim (Count VII)**

*Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323 (E.D. Mich. 2011)

**Regarding the Michigan Franchise Investment Law claim (Count VIII)**

*Cook v. Little Caesar Enters.*, 972 F. Supp. 400 (E.D. Mich. 1997)

**Regarding the accounting and constructive trust claim (Count IX)**

*Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857 (E.D. Mich. 2009)

*Bondy v. Davis*, 198 N.W.2d 418 (Mich. Ct. App. 1972)

*Michigan Bank, N.A. v. William J. Kahlich, Inc*., 179 N.W.2d 29 (Mich. Ct. App. 1970)

## INTRODUCTION

ViSalus is a Michigan-based marketer of effective weight-loss products, functional foods, and nutritional supplements. ViSalus markets its products using a direct-selling model, which avoids traditional retail outlets and makes sales directly to consumers as well as through a network of independent distributors (called "Independent Promoters" or "IPs" in the ViSalus system).

ViSalus has structured its compensation plan to encourage its Promoters to increase product sales through each Promoter's own direct-selling efforts as well as by the sales of those Promoters that they recruit into their "downline" who are also encouraged to sell ViSalus products to consumers. Promoters are eligible for commissions and bonuses based primarily on product sales to consumers—both their own sales as well as the sales made by Promoters in their "downline." In other words, ViSalus uses a multi-level marketing ("MLM") system.

The MLM model is well-established. It is used by successful and longstanding companies such as Mary Kay Cosmetics and Pampered Chef. The MLM industry now involves millions of Americans, many if not most of whom are looking to supplement their income by developing their own customer bases and downlines of active distributors.

Operating a legitimate MLM program naturally tends to result in an organizational structure that is broad at the base and narrow at the top. Of course,

a pyramidal shape is not unique to MLMs; it is the basic organizational structure of General Motors, Microsoft, General Electric and virtually all other corporations. Obviously, then, the shape of an organization does not determine whether it is or is not an illegal pyramid scheme. That fact has not stopped critics from attacking the entire MLM industry based on the actions of a handful of bad actors.

In this case, three disgruntled ViSalus Promoters—out of hundreds of thousands—have filed a putative class action, accusing ViSalus and 30 other Defendants of operating an illegal pyramid scheme. Their Complaint is long on conclusory allegations but bereft of critical facts. Even worse, it recycles stereotypes and common misconceptions about the MLM industry. The acid test of an illegal pyramid scheme is whether the company rewards its distributors primarily for recruiting other distributors rather than for product sales. But as demonstrated below, the ViSalus filing with the Securities and Exchange Commission (SEC) that Plaintiffs selectively quote from in their Complaint contains audited data that completely contradicts Plaintiffs' conclusory assertion that ViSalus rewards primarily for recruiting. The defects in Plaintiffs' pyramid-scheme allegations permeate their entire Complaint. They assert claims of racketeering under the federal RICO statute that are absolutely barred on the face of the statute itself. And their state-law claims are defective for a variety of reasons discussed below.

2

## LEGAL STANDARD

A motion to dismiss for failure to state a claim is analyzed under the standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012). The Court must "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Reilly*, 680 F.3d at 622. But a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (citation omitted). It must have "facial plausibility"—*i.e.*, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 622–23 (citation omitted).

Moreover, to the extent that Plaintiffs' claims are premised on allegations of fraud—regardless of whether "fraud" is an element of the claim—Plaintiffs must satisfy the heightened pleading standard in Fed. R. Civ. P. 9(b). *See In re General Motors ERISA Litig.*, 2006 WL 897444, at *14–16 (E.D. Mich. Apr. 6, 2006). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). The party must (1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) plead when and where the statements were

made; and (4) explain what made the statements fraudulent. *Id.* (citation omitted).[1]

Plaintiffs' RICO claims are based on allegations of mail and wire fraud, and all of

the claims in the Complaint are premised on the theory that ViSalus is operating an

illegal pyramid scheme, which courts deem to be inherently fraudulent.

## I.   THE COMPLAINT FAILS AS TO ALL OF THE VISALUS DEFENDANTS BECAUSE IT DOES NOT IDENTIFY WHICH DEFENDANT ALLEGEDLY COMMITTED WHICH WRONG.

As an initial matter, the Complaint fails to comply with *Twombly* and *Iqbal*

because it does not identify the specific conduct in which each ViSalus Defendant

allegedly engaged.  For example, Plaintiffs use "ViSalus" to refer collectively to

ViSalus, Inc., ViSalus Holdings, LLC, and ViSalus Sciences (not even named as a

defendant).  [Dkt. 1, at 7 (¶ 12).]  This type of pleading warrants dismissal.  *See*

*Howley v. United States Patent & Trademark Office*, 2008 WL 4852684, at *2

(E.D. Mich. Nov. 7, 2008) ("Each claim should make it clear which defendant or

defendants are alleged to have committed which wrong"); *see also Washington v.*

*Thomas*, 2009 WL 1424193, at *2-3 (E.D. Mich. May 18, 2009) (dismissing

complaint where plaintiff alleged that "Defendants conspired" but did not "allege[]

that any specific defendant committed any specific wrongful act").

---

[1]     Although Rule 9(b) allows a plaintiff to plead intent and knowledge "generally," a plaintiff must nevertheless "plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'"  *Republic Bank & Trust*, 683 F.3d at 247 (citation omitted).

4

ViSalus Holdings is alleged (in a single paragraph) to be the owner of ViSalus, Inc.  [Dkt. 1, at 7 (¶ 12).]  That allegation fails to state a claim because Plaintiffs do not plead facts establishing that ViSalus Holdings should be liable for the actions of ViSalus, Inc.  The four individual ViSalus Defendants are mentioned only in a handful of paragraphs.  With respect to each individual, the allegations specific to that defendant fail to state a claim.[2]  There are insufficient facts identifying what they did with respect to each cause of action.  The Complaint also should be dismissed for the reasons set forth below.

## II.    PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS PLAUSIBLY DEMONSTRATING THAT VISALUS IS A PYRAMID SCHEME.

All nine claims for relief in the Complaint are based, in one way or another, on Plaintiffs' allegation that Defendants are operating a pyramid scheme.  [Dkt. 1, at 6 (¶ 7).]  Each of these claims fails because the Complaint—stripped of legal conclusions, threadbare recitals of the elements of a pyramid scheme, and other conclusory statements—does not contain allegations of fact that "permit the court to infer more than the mere possibility" that ViSalus is a pyramid scheme. Although the factual allegations in the Complaint might be consistent with a

---

[2]     Ryan Blair [Dkt. 1, at 9–10, 23–29, 53, 60–61, 79, 84, 89, 99, 106–07, 113 (¶¶ 17, 41–42, 46, 50-51, 53, 55–57, 100, 112, 151, 162, 171, 190, 211, 239); Blake Mallen [*id.* at 10, 23–24, 26–29, 60, 79, 84, 89, 99, 106–07, 113 (¶¶ 19, 41–42, 51, 53, 56–57, 112, 151, 162, 171, 190, 211, 239]; Todd Goergen [*id.* at 8–9, 28, 78–80, 83, 89, 106–07, 114 (¶¶ 13–14, 16, 55–57, 151, 154, 161, 171, 211, 239]; and Robert Goergen, Sr. [*id.* at 8–9, 26–28, 78, 83–84, 89, 106–07, 114 (¶¶ 13–15, 50, 55, 57, 151, 161–62, 171, 211, 239].

possible pyramid scheme, they are equally consistent with a perfectly legal MLM—which ViSalus is. And where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to cross the threshold from possible to plausible with their allegations.

**A.** **The Test To Distinguish Legal MLMs From Pyramid Schemes.**

"Pyramid schemes are said to be inherently fraudulent because they must eventually collapse." *Webster v. Omnitrition Int'l, Inc.* ("*Omnitrition*"), 79 F.3d 776, 781 (9th Cir. 1996). The MLM model, however, is perfectly legitimate, even though MLMs contain some elements also found in a pyramid scheme. *See United States v. Gold Unlimited, Inc.* ("*Gold*"), 177 F.3d 472, 480 (6th Cir. 1999) ("Courts and legislatures recognize a distinction between legitimate programs (known as multi-level marketing systems) and illegal schemes").

The Sixth Circuit has adopted the Ninth Circuit's approach to distinguishing between lawful MLMs and pyramid schemes. *See Gold*, 177 F.3d at 480–81 (relying upon *Omnitrition*'s adoption of the Federal Trade Commission's pyramid scheme test in *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975)). *Omnitrition* was most recently applied by the Ninth Circuit in *FTC v. BurnLounge*:

> [A] pyramid scheme is "characterized by the payment by participants of money to the company in return for which

6

> they receive (1) the right to sell a product *and* (2) the
> right to receive in return for recruiting other participants
> into the program rewards which are unrelated to sale of
> the product to ultimate users."

753 F.3d 878, 883 (9th Cir. 2014) (quoting *Omnitrition*, 79 F.3d at 781).

The second part of this test is "the *sine qua non* of a pyramid scheme."

*Omnitrition*, 79 F.3d at 781.  In a pyramid scheme, rewards are paid to distributors

"primarily for recruitment" rather than for the sale of products to ultimate users.

*See BurnLounge*, 753 F.3d at 889; *Stull v. YTB Int'l, Inc.*, 2011 WL 4476419, at *5

(S.D. Ill. Sept. 26, 2011) (describing a "lawful MLM program" as one where the

"'primary purpose' of the enterprise and its associated individuals is to sell or

market an end-product with end-consumers, and not to reward associated

individuals for the recruitment of more marketers or 'associates'") (quoting *In re

Amway Corp.* ("*Amway*"), 93 F.T.C. 618, 716 (1979)).

It is important to recognize, however, what conduct does not satisfy the

second element of the *Omnitrition* test.  For example, in a legitimate, lawful MLM

(of which there are many), distributors may make product sales to end customers

but also may sponsor ("recruit") other distributors into the company (who also

make product sales).  The sponsoring distributor then receives commissions on the

sales made by sponsored distributors.  Although those commissions originate with

recruitment, they are not being paid "primarily" for recruitment, as courts have

acknowledged:  "[T]he fact that the right to receive a commission originates from

7

sponsorship does not necessarily mean that all subsequent commissions are based primarily on recruitment." *Whole Living, Inc. v. Tolman*, 344 F. Supp. 2d 739, 745 (D. Utah 2004); *see also Gold*, 177 F.3d at 482 (discussing MLM programs in *Ger-Ro-Mar, Inc. v. FTC*, 518 F.2d 33 (2d Cir. 1975) and *Amway*: "[I]n both cases, participants earned commissions not through recruitment, but by product sales (their own sales and the sales of their recruits)"); *State ex rel. Miller v. Am. Prof'l Mktg., Inc.*, 382 N.W.2d 117, 120 (Iowa 1986) ("Although a supervisor or director obtains a commission by wholesaling to personal representatives and earns bonuses based on their output, these remunerations are directly related to products that are either consumed by the personal representatives or retailed to their customers").

Moreover, the fact that some sales are made to distributors does not mean that a court must exclude those sales when calculating the MLM's total product sales to ultimate users. The Ninth Circuit expressly rejected the position that sales to distributors (*i.e.*, "internal sales") could not count as sales of products to ultimate users. *BurnLounge*, 753 F.3d at 887 (acknowledging that sales to distributors can count as sales to ultimate users).

With these points in mind, the Court must evaluate whether Plaintiffs allege specific facts, with particularity, that support a reasonable inference that the way

the ViSalus marketing plan operates in practice rewards participants primarily for recruiting, rather than for product sales.  *See id.*

### B.     Plaintiffs Have Not Pled Plausible, Factual Allegations That ViSalus IPs Are Paid Primarily For Recruiting, Rather Than For The Sale Of Products To Ultimate Users.

Plaintiffs allege the conclusion that products are sold primarily to IPs and that commissions and bonuses paid by ViSalus all relate in some way to recruitment.  Even if these allegations are assumed to be true, they are equally consistent with a legitimate MLM as with a pyramid scheme.  To state a claim, Plaintiffs must plead specific facts from which a reasonable inference can be drawn that rewards paid to IPs are primarily for recruiting, not product sales.

Plaintiffs purport to satisfy their burden under part (2) of the *Omnitrition* test in Paragraphs 70–91.  [Dkt. 1, at 35-48.]  Those allegations are bundled under the heading:  "ViSalus pays distributors for recruiting overwhelmingly more than for sales to outsiders."  But neither this conclusory heading nor the underlying allegations do anything to nudge the central theory of Plaintiffs' case—that ViSalus is a pyramid scheme—across the line from possible to plausible.

To begin with, there is no significant investment required to become an IP.  Plaintiffs admit that the basic fee for becoming an IP is a mere $49.  [*Id.* at 33-34 (¶ 68).]  Plaintiffs also concede that rewards under the ViSalus program require product sales.  [*Id.* at 43 (¶ 82).]  Plaintiffs characterize the sales requirement as a

mere "token inclusion" in the plan.  But that is a conclusory assertion – not a fact that plausibly indicates that the program is actually paying IPs "for recruiting overwhelmingly more than for sales to outsiders," as Plaintiffs allege.  [*Id.* at 35.] Moreover, Plaintiffs' allegation that product sales are being made to IPs is not sufficient to convert ViSalus into a pyramid scheme, because internal sales alone do not make an MLM an illegal pyramid.  *See BurnLounge*, 753 F.3d at 887.

The remaining allegations are also insufficient to show that the ViSalus program rewards IPs primarily for recruitment rather than product sales.  For example, Plaintiffs cite revenue figures and recruiting numbers to assert that there is a positive correlation between the number of IPs and the total amount of ViSalus revenues.  [Dkt. 1, at 35 (¶ 70).]  The fact that revenues increase as the number of IPs increases (or that revenues decrease as the number of IPs decreases), however, is not suggestive of a pyramid scheme.  Because MLMs sell their products through distributors, the more distributors an MLM has, the more sales there will likely be.

If the ViSalus compensation plan incentivized recruiting over consumer sales, there likely would be more IPs than customers, and sales to IPs would be greater than sales to customers.  The growth rate of the number of IPs would also eclipse the growth rate of the number of customers because people would be incentivized to become IPs rather than customers.  And commissions paid to IPs would exceed revenues from sales of product to customers.  Courts and the FTC

look at this type of information to determine whether a company was a legitimate MLM or a pyramid scheme. *See Gold*, 177 F.3d at 475 (looking at "the percent of product sold compared with the percent of commissions granted" to differentiate between a legal MLM and a pyramid); *BurnLounge*, 753 F.3d at 887–88 ("The critical question for the FTC is whether the revenues that primarily support the commissions paid to all participants are generated from purchases of goods and services that are not simply incidental to the purchase of the right to participate in the money-making venture") (quoting from an FTC advisory letter).

Such facts, however, are not alleged in the Complaint. Indeed, Plaintiffs admit that there are more ViSalus customers than ViSalus IPs. [Dkt. 1, at 48 (¶ 91).] And, significantly, the allegations that sales to IPs are greater than sales to customers are not only conclusory but are contradicted by the ViSalus Preliminary Prospectus—dated September 17, 2012 and publicly filed with the SEC—which Plaintiffs cite to and quote from. [*Id.* at 40–42, 58, 88–90 (¶¶ 78, 81, 108, 171).]

Plaintiffs cherry pick certain figures from the Preliminary Prospectus relating to IP numbers and revenues [*id.* 29–30, 35 (¶¶ 60, 70)], but they fail to disclose other figures showing that there have always been significantly more customers than IPs, and that sales to customers have always been a significantly greater share of ViSalus's total sales than sales to IPs. ViSalus disclosed the following figures:

|  | No. of IPs | No. of Customers | Net Sales (thousands) | Direct Sales to Customers (thousands) | Commissions (thousands) |
|---|---|---|---|---|---|
| June 30, 2012 | 114,000 | 1,258,000 | $327,296 | $216,015 | $141,713 |
| Dec. 31, 2011 | 59,000 | 543,000 | $230,186 | $140,413 | $99,909 |
| June 30, 2011 | 29,000 | 208,000 | $59,347 | $35,608 | $26,464 |
| Dec. 31, 2010 | 9,000 | 78,000 | $33,665 | $19,189 | $14,956 |

*See* Preliminary Prospectus at 45 (numbers of IPs and customers), 47, 49 (net sales, direct sales to customers, and commissions).  Attached as Exhibit A is a true and correct full copy of the Preliminary Prospectus.[3]

As these numbers show, the growth rate of customers is substantially higher than the growth rate of IPs.[4]  Moreover, the percentage of net sales to customers

---

[3]     The Court can, and should, consider this information from the Preliminary Prospectus on this motion to dismiss, *see Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), and the Court may do so without converting the motion to one for summary judgment.  *See Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir. 2001) (noting that a court may consider "the full text of the SEC filings, prospectus, analysts' reports and statements 'integral to the complaint,' even if not attached, without converting the motion into one for summary judgment").

[4]     The increase in IPs from June 30, 2011 to December 31, 2011 was 103%, whereas the growth rate in customers in that same time period was 161%.  From December 31, 2011 to June 30, 2012, the increase in IPs was 93%, whereas the growth rate in customers was 132% in that same time period.

from 2010 to June 2012 actually increased to the point where 66 cents of every dollar in sales came from a customer.[5]  And, over this same time period, sales to customers have far exceeded the amount of commissions paid to IPs.  These figures are the opposite of those found to exist in the program which the Sixth Circuit in *Gold* found to be an illegal pyramid—a program where product sales to ultimate consumers accounted for a small fraction of all revenues and were substantially less than what was paid out to distributors in commissions.  *Gold*, 177 F.3d at 481 (finding that gross profits of $552,620 from sales of gold coins, compared to $43 million in total revenues and payment of $25 million in "commissions" supported the finding of an illegal pyramid); *see also Stull*, 2011 WL 4476419, at *5 (finding an illegal pyramid where less than 10% of the company's total revenues came from sales of the actual product).

In late 2012, at the alleged "peak" of the ViSalus program, there were over eleven times more customers than IPs, and direct sales to those customers accounted for nearly two–thirds of ViSalus's total revenues.  Moreover, product sales to customers exceeded commissions paid to IPs by over $74 million.  Under the *Omnitrition* test applied by the Sixth Circuit in *Gold*, Plaintiffs have not alleged facts that demonstrate plausibly that ViSalus is a pyramid.

---

[5]    This figure is conservative because it does not account for retail sales made directly by IPs to their customers.  *See* Preliminary Prospectus at 47 (noting that sales to IPs "include products they resell to their retail customers").

**C.** **The Allegedly Unenforced "Amway Rules" Are Irrelevant At The Pleading Stage, And The "Market Saturation" Allegations Are Conclusory.**

As demonstrated above, Plaintiffs have not pled sufficient facts to make out a plausible, prima facie case that ViSalus is a pyramid scheme. As a result, Plaintiffs' additional allegations relating to the "70% Rule" [Dkt. 1, at 72–73 (¶¶ 132–33)]—which relate to defenses to a prima facie showing of a pyramid scheme—do not save Plaintiffs' pyramid-scheme theory.

In the *Amway* case, the FTC determined that Amway was not a pyramid scheme based in part on evidence that Amway had adopted and was enforcing various rules that prevented "inventory loading" and instead encouraged retail sales.[6] These "Amway Rules" included the following:

> (1) participants were required to buy back from any person they recruited any saleable, unsold inventory upon the recruit's leaving Amway, (2) every participant was required to sell at wholesale or retail at least 70% of the products bought in a given month in order to receive a bonus for that month, and (3) in order to receive a bonus in a month, each participant was required to submit proof of retail sales made to ten different customers.

*Omnitrition*, 79 F.3d at 783.

In *Gold*, the Sixth Circuit explained that these Amway Rules are affirmative defenses to a claim that a defendant is operating a pyramid scheme. 177 F.3d at

---

[6] "Inventory loading" refers to the practice of distributors purchasing large amounts of inventory, not for personal consumption or resale to ultimate consumers, but to qualify for rewards under the company's compensation plan.

482. The plaintiff in such a case must "prove that the program satisfies the definition of *Koscot*." *Id.* Whether ViSalus has policies like the Amway Rules in place (and Plaintiffs concede that it does), and whether those policies are effectively enforced, would become relevant only after the Plaintiffs plead a prima facie case that ViSalus is a pyramid scheme. Plaintiffs have not met this burden.[7]

The conclusory allegations of "market saturation" fare no better. Plaintiffs attempt to base that conclusion on IP enrollments that have dropped and revenues that are lower. [Dkt. 1, at 73 (¶ 134).] But these allegations are no more suggestive of market saturation than they are of increased competition, and they certainly do not support a plausible inference that the market is saturated.

## III.   THE COMPLAINT FAILS TO PLEAD ACTIONABLE CIVIL RACKETEERING CLAIMS (COUNTS I-III).

Plaintiffs assert three claims for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count One purports to allege a claim for a primary violation of RICO Section 1962(c), which makes it unlawful for a person employed by or associated with an enterprise to

---

[7]     Even if the Court did consider these allegations now, they deserve no weight because they are more of the same general, conclusory variety as the rest of the pyramid scheme allegations. They fail to satisfy Rule 8 or Rule 9(b). For example, although Plaintiffs assert the conclusion that "there are widespread purchases that violate the [70%] rule", nowhere do Plaintiffs allege facts supporting these conclusory allegations. Moreover, inventory loading is not a risk under the ViSalus program because, unlike many other MLMs, ViSalus encourages IPs to introduce customers directly to the company for their purchases rather than encourage IPs to sell products they buy from ViSalus to customers.

conduct or participate in conducting the affairs of such enterprise through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). Count Two purports to allege a claim for a primary violation of RICO Section 1962(a), which makes it unlawful for a person who has received income from a pattern of racketeering activity to use or invest such income to acquire an interest in or to establish or operate an enterprise. *See* 18 U.S.C. § 1962(a). And Count Three purports to allege claims of conspiracy in violation of RICO Section 1962(d) to commit the primary RICO violations asserted in Counts One and Two. *See* 18 U.S.C. § 1962(d).

For the reasons set forth below, none of Plaintiffs' RICO claims states a cause of action upon which relief may be granted. All three claims should be dismissed with prejudice.

A. **As A Matter Of Law, RICO Claims Cannot Be Based On Allegations That Plaintiffs Invested And Lost Money In A Pyramid Scheme.**

Plaintiffs' RICO claims rest entirely on allegations that they invested and lost money in an illegal pyramid scheme operated by Defendants. [Dkt. 1, at 2 (¶ 1) ("This [RICO] action arises out of a pyramid scheme . . .)".] Plaintiffs claim that the purpose of the alleged RICO "enterprise," which they say is an association in fact consisting of all Defendants, is "the unlawful pyramid scheme." [*Id.* at 78 (¶ 150).] They contend that all of the alleged predicate criminal acts of "racketeering activity" (mail fraud—18 U.S.C. § 1341; wire fraud—18 U.S.C.

§ 1343; and extortion—18 U.S.C. § 1951(b)(2)) were committed "to perpetuate" and "in furtherance of the pyramid scheme."  [Dkt. 1, at 88–92 (¶¶ 171, 173, 175).] And they allege that their "RICO injuries" were "directly related to the pyramid scheme" and consisted of the money they invested and allegedly lost in their ViSalus distributorships as IPs.  [*Id.* at 95, 97 (¶¶ 179, 182).]

As a matter of law, an investment in a pyramid scheme is an investment in an "investment contract"—a security under federal law.  *See Davis v. Avco Fin. Servs., Inc.*, 739 F.2d 1057, 1063 (6th Cir. 1984) (adopting the analysis in *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476 (9th Cir. 1973), and *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974)); *see also Omnitrition*, 79 F.3d at 784 (concluding that investment in a pyramid scheme was an "investment contract" and thus a security under federal securities laws); *French v. Essentially Yours Indus.*, 2008 WL 2065223, at *4–6 (W.D. Mich. May 13, 2008) (same).[8]

"[A] pyramid scheme constitutes a scheme to defraud."  *Gold*, 177 F.3d at 485.  And because a pyramid scheme also involves investments in securities, it constitutes securities fraud.  *Omnitrition*, 79 F.3d at 781 (noting that pyramid schemes are "inherently fraudulent," and concluding that "[o]peration of a pyramid scheme constitutes [securities] fraud for purposes of § 12(2) of the Securities Act

---

[8]     An "investment contract" is included within the definition of "security" in both the Securities Act of 1933 and the Securities Exchange Act of 1934.  *See* 15 U.S.C. §§ 77b(a)(1) and 78c(a)(10).

of 1933 [and] § 10 of the Securities Exchange Act of 1934 . . . ."); *SEC v. Int'l Heritage*, 4 F. Supp. 2d 1368, 1372–74 (N.D. Ga. 1998) (concluding that defendants violated the anti-fraud provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, by operating a pyramid scheme); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999) (noting that "conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities").

The fundamental problem with all three of Plaintiffs' RICO claims is that such claims may not be asserted based on allegations of conduct that, if pled properly and proven, would constitute securities fraud.  In 1995, the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. 104-67, § 107, amended Section 1964(c) of RICO to provide expressly that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).[9]

As a result of the statutory bar, civil RICO claims may not be based on alleged conduct involving securities fraud.  *See, e.g.*, *Aries Aluminum Corp. v.*

---

[9]   The ViSalus Defendants certainly do not concede that Plaintiffs have, in fact, been the victims of securities fraud or that Plaintiffs could ever plead a viable claim of securities fraud.  However, because their pyramid scheme allegations, as defective as they are, necessarily implicate fraud in connection with a purchase or sale of securities, Plaintiffs' RICO claims are barred by RICO Section 1964(c).

*King*, 1999 WL 801523, at *2–3 (6th Cir. Sept. 30, 1999) (applying the PSLRA's RICO amendment to affirm dismissal, without leave to amend, of RICO claims based on conduct involving fraud in the sale of counterfeit securities).

Not only does the PSLRA's RICO amendment eliminate securities fraud as a predicate act in civil RICO claims, but it also prevents plaintiffs from relying on other predicate acts if they are based on conduct that would have been actionable as securities fraud. *See Bald Eagle Area Sch. Dist.*, 189 F.3d at 330. Thus, Plaintiffs "cannot avoid the RICO amendment by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Javitich v. First Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 943–44 (N.D. Ohio 2003) (quoting *Bald Eagle Area Sch. Dist.*, 189 F.3d at 330, and listing cases reaching the same conclusion); *see also Gen'l Ret. Sys. of the City of Detroit v. Onyx Capital Advisors, LLC*, 2011 WL 4528304, at *5–7 (E.D. Mich. Sept. 29, 2011) (noting that the RICO amendment was intended "to prevent pleading specified offenses, such as mail or wire fraud, as predicate acts," if such offenses involve conduct that could have been actionable as securities fraud).

Because all three RICO claims are based on alleged "conduct that would have been actionable as fraud in the purchase or sale of securities," those claims

are legally barred by the PSLRA's amendment of 18 U.S.C. § 1964(c).  For this reason alone, all three claims should be dismissed with prejudice.

> **B.    Plaintiffs Fail To Plead Plausible Facts Demonstrating That Any Of The ViSalus Defendants Committed A Single Act Of "Racketeering Activity," Much Less A "Pattern" Of Such Acts.**

Aside from the absolute statutory bar, Plaintiffs fail to plead the required elements of their RICO claims.  Thus, for the reasons discussed below the RICO claims would be subject to dismissal even if not barred by the PSLRA amendment.

Count One purports to assert a violation of RICO Section 1962(c) against all defendants.  To plead a cause of action under Section 1962(c), Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Because Plaintiffs assert their Section 1962(c) claim against all 31 Defendants, they must plead all the elements of their claim as to each defendant.  Among other fatal defects with their claim, Plaintiffs have failed to plead factual allegations demonstrating plausibly that each defendant committed a "pattern" of "racketeering activity" as those terms are defined in 18 U.S.C. § 1961.

To satisfy the "pattern" element against all Defendants, Plaintiffs must, at a minimum, plead at least two acts of "racketeering activity" committed by each Defendant.  *See* 18 U.S.C. § 1961(5).  "Racketeering activity" is defined as the state-law and federal crimes listed in Section 1961(1), which are often referred to

20

as "predicate acts." *See* 18 U.S.C. § 1961(1)(A)–(G). Thus, to plead a 1962(c) claim against all 31 Defendants, Plaintiffs must "establish that each individual defendant committed at least two predicate acts." *Dudley Enters., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 502 (N.D. Ill. 1993).

In this case, Plaintiffs allege predicate acts consisting of federal mail fraud, federal wire fraud, and extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. [Dkt. 1, at 87–91 (¶¶ 168–73).] But they fail to plead facts demonstrating plausibly that each of the ViSalus Defendants committed a "pattern" of alleged mail or wire fraud with the particularity required by Rule 9(b). And they fail to plead an act of extortion in violation of the Hobbs Act, much less one that any of the Plaintiffs would have statutory "standing" to assert.

The particularity requirements of Rule 9(b) apply to allegations of "racketeering activity" involving alleged mail and wire fraud. *See DeLorean v. Cork Gully*, 118 B.R. 932, 940 (E.D. Mich. 1990) (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). Rule 9(b) "requires a plaintiff to state the 'time, place and contents of the false misrepresentations.'" *Id.* It also requires that "a plaintiff must specify the identity of the person making the misrepresentation." *Id.* (citing *VanDorn v. Howington*, 623 F. Supp. 1548, 1555 (N.D. Ohio 1985)). And in the case of mail and wire fraud allegations, a plaintiff must provide "specific allegations as to which defendant caused what to be mailed

(or made which telephone calls)." *Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994). Finally, where, as here, fraud is pled against multiple defendants, a plaintiff must specify the fraudulent conduct of each defendant and differentiate among them; blanket allegations of fraud as to an undifferentiated group of "defendants" violate Rule 9(b). *See Carter v. Carter*, 2008 WL 5662081, at *10 (E.D. Mich. July 22, 2008) (dismissing fraud claim that failed to distinguish among multiple defendants).

The Complaint in this case fails to plead the particulars of a "pattern" of mail or wire fraud as to each of the ViSalus Defendants. It fails to specify the time, place, content and identity of the sender of even a single use of the mails by any of the ViSalus Defendants, and it fails to plead the particulars (time, place, content and identity of the sender) of two or more uses of the wires by any of them. As a result, Plaintiffs have failed to plead a "pattern" of wire fraud and/or mail fraud as to any of the ViSalus Defendants.

Plaintiffs' extortion allegations are equally defective. In just two vague and conclusory paragraphs, Plaintiffs make their allegations of alleged extortion under the Hobbs Act. [Dkt. 1, at 91 (¶¶ 172–73).] As used in the Hobbs Act, "[t]he term 'extortion' means the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." *See* 18 U.S.C. § 1951(b)(2). Nowhere do Plaintiffs allege even a single incident of alleged

extortion involving any particular one of the ViSalus Defendants. Certainly nothing in Paragraphs 172 or 173 demonstrates plausibly that any defendant obtained any property from Plaintiffs, with their consent, induced by wrongful use of actual or threatened force, violence, or fear. In short, Plaintiffs fail to plead extortion. *See Heinrich v. Waiting Angels Adoption Serv.*, 668 F.3d 393, 407 (6th Cir. 2012) (noting that to claim extortion under the Hobbs Act, "plaintiffs must allege facts and circumstances that show (1) that the defendants obtained the plaintiffs' property (2) through the wrongful use of (3) threats or fear of physical or economic harm"); *United States v. Valenzeno*, 123 F.3d 365, 369 (6th Cir. 1997) ("the element of 'fear'" is a required element of extortion under the Hobbs Act).[10]

In summary, Plaintiffs fail to plead a "pattern" of "racketeering activity" as to any of the ViSalus Defendants. As a result, Count One is defective and should be dismissed for these additional reasons.

---

[10]    Plaintiffs do not even allege that they were the victims of the alleged extortion. To have statutory "standing" to sue for a RICO violation, Plaintiffs must demonstrate that they were "injured in [their] business or property by reason of a violation of [RICO] section 1962." 18 U.S.C. § 1964(c). Here, Plaintiffs do not allege that they were victims of any alleged act of extortion, and they plead no injury to their business or property caused by any alleged act of extortion. As a result, their extortion allegations fail to support a civil RICO claim. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (to state a claim for relief under RICO, a plaintiff must show that the criminal "racketeering activity" was both a "but for" cause of plaintiff's injury as well as the proximate cause).

**C.**   **Plaintiffs Fail To Plead An Actionable Claim For Relief Under RICO Section 1962(a).**

Count Two of the Complaint purports to plead a violation of RICO Section 1962(a).  Under 1962(a), it is a violation for "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any enterprise . . . ."  *See* 18 U.S.C. § 1962(a).  "A plaintiff seeking civil damages for a violation of § 1962(a) must plead facts tending to show that he was injured by use or investment of racketeering income."  *DeLorean*, 118 B.R. at 944–45 (citing *Craighead v. E.F. Hutton*, 899 F.2d 485, 494 (6th Cir. 1990)).  "Injury from the racketeering acts themselves is not sufficient . . . ."  *Id.* at 945 (quoting *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir. 1989)).

Here, Plaintiffs allege no injury to their business or property proximately caused by the investment or use of income derived from the alleged predicate acts of fraud and extortion in the operation of an enterprise.  Instead, all they allege are injuries purportedly caused by the predicate acts themselves.  As a result, and wholly aside from the absolute bar discussed above, Plaintiffs have failed to assert a viable claim under RICO Section 1962(a).  *See, e.g.*, *Craighead*, 899 F.2d at 494–95 (affirming dismissal of RICO Section 1962(a) claim that failed to allege

injuries resulting directly from the use or investment of income rather than "injuries traceable to the alleged predicate acts").

### D.     **Plaintiffs Fail To Plead An Actionable Claim For RICO Conspiracy Under Section 1962(d).**

Because Plaintiffs have failed to state viable claims for alleged primary RICO violations of either Section 1962(a) (Count Two) or Section 1962(c) (Count One), the RICO conspiracy claim they assert in Count Three necessarily fails.  *See, e.g.*, *Taborac v. Nisource, Inc.*, 2011 WL 5025214, at *9 (S.D. Ohio Oct. 21, 2011) (noting that "[w]here . . . the substantive RICO count fails to state a claim, the conspiracy claim fails too") (citing *Craighead*, 899 F.2d at 495).   Accordingly, even if Plaintiffs' RICO conspiracy claim were not barred by the PLSRA amendment, it would still be subject to dismissal because of their failure to plead a viable claim for a violation of Sections 1962(a) or (c).

## IV.   **PLAINTIFFS' STATE LAW CLAIMS ALL FAIL (COUNTS IV-IX).**

Plaintiffs also attempt to assert state law claims:  violation of the Michigan Consumer Protection Act ("MCPA"), unjust enrichment, conversion, civil conspiracy, violation of the Michigan Franchise Investment Law ("MFIL"), and accounting/constructive trust.  To the extent these claims are based on Plaintiffs' allegations that ViSalus is a pyramid scheme, they fail for the reasons discussed in Section II above.  Each claim also is legally deficient for the following reasons.

A.    **Michigan Consumer Protection Act (Count IV).**

Plaintiffs assert that Defendants violated the MCPA in three ways:  (1) by allegedly inducing them (through "deception, false pretense, misrepresentation, and [omission] of key facts") to enter into an agreement with ViSalus and thereby suffer a financial loss (M.C.L. § 445.902(g)); (2) by violating the "mini-FTC Act" portion of the MCPA by failing to register the ViSalus business opportunity with the Michigan Attorney General (*id.* § 445.903(b)); and (3) by engaging in conduct declared by a federal circuit court of appeal or the Supreme Court to constitute an unfair or deceptive trade practice under Section 5 of the FTC Act (*id.* § 445.911(c)).  [Dkt. 1, at 103-04 (¶¶ 202-05).]  All of these claims fail.

Plaintiffs accuse Defendants of violating M.C.L. § 445.902(g) by engaging in "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  The MCPA's definition of "trade or commerce" expressly excludes the "purchase or sale of a franchise" as that term is defined in the MFIL, *see* M.C.L. § 445.1500 *et seq.*  *See* M.C.L. § 445.902(g).  Yet in Paragraph 233 of the Complaint, Plaintiffs specifically allege that "The defendants' conduct in offering the 'Business Opportunity' constitutes an offering of a franchise under this

26

law." [Dkt. 1, at 112 (¶ 233).] Plaintiffs' allegation that Defendants engaged in the offering of a franchise precludes their claim under M.C.L. § 445.902(g).[11]

Plaintiffs also have failed to allege facts plausibly demonstrating that Defendants violated M.C.L. § 445.903b—the mini-FTC Act component of the MCPA—which requires the filing of a notice of sale of a business opportunity with the Michigan Attorney General. First, the MCPA's definition of a "business opportunity" expressly excludes "a business opportunity for which the purchaser pays less than $500.00 in total for the business opportunity from anytime before the date of sale to anytime within 6 months after the date of sale." M.C.L. § 445.902(a)(iv). Plaintiffs have not pled that any of them paid more than $500 for the ViSalus business opportunity, and they admit that the right to be a ViSalus IP is available for $49. [Dkt. 1, at 6–7, 33–34 (¶¶ 8–10, 68).] Second, Plaintiffs have not pled facts that demonstrate that they suffered actual damages as a result of the alleged failure to register with the Attorney General. The Complaint contains a single conclusory statement that Plaintiffs suffered injury. [*Id.* at 104 (¶ 206).]

Finally, Plaintiffs have not sufficiently pled a claim that Defendants have violated M.C.L. § 445.911(c), which prohibits a party from engaging in conduct

---

[11]   Although courts permit parties to plead claims in the alternative, a complaint must make clear that that is, in fact, what is being done. *See Holman v. Indiana*, 211 F.3d 399, 406–07 (7th Cir. 2000) ("While the Holmans need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing. . . . [W]e should not draw inferences that while theoretically plausible are inconsistent with the pleadings").

that a federal appellate court has found to constitute an unfair trade practice under Section 5 of the FTC Act.  M.C.L. § 445.911(c)[12].  Plaintiffs have not identified any specific judicial decisions by any federal appellate court that would qualify. The only federal appellate decision that Plaintiffs cite (the *Gold* decision) did not involve a claim under Section 5 of the FTC Act or a cease-and-desist order by the FTC.

### B.   Plaintiffs Fail To State An Unjust Enrichment Claim (Count V).

Under Michigan law, the elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant.  *See Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993).  With unjust enrichment, "the law operates to imply a contract in order to prevent unjust enrichment."  *Id.*  Courts will imply a contract, however, "only if there is no express contract covering the subject matter."  *Id.*; *see APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) ("Unjust enrichment . . . is not applicable when the parties are bound by an express written agreement"); *see also Sivak v. United Parcel Serv.*, 2014 WL 2938088, at *9 (E.D. Mich. July 1, 2014) ("Michigan law does not permit this Court to imply a contract where there is an express contract covering the same subject matter").

---

[12]    The case must involve the affirmance of a cease-and-desist order issued by the FTC.  M.C.L. § 445.911(c).

Here, Plaintiffs admit that they purchased IP enrollment kits. [Dkt. 1, at 6–7 (¶¶ 8–10).]  In doing so, they entered into a contractual distributor relationship with ViSalus.  Plaintiffs may not sue for unjust enrichment because of their contractual relationship with ViSalus.  Plaintiffs' unjust enrichment claim also fails because they do not seek return of any benefit that they conferred on Defendants.  Instead, Plaintiffs seek return of monies that ViSalus allegedly paid to various individuals and entities between October 2008 and July 2013.  [*Id.* at 105–07 (¶¶ 211–14).]  For this reason also, Plaintiffs have not stated a claim for unjust enrichment.

### C.      **Plaintiffs Fail To State A Conversion Claim (Count VI).**

Under Michigan law, there are three elements to a common-law conversion claim:  (1) a distinct act of dominion, (2) wrongfully exerted, (3) over another's personal property.  Statutory conversion also is prohibited, but "conversion" is not defined.   M.C.L. § 600.2919a.   Michigan courts therefore have applied the common-law definition of conversion to statutory conversion claims.  *See Gillis v. Wells Fargo Bank, N.A.*, 875 F. Supp. 2d 728, 737 (E.D. Mich. 2012).

A claim based on the alleged conversion of funds is only viable in limited circumstances:  "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care."   *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999).  "The defendant must have obtained the money without the owner's consent

to the creation of a debtor and creditor relationship." *Id.* (citation omitted)). "[W]hen the dispute is over moneys owed, conversion is only applicable in cases involving money that is the property of one party but held by another party (*e.g.*, bank accounts, trusts, etc.) which is then wrongfully taken." *Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008).

Here, Plaintiffs assert only that Defendants have "wrongfully taken and otherwise exerted dominion over the enrollment and other fees and costs" that Plaintiffs paid to become IPs. [Dkt. 1 at 109 (¶ 221).] Plaintiffs do not allege that Defendants obtained enrollment and other fees and costs from Plaintiffs without their consent. Plaintiffs also do not allege that any Defendant was holding Plaintiffs' enrollment and other fees and costs in trust for Plaintiffs. Because Plaintiffs' have not set forth facts demonstrating that any Defendant held and was required to return specific funds, Plaintiffs' conversion claim fails.

### D.   Plaintiffs Fail To State A Civil Conspiracy Claim (Count VII).

In two conclusory paragraphs, Plaintiffs purport to assert a claim that all 31 Defendants engaged in a civil conspiracy to operate a pyramid scheme. [Dkt. 1 at 109–10 (¶¶ 224–25).] Claims of conspiracy must be pled "with some degree of specificity." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011). Also, a conspiracy "requires proof of an intentional agreement." *Fremont*, 811

F. Supp. 2d at 1341.  Simply alleging the conclusion that Defendants entered into a conspiratorial agreement is not sufficient.  *See Twombly*, 550 U.S. at 565 n.10 (noting, in a civil conspiracy case, that complaint should specify which defendant agreed to enter into the conspiracy, and when and where such agreement occurred); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 904–05 (6th Cir. 2009) (rejecting naked assertions of an "agreement between and among defendants" as "a legal conclusion 'masquerading' as a factual allegation").

Here, the Complaint fails to provide any facts demonstrating plausibly that each of the 31 Defendants entered into an agreement to operate a pyramid scheme. And it certainly fails to plead when and where each of the 31 Defendants entered into such agreement.  Accordingly, the civil conspiracy claim should be dismissed.

### E.   Plaintiffs Fail To State A Claim Under The Michigan Franchise Investment Law (Count VIII).

Plaintiffs' MFIL claim is based on alleged violations of four different sections:  Section 5 (M.C.L. § 445.1505), Section 13 (M.C.L. § 445.1513), Section 25 (M.C.L. § 445.1525), and Section 28 (M.C.L. § 445.1528).  [Dkt. 1, at 110–12 (¶¶ 227–31).]  To begin with, the MFIL provides for a private cause of action for damages only for violations of Sections 5 or 8.  *See* M.C.L. § 445.1531(1) ("A person who offers or sells a franchise in violation of section 5 or 8 is liable to the person purchasing the franchise for damages or rescission, with interest . . . and reasonable attorney fees and court costs"); *id.* § 445.1534 ("Except as explicitly

31

provided in this act, civil liability in favor of any private party shall not arise against a person by implication from or as a result of the violation of a provision of this act or a rule or order hereunder").  Thus, Plaintiffs cannot bring a damages claim based on alleged violations of Sections 13, 25, or 28.[13]  [Dkt. 1 at 114–15.] These aspects of Plaintiffs' MFIL claim should be dismissed with prejudice.

With respect to the alleged violation of Section 5, reliance is a necessary element of that claim.  *See Cook v. Little Caesar Enters.*, 972 F. Supp. 400, 414 (E.D. Mich. 1997) (finding that actual and reasonable or justifiable reliance is required to support a claim under Section 5 of the MFIL).  Here, Plaintiffs have not pled any facts, let alone with particularity, identifying any allegedly fraudulent statements that they relied upon in connection with the offer, sale or purchase of their distributorships from ViSalus.  Thus, this claim also should be dismissed.

### F.    <u>Plaintiffs Fail To State A Claim For An Accounting (Count IX).</u>

Plaintiffs claim for an equitable accounting fails for two reasons.  First, a "suit for an accounting invokes the powers of a court of equity," *Bondy v. Davis*, 198 N.W.2d 418, 421 (Mich. Ct. App. 1972), and a plaintiff is not entitled to an accounting where the action is for a sum certain and discovery is sufficient to determine the amounts at issue.  *See Barkho v. Homecomings Fin., LLC*, 657

---

[13]    A contract made in violation of Section 28 is "voidable at the sole option of the purchaser," *see* M.C.L. § 445.1528(2), but the MFIL does not provide for a cause of action for damages for violation of this Section.

F. Supp. 2d 857, 865 (E.D. Mich. 2009).   Here, Plaintiffs do not allege that discovery is "so complex that ordinary discovery procedures would be inadequate to discern the amount in controversy," and the Complaint contains no showing of necessity to invoke the equitable powers of the Court.  *Id.*

Second, an action for an accounting is "maintainable in the case of a fiduciary or trust relation between the parties, under which one party has a right to an accounting and a duty rests upon the other to keep and render an account." *Bondy*, 198 N.W.2d at 421; *see also Utica Steel, Inc. v. Amormino*, 2014 WL 1401939, at *5 (Mich. Ct. App. Apr. 10, 2014) ("A court sitting in equity may order the remedy of an accounting against a party in a fiduciary relationship to the claimant").  Plaintiffs, however, do not set forth facts demonstrating plausibly that any Defendant occupied a fiduciary or trust relationship with Plaintiffs.

### G.   Plaintiffs Are Not Entitled To A Constructive Trust (Count IX).

Plaintiffs allege that a constructive trust is appropriate "under equity and/or to prevent unjust enrichment".  [Dkt. 1, at 113 (¶ 238).]  To the extent this request is based on the unjust enrichment claim, it fails because Plaintiffs have not stated a claim for unjust enrichment.  *See Michigan Bank, N.A. v. William J. Kahlich, Inc.*, 179 N.W.2d 29, 30-31 (Mich. Ct. App. 1970) (a constructive trust is a legal fiction designed to prevent unjust enrichment).  As for Plaintiffs' request to invoke the

equitable powers of the Court, the Complaint contains no showing of need—*e.g.*, that Plaintiffs lack an adequate remedy at law. *See Barkho*, 657 F. Supp. 2d at 865.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

Dated:  October 27, 2014                    Respectfully submitted,

By:   /s/Nicholas B. Gorga
Attorney for the ViSalus Defendants

QUARLES & BRADY LLP                 HONIGMAN MILLER SCHWARTZ
                                     AND COHN LLP

James A. Ryan (AZ Bar #009253)
Kevin D. Quigley (AZ Bar #015972)    Nicholas B. Gorga (P72297)
Edward A. Salanga (AZ Bar #020654)   Mitra Jafary-Hariri (P74460)
Brian A. Howie (AZ Bar #026021)      660 Woodward Avenue
*All Admitted to Practice in ED MI*  2290 First National Building
2 North Central Avenue               Detroit, MI  48226-3506
Renaissance One                      Telephone Number: (313) 465-7640
Phoenix, AZ 85004                    Fax Number: (313) 465-7641
Telephone Number: (602) 229.5200     E-Mail: ngorga@honigman.com
Fax Number: (602) 229.5690           mjafary-hariri@honigman.com
E-Mail: james.ryan@quarles.com
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com

34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By:   /s/Nicholas B. Gorga
Attorney for the ViSalus Defendants