UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY KERRIGAN, LORI MIKOVICH and RYAN M. VALLI, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>VISALUS, INC., a corporation, et al.,<br><br>        Defendants. | Case No. 2:14-cv-12693-MFL-DRG<br><br>Hon. Matthew F. Leitman<br><br>(ORAL ARGUMENT REQUESTED) |

## VISALUS DEFENDANTS' PARTIAL MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants ViSalus, Inc.; Robert Goergen, Sr.; Todd Goergen; Ryan Blair; and Blake Mallen ("ViSalus Defendants") hereby move to dismiss Counts I-IV, VI-VII, and XI of Plaintiffs' First Amended Complaint [Dkt. 56] ("FAC") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"). As to Count III in particular, Plaintiffs have not satisfied the pleading requirements of the PSLRA. The ViSalus Defendants do not seek dismissal of Counts V and VIII-X. For the reasons set forth in the attached Memorandum of Points and Authorities, the ViSalus Defendants respectfully request partial dismissal of the FAC.

In accordance with Local Rule 7.1 and the Court's instruction during the July 22, 2015 telephone conference, the ViSalus Defendants conducted a substantive conference with Plaintiffs regarding this Motion.  On August 20, 2015, counsel for ViSalus provided Plaintiffs' counsel with an outline of the basis for this Motion.  The outline included a detailed analysis of each Count of the FAC that the ViSalus Defendants found insufficient.  The analysis included specific citations to the FAC and legal authority to support the ViSalus Defendants' positions.

On August 25, 2015, the parties participated in a substantive and lengthy phone conference to discuss the sufficiency of the FAC.  During the August 25, 2015 call, the parties discussed each of the Counts to be challenged, the relevant portions of the FAC, and the legal authority for each party's position.  Plaintiffs' counsel stated that a detailed letter outlining Plaintiffs' position as to each of the disputed points would be provided by August 26, 2015.  However, Plaintiffs' counsel did not send that letter until Friday, August 28, 2015.

Despite the thoughtful meet-and-confer in which the parties engaged, the ViSalus Defendants did not obtain concurrence in the relief sought.  The ViSalus Defendants did, however, obtain clarity on Plaintiffs' positions and have drafted their brief in support of this Motion to account for those clarifications.

18898797.3

WHEREFORE, the ViSalus Defendants respectfully request that this Court dismiss Counts I-IV, VI-VII, and XI of FAC, with prejudice, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6) and the PSLRA.

Dated: August 31, 2015

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

/s/Nicholas B. Gorga
Nicholas B. Gorga (P72297)
Mitra Jafary-Hariri(P74460)
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226-3506
Telephone Number: (313) 465-7640
Fax Number: (313) 465-7641
E-Mail: ngorga@honigman.com

and

QUARLES & BRADY LLP
James A. Ryan (AZ Bar #009253)
Kevin D. Quigley (AZ Bar #015972)
Brian A. Howie (AZ Bar #026021)
Edward A. Salanga (AZ Bar #020654)
*All Admitted to Practice in ED MI*
2 North Central Avenue
Renaissance One
Phoenix, AZ 85004
Telephone Number: (602) 229-5200
Fax Number: (602) 229-5690
E-Mail: james.ryan@quarles.com
Kevin.quigley@quarles.com
Brian.howie@quarles.com

3

Edward.salanga@quarles.com
*Attorneys for Defendants ViSalus, Inc., Ryan
Blair, Blake Mallen, Robert Goergen, Sr.,
and Todd Goergen*

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KERRIGAN, LORI MIKOVICH
and RYAN M. VALLI, individually, and on
behalf of all others similarly situated,

        Plaintiffs,

v.

VISALUS, INC., a corporation, et al.,

        Defendants.

Case No. 2:14-cv-12693-MFL-DRG

Hon. Matthew F. Leitman

(ORAL ARGUMENT
REQUESTED)

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE VISALUS DEFENDANTS' PARTIAL
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

      The ViSalus Defendants submit this Memorandum of Points and Authorities in Support of the ViSalus Defendants' Partial Motion to Dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6) and the Private Securities Litigation Reform Act.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................i

INTRODUCTION ...............................................................................................1

I.     The 10(b)/10b-5 Claims Should Be Dismissed. ...............................1

    A.    Plaintiffs Have Not Pled Actionable Misrepresentations Or Omissions By Each Defendant. ...............................................2

    B.    Plaintiffs Have Not Pled A Strong Inference Of Scienter. ..................7

    C.    Plaintiffs Have Not Pled Justifiable Reliance. ...................................11

    D.    Plaintiffs Have Not Pled a **"Scheme Liability"** Claim. .....................12

II.    The 12(2) Claims Should Be Dismissed. .......................................13

    A.    The Individual Defendants Are Not Statutory Sellers. .......................13

    B.    Plaintiffs Have Not Pled Actionable Misrepresentations Or Omissions By ViSalus. ........................................................14

III.    Plaintiffs' Rico Claims Should Be Dismissed. ...............................15

    A.    There Are No Facts Supporting A Plausible Inference Of Scienter. ...................................................................16

    B.    Plaintiffs Have Not Pled Proximate Cause. ......................................19

    C.    Plaintiffs Do Not Allege A RICO Enterprise That Is Distinct From ViSalus. ..............................................................22

    D.    Plaintiffs Have Not Pled Two Predicate Acts As To The Goergens. ...............................................................26

IV.    The M.C.L § 445.903 Claims Against All Defendants (Other Than ViSalus) Should Be Dismissed. ......................................................27

V.    The Section 445.911(3)(c) Claims Should Be Dismissed. ...........................28

VI.    The Unjust Enrichment Claims Should Be Dismissed. ................................28

VII.   The MFIL Section 5 Claims Should Be Dismissed. ....................................30

CONCLUSION ....................................................................................................31

18898797.3

**TABLE OF AUTHORITIES**

C<small>ASES</small>

*Abuhamdan v. Blyth, Inc.*,
  9 F. Supp. 3d 175 (D. Conn. 2014)...................................................10

*Affiliated Ute Citizens v. U.S.*,
  406 U.S. 128 (1988).............................................................4, 11

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................11

*Begala v. PNC Bank*,
  214 F.3d 776 (6th Cir. 2000) ......................................................23

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001)...............................................................23

*Central Bank v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)................................................................3

*Chiarella v. U.S.*,
  445 U.S. 222 (1980).................................................................4

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
  865 F. Supp. 2d 811 (W.D. Mich. 2012) ............................................8

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) .......................................................5

*Cook v. Little Caesar Enters., Inc.*,
  972 F. Supp. 400 (E.D. Mich. 1997) ...............................................31

*Cranel, Inc. v. Pro Image Consultants Grp.*,
  57 F. Supp. 3d 838 (S.D. Ohio 2014) ......................................... 16-17

*D.E. & J Ltd. P'ship v. Conaway*,
  284 F. Supp. 2d 719 (E.D. Mich. 2003) ........................................3, 8

*Danielson v. DBM, Inc.*,
  2006 WL 3246581 (N.D. Ga. Nov. 8, 2006)........................................21

18898797.3

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
  722 F. Supp. 2d 875 (W.D. Mich. 2010) ............................................................28

*Fitzgerald v. Chrysler Corp.*,
  116 F.3d 225 (7th Cir. 1997) ...................................................................... 24-25

*Franchise Mgmt. Unlimited, Inc. v. America's Favorite Chicken*,
  561 N.W.2d 123 (Mich. Ct. App. 1997)............................................................30

*Freeman v. Laventhol & Horwath*,
  915 F.2d 193 (6th Cir. 1990) ...................................................................... 11-12

*FTC v. Skybiz.com*,
  57 F. App'x. 374 (10th Cir. 2003) ....................................................................28

*Ger-Ro-Mar, Inc. v. FTC*,
  518 F.2d 33 (2d Cir. 1975) ................................................................................28

*Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart
  Realty Inc.*, 493 F. App'x 248 (3d Cir. 2012)....................................................30

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
  668 F.3d 393 (6th Cir. 2012) .......................................................... 16, 18-19, 27

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ..............................................................................8

*Indiana State Dist. Council of Laborers & Hod Carriers Pension &
  Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935 (6th Cir. 2009).........................5

*In re ClassicStar Mare Lease Litig.*,
  727 F.3d 473 (6th Cir. 2013) .....................................................................23, 25

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*,
  7 F.3d 357 (3d Cir. 1993) .................................................................................14

*In re Herbalife, Ltd. Sec. Litig.*,
  Case. No. 2:14-cv-02850-DSF-JCG (C.D. Cal. July 28, 2015) ........................10

*In re Koscot Interplanetary, Inc.*,
  86 F.T.C. 1106 (1975) ......................................................................................28

iv

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009) ................................................................15

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) ...................................................................*Passim*

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004)...................................................................13

*In re Royal Dutch/Shell Transp.*,
    2006 WL 2355402 (D.N.J. Aug. 14, 2006) ........................................................13

*In re Sofamor Danek Grp., Inc.*,
    123 F.3d 394 (6th Cir. 1997) .................................................................................5

*In re United Am. Healthcare Corp. Sec. Litig.*,
    2007 WL 313491 (E.D. Mich. Jan. 30, 2007) ......................................................5

*In re YUM! Brands, Inc. Sec. Litig.*,
    73 F. Supp. 3d 846 (W.D. Ky. 2014)..............................................................9, 15

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011)..........................................................................................4

*Kalamazoo River Study Grp. v. Rockwell Int'l*,
    3 F. Supp. 2d 815 (W.D. Mich. 1997) ...............................................................29

*Malack v. BDO Seidman, LLP*,
    617 F.3d 743 (3d Cir. 2010) ...............................................................................12

*Muncy v. Intercloud Systems, Inc.*,
    2015 WL 1038714 (E.D. Ky. Mar. 10, 2015) ......................................................9

*Ockerman v. May Zima & Co.*,
    27 F.3d 1151 (6th Cir. 1994) ..............................................................................12

*Pa. Emp. Benefit Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010).....................................................................29

*Perry v. Am. Tobacco Co.*,
    324 F.3d 845 (6th Cir. 2003) ..............................................................................29

*Pinter v. Dahl*,
    486 U.S. 622 (1988)........................................................................................14

*Republic of Panama v. BCCI Holdings*,
    119 F.3d 935 (11th Cir. 1997) .......................................................................19

*Smith v. Am. Nat'l Bank & Trust Co.*,
    982 F.2d 936 (6th Cir. 1992) .........................................................................14

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ....................................................................28, 30

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
    552 U.S. 148 (2008)................................................................................. 11-13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................8

*Turner v. F.T.C.*,
    580 F.2d 701 (D.C. Cir. 1978) .......................................................................28

*United States v. DeSantis*,
    134 F.3d 760 (6th Cir. 1998) .........................................................................16

*United States v. Gold Unlimited, Inc.*,
    177 F.3d 472 (6th Cir. 1999) .....................................................................5, 13

*Walker v. Brooke Corp.*,
    2010 WL 1257341 (E.D. Mich. Mar. 30, 2010)............................................30

*Webster v. Omnitrition, Int'l*,
    79 F.3d 776 (9th Cir. 1996) ...........................................................................13

*Zaluski v. United Am. Healthcare Corp.*,
    527 F.3d 564 (6th Cir. 2008) ...........................................................................5

STATUTES

15 U.S.C. § 78j(b) ..............................................................................................2

15 U.S.C. § 78u-4(b)(1) .....................................................................................2

vi

M.C.L.A § 445.1531(1) ........................................................................30

M.C.L § 445.903 ................................................................................27

RICO Section 1962(c)...................................................................*Passim*

Section 10(b) of the Securities Exchange Act of 1934 ..................... 1, 3-4

Section 12(2) of the Securities Act of 1933 (the "12(2) Claims") ............... 1, 13-15

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5.................................................................*Passim*

17 C.F.R. § 240.10b-5(a) ..................................................................13

17 C.F.R. § 240.10b-5(b) ..................................................................4

Fed. R. Civ. P. 9(b) ...................................................................*Passim*

Fed R. Civ. P. 12(b)(6)......................................................................13

18898797.3

## STATEMENT OF ISSUES PRESENTED

1. In Count III, does the FAC plead with particularity, in accordance with FRCP 9(b) and the PSLRA, an actionable misrepresentation or omission under Section 10(b)/Rule 10b-5 made by each of the ViSalus Defendants?

   **ViSalus Defendants' Answer: No.**

2. In Count III, does the FAC plead with particularly, in accordance with FRCP 9(b) and the PSLRA, facts giving rise to a strong inference that each of the ViSalus Defendants acted with the required state of mind for Plaintiffs' Section 10(b)/Rule 10b-5(a) through (c) claims?

   **ViSalus Defendants' Answer: No.**

3. In Count III, does the FAC plead justifiable reliance in support of their Section 10(b)/Rule 10b-5(a) through (c) claims?

   **ViSalus Defendants' Answer: No.**

4. In Count IV, does the FAC plead sufficient facts demonstrating that, pursuant to Section 12(2), the Individual Defendants could reasonably be considered a "seller" and that any of the ViSalus Defendants made an actionable misrepresentation or omission?

   **ViSalus Defendants' Answer: No.**

5. In Counts I and II, does the FAC state a valid RICO claim against any of the ViSalus Defendants?

   **ViSalus Defendants' Answer: No.**

6. In Count VI, does the FAC state a valid claim under the Michigan Consumer Protection Act (M.C.L. § 445.903) against any of the ViSalus Defendants other than ViSalus?

   **ViSalus Defendants' Answer: No.**

7. In Count VI, does the FAC state a claim under the Michigan Consumer Protection Act (M.C.L. §445.911(3)(c)) against any of the ViSalus Defendants?

2:14-cv-12693-MFL-DRG   Doc # 62   Filed 08/31/15   Pg 14 of 48   Pg ID 1622

**ViSalus Defendants' Answer: No.**

8. In Count VII, does the FAC state a valid claim for unjust enrichment against any of the ViSalus Defendants?

   **ViSalus Defendants' Answer: No.**

9. In Count XI, does the FAC state a valid claim under Section 5 of the Michigan Franchise Investment Law against any of the ViSalus Defendants?

   **ViSalus Defendants' Answer: No.**

ix

18898797.3

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Regarding the pleading standard**

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(6)

Private Securities Litigation Reform Act

**Regarding the 10(b)/10b-5 claims (Count III)**

*Freeman v. Laventhol & Horwath*,
 915 F.2d 193 (6th Cir. 1990)

*In re Omnicare, Inc. Sec. Litig.*,
 769 F.3d 455 (6th Cir. 2014)

*Janus Capital Grp., Inc. v. First Derivative Traders*,
 131 S. Ct. 2296 (2011)

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
 552 U.S. 148 (2008)

**Regarding the Section 12(2) claims (Count IV)**

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*,
 7 F.3d 357 (3d Cir. 1993)

*Smith v. Am. Nat'l Bank & Trust Co.*,
 982 F.2d 936 (6th Cir. 1992)

x

**Regarding the RICO claims (Counts I and II)**

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
 668 F.3d 393 (6th Cir. 2012)

*In re ClassicStar Mare Lease Litig.*,
 727 F.3d 473 (6th Cir. 2013)

**Regarding the Michigan Consumer Protection Act claim (Count VI)**

M.C.L § 445.903

M.C.L. § 445.911(3)(c)

**Regarding the unjust enrichment claim (Count VII)**

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
 722 F. Supp. 2d 875 (W.D. Mich. 2010)

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
 171 F.3d 912 (3d Cir. 1999)

**Regarding Section 5 of the Michigan Franchise Investment Law (Count XI)**

*Cook v. Little Caesar Enters., Inc.*,
 972 F. Supp. 400 (E.D. Mich. 1997)

*Franchise Mgmt. Unlimited, Inc. v. America's Favorite Chicken*,
 561 N.W.2d 123 (Mich. Ct. App. 1997)

*Walker v. Brooke Corp.*,
 2010 WL 1257341 (E.D. Mich. Mar. 30, 2010)

## **INTRODUCTION**

Plaintiffs' First Amended Complaint (the "FAC") [Dkt. 56] brings two new claims and attempts to re-plead several others.  The new claims are Count III, in which Plaintiffs allege a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (the "10(b)/10b-5 Claims"), and Count IV, in which Plaintiffs allege violations of Section 12(2) of the Securities Act of 1933 (the "12(2) Claims").  These new claims are deficient – not because Plaintiffs fail to allege the existence of a security (ViSalus concedes that point) – but rather because Plaintiffs fail to plead other essential elements of those claims.  On the Section 10(b) claims, Plaintiffs do not plead, with particularity and in accordance with the PSLRA, an actionable misrepresentation or omission, scienter and justifiable reliance.  As for the 12(2) Claims, only ViSalus could reasonably be considered a "seller."   And as to ViSalus, Plaintiffs have not pled an actionable misrepresentation or omission.  The re-pled RICO claims and some of the state law claims should be dismissed again as well, for the reasons set forth herein.[1]

## **I.     THE 10(b)/10b-5 CLAIMS SHOULD BE DISMISSED.**

In Count III, Plaintiffs allege that each of the ViSalus Defendants (and Defendant Sarnicola) "made material misrepresentations and/or omissions in connection with the sale of distributorships to Plaintiffs and the class" in violation

---

1  The ViSalus Defendants do not seek dismissal of Counts V and VIII-X.

of 15 U.S.C. § 78j(b) ("10(b)") and 17 C.F.R. § 240.10b-5 ("10b-5"). [Dkt. 56, at 169-70 (¶ 218).] A Section 10(b)/10b-5 claim has six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Omnicare, Inc. Sec. Litig. ("Omnicare")*, 769 F.3d 455, 469 (6th Cir. 2014). Securities fraud claims are subject not only to the pleading requirements of Rule 9(b) but also the more exacting pleading standards imposed by the PSLRA, which requires that Plaintiffs "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." *Id.* § 78u-4(b)(2). The 10b/10b-5 Claims should be dismissed because Plaintiffs have not alleged (1) an actionable misrepresentation or omission by each defendant, (2) scienter allegations giving rise to a strong inference that each defendant knew ViSalus was a pyramid scheme, and (3) facts supporting a plausible inference of justifiable reliance.

### A.    **Plaintiffs Have Not Pled Actionable Misrepresentations Or Omissions By Each Defendant.**

Beginning with affirmative misrepresentations, Plaintiffs plead only generally that "Defendants falsely represented that they were conveying a legal

2

business opportunity, when, in fact, they and each of them knew or recklessly ignored that Plaintiffs were purchasing an interest in an illegal pyramid scheme." These group pleading allegations do not satisfy Plaintiffs' obligations under the PSLRA and Rule 9(b).  *See D.E.& J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003) (recognizing that "'group pleading' run[s] afoul of *Central Bank* [*v. First Interstate Bank of Denver, N.A.*, 511 U.S 164 (1994)]" and fails to meet both Rule 9(b)'s specificity requirements and the "heightened standards for pleading a Section 10(b) violation after passage of the PSLRA").  The summary allegations of wire fraud [Dkt. 56, at 106-24 (¶ 186)] also do not help Plaintiffs. None of those allegations contain the alleged false affirmative misrepresentation that the ViSalus program was "a legal business opportunity."

The only affirmative representations identified as actually being made to Plaintiffs are those contained in the Compensation Plan.  [Dkt. 56, Ex. A.] Plaintiffs assert that they were presented a copy of the Compensation Plan during meetings they attended.  But they do not allege that the representations in the Compensation Plan were made by anyone other than ViSalus.  In fact, Plaintiffs admit that they do not know who presented the Compensation Plan to them, or even who spoke at the various meetings they attended when they received the Compensation Plan.  [Dkt. 56, at 176 (¶ 238).]  Thus, the only "maker" of an alleged misrepresentation or omission is ViSalus, and the 10(b)/10b-5 Claims

3

directed at the individual defendants should be dismissed for this independent reason. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011) (recognizing that 10b-5 liability based on alleged misrepresentations or omissions is limited to the "maker" of the misrepresentation or omission and holding that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Even as to ViSalus, however, the Compensation Plan does not contain an affirmative representation that ViSalus is a "legal business opportunity."

Plaintiffs' real complaint is that the representations contained in the Compensation Plan were misleading because ViSalus failed to disclose that it is actually a pyramid scheme.[2] *See* 17 C.F.R. § 240.10b-5(b) ("It shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary *in order to make the statements made, in light of the circumstances under which they were made,* not misleading.") (emphasis added). But these allegations are simply Plaintiffs' own legal conclusions and opinions,

---

[2]  Plaintiffs do not (and could not) allege that ViSalus had a duty to disclose in the absence of any affirmative representation.  "[S]ilence in connection with the purchase or sale of securities may operate as a fraud actionable under §10(b) . . . . But such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." *Chiarella v. U.S.*, 445 U.S. 222, 230 (1980) (citing *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128 (1972)).

18898797.3

which the Sixth Circuit characterizes as "soft information."[3] *Omnicare*, 769 F.3d at 470; *see also In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401-02 (6th Cir. 1997) ("Hard information is typically historical information or other factual information that is objectively verifiable. . . . Such information is to be contrasted with soft information, which includes predictions and matters of opinion. . . .") (internal quotations and citations omitted); *Indiana State Dist. Council of Laborers & Hod Carriers Pension Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009) (generally, "statements regarding 'legal compliance' are not actionable because companies have no duty to opine about the legality of their own actions").

In the Sixth Circuit, the duty to disclose "soft information" exists "only if it is virtually as certain as hard facts." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 572 (6th Cir. 2008) (quoting *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005)); *In re United Am. Healthcare Corp. Sec. Litig.*, 2007 WL 313491, at *13 (E.D. Mich. Jan. 30, 2007) ("The Sixth Circuit's cases 'firmly establish the rule that soft information . . . must be disclosed only if . . . virtually as certain as hard facts.'") (quoting *Sofamor*

---

3  In *Gold*, the Sixth Circuit acknowledged that resolving the question of whether an MLM is operating as an illegal pyramid involves application of a multi-factor test and in-depth analysis. *See Gold Unlimited, Inc.*, 177 F.3d at 479-80.  Relying on *Gold*, Plaintiffs concede that there is no "bright line" between an MLM and a pyramid scheme.  [Dkt. 56, at 19 (¶ 41) ("No clear line separates illegal pyramid schemes from legitimate multilevel marketing programs") (quoting *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 475 (6th Cir. 1999)).]

*Danek*, 123 F.3d at 402). In other words, a plaintiff must "allege particular facts demonstrating that the defendants *had actual knowledge* that their statements concerning soft information were false or misleading *at the time they were made*." *Omnicare*, 769 F.3d at 471 (emphasis added). And where a claim is based on an alleged omission of a material fact that should have been disclosed to correct an inaccurate, incomplete or misleading prior disclosure, the same standard applies:

> If the new information is soft, then a person or corporation has a duty to disclose it "only if it is virtually as certain as hard facts" and contradicts the prior statement. . . . *In other words, the new information must be so concrete that the defendant must have actually known that the new information renders the prior statement misleading or false and still did not disclose it.*

*Id.* at 471 (quoting *Sofamor Danek*, 123 F.3d at 402) (emphasis added). As discussed in the next section addressing Plaintiffs' scienter allegations, Plaintiffs have not pled facts showing that any of the ViSalus Defendants had actual knowledge that their statements concerning the ViSalus program were false – *i.e.*, that when Plaintiffs were presented the Compensation Plan, the ViSalus Defendants knew that ViSalus actually was a pyramid.[4]

_____

[4] In *Omnicare*, the court instructs us to deal with the subjective inquiry as to whether the complaint's allegations sufficiently allege that the ViSalus defendants *knew* that ViSalus was a pyramid as part of the scienter analysis, rather than the actionable misrepresentation analysis. 769 F.3d at 471 ("Under either approach, Plaintiffs will need to allege particular facts demonstrating that defendants had actual knowledge that their statements concerning soft information were false or

6

**B.**     **Plaintiffs Have Not Pled A Strong Inference Of Scienter.**

To state a claim under 10(b)/10b-5, Plaintiffs must plead facts showing that

*each* defendant acted with a "mental state embracing intent to deceive, manipulate

or defraud."  *Omnicare*, 769 F.3d at 472 (citation omitted).  In *Omnicare*, the Sixth

Circuit explained:

> In the past, we have read this language to require
> plaintiffs to allege facts showing that defendants acted
> with at least recklessness. . . .  However, when plaintiffs
> accuse defendants of misrepresenting or omitting soft
> information . . . plaintiffs must plead facts showing that
> the defendants *knowingly misrepresented or omitted facts*
> *to deceive, manipulate, or defraud the public.*

*Id.* at 472 (emphasis added) (citation omitted).  Allegations that Defendants were

"reckless" [*see, e.g.*, Dkt. 56, at 171 (¶ 221)] are therefore insufficient.

Plaintiffs' allegations that each of the Defendants "knew" that Plaintiffs

were purchasing an interest in an illegal pyramid fail as well.  The Supreme Court

has developed a three-part test to assess the sufficiency of scienter allegations:

> (1) accept all factual allegations in the complaint as true.
>
> (2) "consider the complaint in its entirety" and decide
> "whether *all* of the facts alleged, taken collectively, give
> rise to strong inference of scienter," not whether any
> individual allegation, scrutinized in isolation, meets that
> standard.
>
> (3) assuming that the allegations create a "powerful or

---

misleading at the time that they were made.  But for the sake of clarity, it makes
the most sense to adopt the First Circuit's approach and conceive of this additional
requirement as raising the bar for alleging scienter").

18898797.3

> cogent" inference of scienter, compare this inference
> with other competing possibilities, allowing the
> complaint to go forward "only if a reasonable person
> would deem the inference of scienter cogent and at least
> as compelling as any opposing inference one could draw
> from the facts alleged."

*Omnicare*, 769 F.3d at 473 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 322-24 (2007)).  With respect to the individual defendants, the Sixth

Circuit also considers additional factors such as whether there was:

> (1) insider trading at a suspicious time or in an unusual
> amount; (2) divergence between internal reports and
> external statements on the same subject; (3) closeness in
> time of an allegedly fraudulent statement or omission and
> the later disclosure of inconsistent information; (4)
> evidence of bribery by a top company official; (5)
> existence of an ancillary lawsuit charging fraud by a
> company and the company's quick settlement of that suit;
> (6) disregard of the most current factual information
> before making statements; (7) disclosure of accounting
> information in such a way that its negative implications
> could only be understood by someone with a high degree
> of sophistication; (8) the personal interest of certain
> directors in not informing disinterested directors of an
> impending sale of stock; and (9) the self-interested
> motivation of defendants in the form of saving their
> salaries or jobs.

*Id.* (quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (overruled

on other grounds)); *D.E.& J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 741

(E.D. Mich. 2003), *aff'd sub nom. D.E.& J Ltd. P'ship v. Conaway*, 133 F. App'x

994 (6th Cir. 2005) (applying *Helwig* factors); *City of Pontiac Gen. Emps.' Ret.*

*Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 832-33 (W.D. Mich. 2012) (same).

8

"The more of these factors that are present, the stronger the inference that the defendant made his statement with the requisite state of mind." *Omnicare*, 769 F.3d at 473.

In this case, the only factor arguably alleged is the "self-interested motivation of defendants in the form of saving their salaries or jobs" – *i.e.*, that the defendants had a motivation and opportunity to keep making money from the alleged scheme. [Dkt. 56, at 171 (¶ 221) ("Each of the Defendants benefitted in concrete and substantial way from the operation of the pyramid scheme.")] But this allegation alone is insufficient to give rise to a strong inference that the Defendants knew plaintiffs were investing in a pyramid scheme. *See Omnicare*, 769 F.3d at 484 ("If a well-pleaded complaint can allege only that a corporation intended to defraud based on a desire to continue earning money, without showing a particular link between the actual statement and a specific payment, then the heightened pleading standard for scienter has no bite.")[5]

Plaintiffs also allege that "[e]ach of the Defendants engaged in plainly illegal behavior," and that each "had a specific understanding that he was engaged in the

---

[5] *See also Muncy v. Intercloud Systems, Inc.*, 2015 WL 1038714, *11 (E.D. Ky. Mar. 10, 2015) (allegations that the defendant "wanted to increase its profits does little to establish scienter"); *In re YUM! Brands, Inc. Sec. Litig.*, 73 F. Supp. 3d 846, 868-69 (W.D. Ky. 2014) (finding that allegations that the individual defendants acted with scienter to perpetuate Yum!'s rapid growth rate and profitability and, by doing so, maintain their jobs, high compensation levels, and personal reputations, did not give rise to a strong inference of scienter).

9

commission of a pyramid scheme." [Dkt. 56, at 171 (¶ 221).] But these are nothing more than conclusory allegations, unsupported by any facts that could show a strong inference of scienter. The only other scienter allegations concern certain Defendants' purported knowledge of what a pyramid scheme is (*e.g.*, from the Preliminary Prospectus) or the fact that ViSalus might be a pyramid scheme. [*Id.*] But on their face, these allegations do not support an inference that these defendants *knew* that ViSalus was a pyramid scheme. In summary, Plaintiffs have not pled *facts* that plausibly support a strong inference that each individual defendant *knew* that ViSalus was a pyramid scheme at the time Plaintiffs were presented with the Compensation Plan and enrolled as IPs.[6]

---

6 Two different District Courts have rejected similar claims. In *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175 (D. Conn. 2014), and *In re Herbalife, Ltd. Sec. Litig.*, Case. No. 2:14-cv-02850-DSF-JCG (C.D. Cal. July 28, 2015), plaintiffs alleged that the MLM defendants failed to disclose that their companies would eventually fail because they were dependent upon recruiting and not sales to consumers – *i.e.*, they were pyramids. In each case, the courts held that the plaintiffs' 10b/10b-5 claims did not satisfy Rule 9(b) and the PSLRA because, among other reasons, there were no factual allegations that the defendants *knew* that the company was a pyramid and would eventually fail. *Abuhamdan*, 9 F. Supp. 3d at 204 ("[E]ven assuming that the growth was unsustainable – or that ViSalus's demise was a mathematical certainty – the Complaint does not plead sufficient facts to support the inference that Defendants knew or should have known, at the time they made statements about ViSalus, that the growth was unsustainable . . . ."); *In re Herbalife*, at 3-4 (while Plaintiffs' "allegations arguably permit the inference that Herbalife will be penalized for business practices consistent with those of pyramid schemes," "[t]he allegations do not, however, permit the inference that Defendants misrepresented Herbalife's operations with deliberate recklessness or an intent to deceive").

10

As to ViSalus, Plaintiffs' scienter allegations also fail under the Sixth Circuit's corporate scienter rule. *See Omnicare*, 769 F.3d at 476. As shown, the facts alleged do not support a strong inference that any of the individual defendants named in Count III knew that ViSalus was a pyramid scheme. And there are no facts alleged as to any other agents who would come within the Sixth Circuit's corporate scienter rule and whose knowledge could be imputed to the company. Therefore, the claim against ViSalus should be dismissed as well.

### C.    <u>Plaintiffs Have Not Pled Justifiable Reliance.</u>

"Reliance is an essential element of a Rule 10b-5 claim that must be pleaded and proved by Plaintiffs." *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir. 1990) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988)). Plaintiffs have not identified a single misrepresentation or omission by any individual defendant named in Count III that they ostensibly relied upon in enrolling as ViSalus IPs. Instead, Plaintiffs state in conclusory fashion that "reliance may be presumed." [Dkt. 56, at 171 (¶ 220).] However, the Supreme Court has recognized only two situations that give rise to a rebuttable presumption of reliance: "First, if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008) (citing *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-54 (1972)).

11

And "[s]econd, under the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public." *Id.* (citing *Basic*, 485 U.S. at 247). Neither situation applies here.

First, Plaintiffs have not, and cannot, plead facts that would support an inference of a fiduciary or other special relationship that would give rise to an affirmative duty to disclose; nor have they pled facts supporting a duty to disclose the "soft" information in dispute. *See supra*, Section I.A. Second, the distributorships are not actively traded on an efficient market, so the "fraud on the market" presumption does not apply here. *See Freeman*, 915 F.2d at 198.[7]

**D.    Plaintiffs Have Not Pled a "Scheme Liability" Claim.**

In an August 28 letter from their counsel, Plaintiffs "clarified" that Count III asserts not only a claim based on misrepresentations and omissions under 10b-5(b), but also a claim of "scheme liability" under 10b-5(a) and (c).  Taking this clarification at face value, Count III should still be dismissed because even a "scheme liability" claim requires allegations of fact sufficient to establish a strong

---

[7]  To the extent Plaintiffs urge a "fraud created the market" presumption, the Sixth Circuit twice has rejected that theory.  *See Freeman*, 915 F.2d at 198; *see also Ockerman v. May Zima & Co.*, 27 F.3d 1151, 1159 (6th Cir. 1994) ("The fraud-created-the-market theory appears to be at odds with our decision in *Freeman*"). The Court should likewise refuse to recognize such a presumption of reliance in this case.  *See Malack v. BDO Seidman, LLP*, 617 F.3d 743, 756 (3d Cir. 2010) (fraud created the market theory "lacks a basis in common sense, probability, or any of the other reasons commonly provided for the creation of a presumption").

18898797.3

inference of scienter and justifiable reliance.  *See In re Royal Dutch/Shell Transp.*, 2006 WL 2355402, at *3, 7 (D.N.J. Aug. 14, 2006) (to state a claim under Rule 10b-5(a) or (c) a plaintiff must plead scienter and reliance); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 372 & n.25 (D. Md. 2004) ("[C]laims under 10b–5(a) and (c) are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA . . . ."); *Stoneridge*, 552 U.S. at 769-70 (recognizing that reliance must be shown in connection with a 10b-5 "scheme" claim).  Thus, Plaintiffs' 10b-5(a)/(c) claim must be dismissed for the same reasons their 10b-5(b) claims fail.[8]

## II.   THE 12(2) CLAIMS  SHOULD BE DISMISSED.

### A.   The Individual Defendants Are Not Statutory Sellers.

Only a person who "offers or sells a security" can be subject to primary liability for a violation of Section 12(2).  With the exception of ViSalus, Plaintiffs'

---

[8]  Plaintiffs suggest that *Webster v. Omnitrition, Int'l*, 79 F.3d 776 (9th Cir. 1996), and *Gold Unlimited* somehow eliminate the requirement that they plead scienter in addition to the existence of a pyramid scheme.  Their reliance on these cases is misplaced.  Neither one of these cases involved an evaluation of the sufficiency of pleadings under Rules 12(b)(6), 9(b) (post-*Twombly/Iqbal*) and the PSLRA.  In fact, the pleadings in *Omnitrition* pre-date the heightened pleading requirements for scienter now compelled by the PSLRA.  *Gold* also did not concern a securities fraud issue (it was a wire/mail fraud prosecution).  Moreover, the court in *Gold* made it clear that even after proof that the defendants engaged in a pyramid scheme, "the jury still had to find that the defendants *acted knowingly* when they devised their plan, and that the defendants did so *with intent to defraud*."  *Gold*, 177 F.3d at 486.  In other words, in addition to proving the existence of a pyramid, the prosecution in *Gold* was required to allege and prove scienter, and so are the Plaintiffs.  Only now, their scienter allegations are subject to the PSLRA.

13

claims for primary violations of Section 12(2) under Count IV should be dismissed because none of those other Defendants *offered* or *sold* a security to Plaintiffs.

"The test is not whether the defendant was a 'substantial factor' in causing the sale of securities, but whether the defendant either passed title or offered to do so, or solicited an offer." *Smith v. Am. Nat'l Bank & Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992) (citing *Pinter v. Dahl*, 486 U.S. 622 (1988)).  Plaintiffs have not alleged facts sufficient to support their conclusion that any of the Defendants (other than ViSalus) sold or offered to sell them the business opportunity described in the Compensation Plan.  In fact, Plaintiffs confirm that they do not know who presented the Compensation Plan to them.  [Dkt. 56, at 176 (¶ 238).]  For this reason, the Section 12(2) claims against everyone but ViSalus should be dismissed.

## B.   Plaintiffs Have Not Pled Actionable Misrepresentations Or Omissions By ViSalus.

Although scienter is not an element of Plaintiffs' prima facie claim under Section 12(2), an actionable misrepresentation or omission is an element.  The claim thus fails for many of the same reasons the 10(b)/10b-5 claims fail.  Plaintiffs again point to the Compensation Plan, which they allege "omits to disclose that the seller [ViSalus] operates a pyramid scheme" [Dkt. 56, at 173 (¶ 227).]  But they have not alleged facts to show that there was a duty to disclose this "soft information" and thus, an actionable misrepresentation or omission.  *See supra* Section I.A.; *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7

14

F.3d 357, 368-69 (3d Cir. 1993) (recognizing that for Section 12(2) and 10(b) claims, statements of "soft information" are not actionable unless there are sufficient allegations to show that "the speaker does not genuinely and reasonably believe them"); *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 380-81 (S.D.N.Y. 2009), *aff'd sub nom. In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) (dismissing 12(2) claims where there were no allegations that the defendant investment advisors were aware of the alleged conflicts of interest that were the subject of plaintiffs' omissions claims). For this independent reason, the Section 12(2) Claims fail.[9]

## III.   **PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED.**

In Count I, Plaintiffs re-assert a RICO Section 1962(c) claim. The FAC, however, again fails to establish several required elements of a RICO claim as to each Defendant. First, Plaintiffs have not pled facts plausibly demonstrating that any of the ViSalus Defendants acted with the requisite scienter. Second, Plaintiffs have not pled facts plausibly demonstrating that their injuries were proximately caused by the ViSalus Defendants' purported predicate acts of mail and wire fraud.

---

[9]   Within Count IV, Plaintiffs also allege that "[e]ach of Defendants Robert Goergen, Sr., Todd Goergen, Sarnicola, Mallen, and Blair named in this Count was a control person over ViSalus." [Dkt. 56, at 173 (¶ 228).] These allegations fail, however, because "[a] Section 20(a) claim must be predicated on at least one underlying violation of securities law by a controlled person . . . ." *In re Yum! Brands*, 73 F. Supp. 3d at 870-71. Because the primary Section 12(2) claim against ViSalus fails, the secondary control person claims necessarily fail, too.

Third, Plaintiffs have failed to allege a RICO enterprise that is distinct from ViSalus. Finally, Plaintiffs have not sufficiently alleged that either Goergen (Robert Sr. or Todd) committed at least two predicate acts.

### A.    There Are No Facts Supporting A Plausible Inference Of Scienter.

To prevail on a Section 1962(c) claim predicated on wire fraud, a plaintiff must "adequately allege[] that the person making the[] representations acted with knowledge or reckless disregard of their falsity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 406 (6th Cir. 2012).[10] A "general averment of the defendant's 'knowledge' of material falsity" is "uniformly held [to be] inadequate" unless the complaint "also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Id.* at 406 (citation omitted); *see also Cranel, Inc. v. Pro Image Consultants Grp.*, 57 F. Supp. 3d 838, 851 (S.D. Ohio 2014) ("Although the

---

[10] Elsewhere, *Heinrich* cites *United States v. DeSantis*, 134 F.3d 760 (6th Cir. 1998), to define scienter as "a specific intent to defraud or . . . recklessness with respect to potentially misleading information." 668 F.3d at 404. What the Sixth Circuit actually said in *DeSantis* is that specific intent means (1) knowingly making a material misrepresentation or knowingly omitting a material fact; or (2) recklessness – *i.e.*, an "'extreme departure from the standards of ordinary care'" by omitting information that "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" 134 F.3d at 764 (citation omitted). In both instances, the *DeSantis* formulation focuses on *knowledge*; the knowledge is either actual or, in the case of the "obvious" danger, it is imputed to the wrongdoer. To the extent plaintiffs suggest the Sixth Circuit has adopted a lesser standard to establish scienter on a RICO claim, they are wrong.

allegations . . . are sufficient to support the inference that the Defendants intended to misappropriate the Plaintiff's property, they are insufficient to support the inference that the Defendants intended to defraud the Plaintiff").

Plaintiffs allege that the Defendants committed fraud through their knowing participation in a pyramid scheme, but only one paragraph in the FAC attempts to establish that Defendants possessed the requisite scienter. [Dkt. 56, at 144-46 (¶ 187).] As to ViSalus, Plaintiffs assert that the Court may infer scienter based on ViSalus's acknowledgement (presumably in the Preliminary Prospectus) that pyramid schemes are illegal and that there is a risk that a governmental agency or court could require ViSalus to alter its business model. [*Id.*] As to Robert and Todd Goergen, Plaintiffs allege, in conclusory fashion, that they "understood that the operation of the business could be deemed illegal" – and that the Goergens were involved in ViSalus's finances and management. [*Id.*] As to Blair and Mallen, Plaintiffs similarly allege that they were involved in ViSalus's operations and also that they "participated" in a reality show "ridiculing the notion that the ViSalus network sales are in fact an illegal pyramid scheme." [*Id.*]

None of these allegations, however, support a plausible inference that the ViSalus Defendants *knew* that ViSalus is a pyramid scheme and thus acted with fraudulent intent in failing to disclose that supposed fact. That pyramid schemes are illegal is well-known, but ViSalus's mere acknowledgement of that fact hardly

supports an inference that ViSalus *knew* that it was operating a pyramid scheme. Similarly, the mere fact that the individual ViSalus Defendants were involved in ViSalus's finances and management does not establish the requisite intent. Every business manager is involved in some way in the company's finances and management. If that involvement alone were sufficient to establish scienter, then that requirement for mail and wire fraud would be rendered illusory. Finally, Plaintiffs provide no description of how Blair and Mallen participated in Sarnicola's reality show, let alone how "participation" in an endeavor that mocks the idea that ViSalus could be a pyramid scheme actually supports an inference that any of the participants *knew* that ViSalus is in fact a pyramid scheme.

The *Heinrich* case helps illustrate the type of allegation that is *insufficient* to establish scienter. In that case, the prospective adoptive parents of Guatemalan children brought a RICO claim (mail/wire fraud) against an adoption agency and its principals. The parents alleged that the defendants had advertised children available for adoption from Guatemala and took non-refundable deposits from the plaintiffs knowing that the children advertised were not actually available for adoption. 668 F.3d at 406. The Sixth Circuit held that the plaintiffs had not pled scienter because they "fail[ed] to allege any specific facts that would allow us to infer that at the time defendants advertised children as available on their website,

they made this promise of availability with knowledge of its falsity."[11]

The *Heinrich* case is fatal to Plaintiffs' RICO claim.   Whether a child advertised for adoption actually is available is "hard information" (to borrow a term from the securities fraud context) – *i.e.*, it is objectively verifiable (the child is either available or not) and a fact whose existence can be determined before an advertisement is posted and deposits are accepted.   Yet the Sixth Circuit found that the plaintiffs' allegations in *Heinrich* failed to establish that the defendants had knowingly advertised unavailable children.   On the other hand, the line between a legitimate multi-level marketing system and an illegal pyramid scheme is blurry at best – *i.e.*, in the nature of "soft information."   That distinction suggests that, in this case, even more detailed supporting allegations would be needed than would have been the case in *Heinrich*.   Regardless of whether the Sixth Circuit would recognize that hard-soft distinction for RICO scienter purposes, however, the allegations in Plaintiffs' Complaint are precisely the type that the Sixth Circuit found insufficient in *Heinrich* because they do not support a plausible inference that the ViSalus Defendants *knew* that ViSalus was a pyramid scheme.

## B.   **Plaintiffs Have Not Pled Proximate Cause.**

In reviewing Plaintiffs' original complaint, the Court found that "Plaintiffs

---

11  *See Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 950 (11th Cir. 1997) (no allegation that defendants "knew of either the source of the funds or their ultimate beneficiary" or knew that funds "were derived from unlawful activity").

18898797.3

have not pleaded the requisite causal connection between their injuries and predicate acts committed by each Defendant." [Dkt. 54, at 52.] The Court instructed Plaintiffs that they must allege "that they personally received or viewed . . . the mailings, promotional materials, websites, or communications by these Defendants described in the Complaint" or that "they were lured into the ViSalus Program by others who had, in turn been influenced" by the defendants. [*Id.*]

Plaintiff Kerrigan alleges that he became a ViSalus distributor on two separate occasions, once after attending, in person, a meeting in San Diego and once after attending, in person, a meeting in Orlando. Kerrigan alleges only that presentations were made during those meetings and that the Compensation Plan was made available. [Dkt. 56, at 5-7 (¶¶ 8-10).] Similarly, Plaintiffs Mikovich and Valli both allege that they enrolled as ViSalus distributors after attending, in person, a meeting in Detroit. [*Id.* at 7-10 (¶¶ 11-14).]

These allegations fail to satisfy RICO's proximate cause requirement. Plaintiffs do not allege that, prior to enrolling as distributors, they personally reviewed or received any of the mailings, websites, or electronic communications that they later identify as predicate acts in Paragraph 186 of the FAC. [*Id.* at 107-44.] Plaintiffs do not allege that they attended the in-person meetings after

viewing any such mailing, website, or electronic communication.[12]   They do not allege that any such mailing, website, or electronic communication was utilized at the in-person meetings.[13]   They do not allege that they were "lured" into the ViSalus Program by others who had been influenced by having seen these mailings, websites, or electronic communications.   Indeed, Plaintiffs do not even allege that the Compensation Plan was disseminated to them via mail or wire.   On these facts, dismissal is warranted.   *See Danielson v. DBM, Inc.*, 2006 WL 3246581, at *3 (N.D. Ga. Nov. 8, 2006) (dismissing RICO claim where "Plaintiffs do not allege that they ever received any mailing, flyer, letter, phone call, e-mail or Internet ad, or other mail or wire communication from Defendants").

In Appendix 3, Plaintiffs summarize their proximate cause allegations, identifying Paragraphs 185 and 195-99 as containing the necessary information. Paragraph 185, though, contains nothing more than legal conclusions about the definition of wire fraud.   And Paragraphs 195-99 contain only generalized

---

[12]   For example, Plaintiffs claim that Robert Goergen, Sr. committed at least two predicate acts of wire fraud by making certain statements on video.  [Dkt. 56, at 69-70, 72. 75 (¶¶ 130, 133, 138).]  Plaintiffs do not allege, however, that they (or anyone who "lured" them into ViSalus) had seen those videos prior to Plaintiffs' voluntary decision to enroll as distributors.  The same goes for the predicate acts alleged against the other ViSalus Defendants.

[13]   Plaintiffs allege only that a presentation given at the Detroit meeting that Mikovich and Valli attended was "similar" to a video published by Mallen and made on the ViSalus website.  [Dkt. 56, at 7-8 (¶ 11).]  An oral presentation does not become a wire simply because the presentation is similar in content to a wire.

21

assertions that ViSalus was a pyramid scheme that was furthered by the Compensation Plan and the dissemination of false or misleading marketing materials – and that Plaintiffs (and the class) were victims of that scheme.  That is not enough.  The Court has already rejected the notion that "in order to satisfy their causation pleading requirement as to each Defendant, [Plaintiffs] need only allege that they (the Plaintiffs) were intended targets of the fraudulent scheme in which the Defendants participated."   [Dkt. 54, at 51.]   Instead, the Court held that Plaintiffs had to show "a direct causal connection between the *defendant's predicate acts* and the plaintiff's injuries."  [*Id.* at 51, 53.]  The FAC is devoid of these necessary allegations, warranting dismissal of the RICO claim.

## C.   Plaintiffs Do Not Allege A RICO Enterprise That Is Distinct From ViSalus.

The Section 1962(c) claim against ViSalus also fails for the separate and independent reason that Plaintiffs have not pled the existence of a RICO enterprise distinct from ViSalus itself.  The original complaint alleged an association-in-fact enterprise consisting of all defendants, including the outside entities Fragmob and iCentris; however, the FAC now alleges an enterprise consisting solely of ViSalus, the Goergens, Sarnicola, Blair, Mallen, O'Toole, Pacetti, Fortner, Jackson, Wilson, Craig, Varon, Petrilli and Kirkland.  [Dkt. 56, at 63 (¶120).]

The Sixth Circuit interprets Section 1962(c) to require a distinction between a corporate "person" named as the defendant (ViSalus) and the "enterprise."  *See*

*In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013) ("'[A] corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself'") (quoting *Begala v. PNC Bank*, 214 F.3d 776, 781 (6th Cir. 2000)). After all, "if RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO." *Id.* at 490 (citing *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997)).

The Sixth Circuit has identified two distinctness principles: (1) individual defendants are "always distinct from corporate enterprises because they are legally distinct entities"; and (2) corporate defendants are distinct from RICO enterprises "when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity." *Id.* at 492. The first principle does not apply here, because ViSalus, a corporate defendant, is challenging distinctness.[14] And Plaintiffs fail to bring this

---

[14] The first principle applies when an *individual* is the RICO defendant and the alleged enterprise is the individual plus a corporation that he or she wholly owns. That was the fact pattern in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), where the Supreme Court held that the distinctness requirement was satisfied. *Id.* at 163-65. The Court distinguished that fact pattern from one where a *corporation* is the RICO defendant and the enterprise is an association in fact

23

case within the second principle.  The FAC does not demonstrate how ViSalus is functionally separate from an alleged enterprise consisting of ViSalus, its officers, directors (current and former), and key distributors.  [Dkt. 56, at 63 (¶ 120).]

The allegations concerning the "roles" of enterprise members simply recount ViSalus's founding and its conduct of business through its officers, directors, and distributors.  [*Id.* at 64-97 (¶¶ 122-67).]  Plaintiffs do not explain how this regular corporate activity is functionally separate from the activity of the alleged enterprise.  The "identifiable hierarchy and framework within the enterprise" [*id.* at 98 (¶ 170)] is, in fact, the hierarchy and framework that is common in any corporation like ViSalus.  Directors and officers make and implement policies and strategic decisions for the company.  And distributors – though neither employees nor agents of ViSalus – are the mechanism through which ViSalus carries out its regular business activities of selling products and promoting the business opportunity (which is the very conduct that Plaintiffs allege constitutes operation of a pyramid scheme).  On similar facts, the Seventh Circuit found an alleged enterprise consisting of Chrysler and its independent dealers to be insufficiently distinct from defendant Chrysler itself.  *Fitzgerald v. Chrysler Corp.*  116 F.3d at 226-28 ("If Chrysler . . . had no agents, but only employees (it might own all its

---

consisting of the corporation plus its employees and agents.  *Id.*  Allegations that the "individual Defendants are distinct from the corporate defendant" [Dkt. 56, at 101 (¶ 176)] are therefore irrelevant to the argument that ViSalus is making.

24

dealerships), it could not be made liable for warranty fraud under RICO.  What possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make that Chrysler sells its products to the consumer through franchised dealers rather than through dealerships that it owns . . . ?").[15]

The single, conclusory distinctness allegation merely parrots language from *In re ClassicStar*.  [Dkt. 56 at 101 (¶ 176) (alleging that "[t]he corporate Defendant [ViSalus] is functionally separate, performs different roles within the enterprise and uses its separate legal incorporation to facilitate racketeering activity").]  That type of allegation does not satisfy *Twombly*/*Iqbal*.  And the necessary factual support does not lie in the allegation that ViSalus "operates legally in part by selling its products to consumers without operating as a pyramid scheme."  [*Id.*] The same could have been said of Chrysler's automotive business in the *Fitzgerald* case.  In any event, the crux of Plaintiffs' case is that the ViSalus business is a pyramid scheme from top to bottom, and that the sale of products is simply a subterfuge to mask the illegal activity.  There are no factual allegations that demonstrate plausibly that ViSalus is sufficiently distinct from an alleged enterprise consisting of ViSalus, its officers and directors, and its key distributors.

---

15   Plaintiffs also allege that "the different functionality of non-party Blyth, by design, helped facilitate the pyramid scheme."  [Dkt. 56, at 101 (¶ 177).]  But Plaintiffs do not allege that Blyth was a member of the enterprise [*id.* at 63-64 (¶¶ 120-21)], so this passing reference does not cure the distinctness problem.

18898797.3

### D. Plaintiffs Have Not Pled Two Predicate Acts As To The Goergens.

To assert a Section 1962(c) claim, Plaintiffs have to plead that each Defendant "actually committed" two predicate acts, and although specific misrepresentations need not be identified, Plaintiffs must still provide a "clear explanation of each Defendant's alleged role" in the fraudulent scheme. [Dkt. 54 at 48, 50.] Plaintiffs failed to do so as to Robert Goergen, Sr. and Todd Goergen.[16]

Plaintiffs' allegations as to the Goergens fail to meet this standard. As to Robert Goergen, Sr., Plaintiffs allege only that he predicted "exponential growth" for ViSalus in a 2008 video; that Blair praised his mentorship in a 2011 video; that Goergen, Sr. shared his "beliefs" about ViSalus in a video that ViSalus published in 2011; and that he was previously listed on ViSalus's website as a member of ViSalus's executive team. [See Dkt. 56, at 69-70, 72, 75 (¶¶ 130, 133, 138).] No allegations plausibly explain how these actions furthered the fraudulent scheme.

As to Todd Goergen, Plaintiffs allege only that he was previously listed as a member of ViSalus's executive team; stated in an interview in 2012 that he had a role in ViSalus's strategic decisions; is listed as a founding investor and Chief Operating Officer on ViSalus's website; and appeared at public events, including "in 2012 at Sarnicola's house to party with a professional boxer." [See id. at 75-78

---

16  Because Plaintiffs have not pled scienter as to any defendant (see supra § III.A), by definition they have not pled two predicate acts as to any defendant. Even assuming scienter was adequately pled, Plaintiffs have not pled two acts of wire fraud by the Goergens.

18898797.3

(¶¶ 138-39, 141).]  Some of these alleged "acts" do not involve a wire (personal appearances are not wire communications); for those that do, Plaintiffs have not set forth facts plausibly establishing that the act furthered the fraudulent scheme.[17]

## IV. THE M.C.L § 445.903 CLAIMS AGAINST ALL DEFENDANTS (OTHER THAN VISALUS) SHOULD BE DISMISSED.

In dismissing Plaintiffs' original Section 445.903 claim pursuant to Rule 9(b), the Court held that in any amendment, Plaintiffs must "plead with particularity the specific statements that induced them to enroll in the ViSalus Program, the specific Defendants who made those statements, and when and where the statements were made."  [Dkt. 54, at 61.]  Plaintiffs' amended Section 445.903 claim, in Count VI, suffers from the same defects as the original claim.

The only statements that Plaintiffs have identified in the FAC that allegedly induced them to enroll in the ViSalus Program are the statements contained in the Compensation Plan.  They do not allege who spoke to them at the various meetings where they were presented the Compensation Plan, or who presented them with the Compensation Plan.  [Dkt. 56, at 176 (¶ 238).]  And none of the Plaintiffs claim to have heard or relied upon any of the other statements described in the FAC.  Under Rule 9(b), therefore this claim fails as to all Defendants other than ViSalus.

---

17  Because Plaintiffs cannot allege a substantive RICO violation under Section 1962(c), their 1962(d) claim, Count II, fails too.  *See Heinrich*, 668 F.3d at 411.

18898797.3

## V.    THE SECTION 445.911(3)(C) CLAIMS SHOULD BE DISMISSED.

In their second attempt to plead a violation of Section 445.911(3)(c), in Count VI, Plaintiffs identify three cases: *Ger-Ro-Mar, Inc. v. FTC*, 518 F.2d 33 (2d Cir. 1975); *FTC v. Skybiz.com*, 57 F. App'x. 374 (10th Cir. 2003); and *In re Koscot Interplanetary, Inc.,* 86 F.T.C. 1106 (1975), *aff'd sub. nom. Turner v. F.T.C.*, 580 F.2d 701 (D.C. Cir. 1978).   None of these cases satisfy Section 445.911(3)(c), which requires (i) a federal appellate court decision; (ii) that is "officially reported"; and (iii) that affirms or directs the affirmance of a cease and desist order issued by the FTC.   *Id.*   In *Ger-Ro-Mar, Inc.* the Second Circuit *reversed* an FTC order finding Ger-Ro-Mar to be an illegal pyramid scheme.   *FTC v. Skybiz* is an *unpublished* decision involving a *preliminary* injunction order.   And *Turner v. F.T.C.* is an *unpublished* decision.   The Court should dismiss this claim again.

## VI.    THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

To sustain a claim for unjust enrichment, "Plaintiffs must plausibly plead that each Defendant was *unjustly* enriched *at plaintiff's expense*."   [Dkt. 54, at 67.] In other words, Plaintiffs must plausibly connect the payments they made to ViSalus (their impoverishment) to the payments Defendants received from ViSalus (their alleged unjust enrichment).   *See El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 932 (W.D. Mich. 2010).   Also, for the enrichment to be *unjust*, there must be an underlying tort against the Defendants.   *See Steamfitters*

28

*Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)").   Count VII of the FAC fails on both accounts.

First, a number of the alleged "enrichments" occurred prior to 2012, *before* any Plaintiff even enrolled with ViSalus.   [Dkt. 56, at 179-82 (¶¶ 249, 251).]   For the remaining enrichments, the facts alleged do not plausibly connect the enrichment each Defendant received and the benefit each Plaintiff conferred.   *See Kalamazoo River Study Grp. v. Rockwell Int'l*, 3 F. Supp. 2d 815, 818 (W.D. Mich. 1997) (describing causation as an "essential element" of an unjust enrichment claim"); *see also Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003) (dismissing unjust claims on "remoteness" grounds); *Pa. Emp. Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 485 (D. Del. 2010).   The conclusory allegation that "[t]he revenue that resulted in these payments came directly from the payments made by Plaintiffs and the class" does not plausibly establish the required connection.   [Dkt. 56, at 182 (¶ 252).]

Second, the unjust enrichment claim fails because there is no underlying tort claim remaining against the individual Defendants who were allegedly unjustly enriched.   There is a conversion claim, but only against ViSalus, and the other

29

claims against the individual Defendants are statutory in nature. Thus, the unust enrichment claim cannot survive. *See Steamfitters*, 171 F.3d at 936-37 (unjust enrichment claim could not proceed once "traditional tort claims" were "properly dismissed . . . because of the remoteness of plaintiffs' injuries from defendants' wrongdoing"); *see also Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc.*, 493 F. App'x 248, 254 (3d Cir. 2012) ("Because the plaintiff could not prove its fraud claim, we declined to afford it a roundabout route to recovery by way of unjust enrichment").

## VII.   THE MFIL SECTION 5 CLAIMS SHOULD BE DISMISSED.

Liability under MFIL Section 5 is limited to persons who offer or sell a franchise. *See* M.C.L.A § 445.1531(1); *Franchise Mgmt. Unlimited, Inc. v. America's Favorite Chicken,* 561 N.W.2d 123, 129 (Mich. Ct. App. 1997); *Walker v. Brooke Corp.*, 2010 WL 1257341, at *7 (E.D. Mich. Mar. 30, 2010). In this case, the only defendant Plaintiffs have identified who sold or offered to sell them the alleged "franchise" was ViSalus. Therefore, Plaintiffs' claims in Count XI against all Defendants, except for ViSalus, should be dismissed.

The claim against ViSalus fails for some of the same reasons that the 10(b)/10b-5 and RICO claims fail – the absence of factual allegations sufficient to infer the required scienter. Because Section 5 is essentially identical to Rule 10b-5, courts have naturally considered requirements under 10b-5 (or other state's

statutes also modeled on 10b-5) when interpreting Section 5.  *See Cook v. Little Caesar Enters., Inc.*, 972 F. Supp. 400, 412 (E.D. Mich. 1997) (looking to Rule 10b-5 principles and similar laws from other states to interpret the MFIL).  As discussed, Plaintiffs have failed to allege facts supporting an inference of scienter in connection with their 10b/10b-5 claims and their RICO claims.  For the same reasons, the MFIL Section 5 claim fails.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed, in part, with prejudice.

Dated:  August 31, 2015                           Respectfully submitted,

By:   /s/Nicholas B. Gorga
Attorney for the ViSalus Defendants

QUARLES & BRADY LLP                    HONIGMAN MILLER SCHWARTZ
                                       AND COHN LLP

James A. Ryan (AZ Bar #009253)
Kevin D. Quigley (AZ Bar #015972)      Nicholas B. Gorga (P72297)
Edward A. Salanga (AZ Bar #020654)     Mitra Jafary-Hariri (P74460)
Brian A. Howie (AZ Bar #026021)        660 Woodward Avenue
*All Admitted to Practice in ED MI*    2290 First National Building
2 North Central Avenue                 Detroit, MI  48226-3506
Phoenix, AZ 85004                      Telephone Number: (313) 465-7640
Telephone Number: (602) 229.5200       Fax Number: (313) 465-7641
Fax Number: (602) 229.5690             E-Mail: ngorga@honigman.com
E-Mail: james.ryan@quarles.com         Mjafary-hariri@honigman.com
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on August 31, 2015 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Nicholas B. Gorga
Attorney for the ViSalus Defendants