UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KERRIGAN *et al.*,

      Plaintiffs,                            Case No. 14-cv-12693
                                                    Hon. Matthew F. Leitman

v.

VISALUS, INC. *et al.*,

      Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF ## 61, 62)

In their First Amended Complaint, Plaintiffs Timothy Kerrigan ("Kerrigan"), Lori Mikovich ("Mikovich"), and Ryan Valli ("Valli") (collectively, "Plaintiffs") allege that they were defrauded by an illegal scheme created and operated by the Defendants. Plaintiffs say that in 2012 and 2013 they attended events promoting Defendant ViSalus, Inc. ("ViSalus"), a retailer of weight-loss shakes. (*See* First Am. Compl., ECF #55 at ¶¶ 8-14.) Plaintiffs allege that at these events, they were misled into paying to enroll in the "ViSalus Program" – the system through which "individual promoters" ("IPs") earn commissions and bonuses for selling ViSalus products and recruiting other IPs. Plaintiffs insist that the ViSalus Program is a fraudulent pyramid scheme, and they claim that they lost all of the money they paid to ViSalus to enroll in the program.

Plaintiffs first filed this action against ViSalus and many individuals and entities allegedly associated with ViSalus on July 9, 2014 (the "Complaint"). (*See* ECF #1.) Plaintiffs alleged in the Complaint that the Defendants violated, and conspired to violate, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). (*See id.*) Plaintiffs also alleged that Defendants violated several Michigan statutes. Finally, Plaintiffs asserted multiple claims under Michigan common law. (*See id.*) The Defendants moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (*see* ECF ## 35-37), and, by written order, the Court granted the motions in part and directed

Plaintiffs to file a First Amended Complaint (the "First Dismissal Order"). (*See* ECF #54.) On July 10, 2015, Plaintiffs filed a First Amended Complaint.[1] (*See* ECF #55.) Defendants have now again moved under Rule 12(b)(6) to dismiss many of the claims brought against them (the "Motions").[2] (*See* ECF ## 61, 62.) For the reasons explained below, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.

In the First Amended Complaint, Plaintiffs assert the following claims against the Defendants:

- In count one (*see* First Am. Compl. at ¶¶ 117-200), Plaintiffs allege that Defendants ViSalus, Robert Goergen, Sr. ("Goergen Sr."), Todd Goergen ("Goergen"), Nick Sarnicola ("Sarnicola"), Ryan Blair ("Blair"), Blake Mallen ("Mallen"), Jason O'Toole ("O'Toole"), Kyle

---

[1] The Court included a detailed recitation of the alleged factual background in the First Dismissal Order. (*See* First Dismissal Order at 2-10, Pg. ID 883-91.) The Court incorporates that recitation by reference. In addition, Plaintiffs have included many new allegations against the Defendants in the First Amended Complaint. Any additional factual allegations that are relevant to a determination of the currently pending motions to dismiss will be identified and discussed herein. For the purposes of this Opinion and Order, the Court accepts these factual allegations as true.

[2] Plaintiffs have brought the First Amended Complaint against some, but not all, of the Defendants named in the Complaint. Plaintiffs have not re-pleaded any allegations against individuals Jake Trzcinski, Lavon Craig, Anthony Lucero, Rhonda Lucero, and Joshua Jackson. Nor have Plaintiffs re-pleaded any allegations against entities ViSalus Holdings, LLC, Mojos Legacy, LLC, Fragmob, LLC, iCentris, Inc., and Jakertz, Inc.

Pacetti, Jr. ("Pacetti"), Michael Craig ("Craig"), Aaron Fortner ("Fortner"), Rachel Jackson ("Jackson"), Frank Varon ("Varon"), Lori Petrilli ("Petrilli"), Tara Wilson ("Wilson"), and Timothy Kirkland ("T. Kirkland") violated Section 1962(c) of RICO through their operation and promotion of the ViSalus Program.

- In count two (*see id.* at ¶¶ 201-214), Plaintiffs claim that all Defendants violated Section 1962(d) of RICO by conspiring to violate Section 1962(c).

- In count three (*see id.* at ¶¶ 215-223), Plaintiffs assert that Defendants ViSalus, Goergen Sr., Goergen, Sarnicola, Blair[3], and Mallen (the "ViSalus Defendants") violated 5 U.S.C. § 78j(b) ("Section 10b") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") of the federal securities laws.

- In count four (*see id.* at ¶¶ 224-230), Plaintiffs allege that all Defendants violated 15 U.S.C. § 77l(a)(2) ("Section 12(2)") of the federal securities laws.

- In count five (*see id.* at ¶¶ 231-234) Plaintiffs assert that ViSalus violated Section 903b of the Michigan Consumer Protection Act (the "MCPA").

- In count six (*see id.* at ¶¶ 235-244), Plaintiffs claim that all Defendants violated Sections 903 and 911(c)(3) of the MCPA.

- In count seven (*see id.* at ¶¶ 245-252), Plaintiffs allege that all Defendants – except for ViSalus – have been unjustly enriched.

---

[3] In the title to count three, Plaintiffs assert that they are bringing this count against, among others, "Sarnicola, *Blake,* and Mallen." (First. Am. Compl. at 173, Pg. ID 1133) (emphasis added.)   No Defendant has the last name "Blake."   It appears Plaintiffs meant to name Ryan *Blair* in this count, and that the word "Blake" was a typographical error.

- In count eight (*see id.* at ¶¶ 253-258), Plaintiffs assert that ViSalus has engaged in statutory and/or common law conversion in violation of Michigan law.

- In count nine (*see id.* at ¶¶ 259-264), Plaintiffs claim that all Defendants engaged in a civil conspiracy.

- In count ten (*see id.* at ¶¶ 265-269), Plaintiffs allege that ViSalus violated Section 28 of the Michigan Franchise Investment Law (the "MFIL").

- And, finally, in count eleven (*see id.* at ¶¶ 270-274), Plaintiffs assert that all Defendants violated Section 5 of the MFIL.

On August 31, 2015, Defendants filed the Motions, seeking to dismiss many of the claims Plaintiffs have asserted in the First Amended Complaint.[4]  (*See* ECF ## 61, 62.)  The Court heard oral argument on the Motions on January 20, 2016.

## II.

In the Motions, Defendants seek relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell*

---

[4] None of the Defendants have moved to dismiss counts five, eight, and ten of the First Amended Complaint.  In addition, ViSalus, Goergen Sr., Goergen, Blair, and Mallen have not moved to dismiss count nine.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.   *Id.* (citing *Twombly*, 550 U.S. at 556).   When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true.   *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).   "Mere conclusions," however, "are not entitled to the assumption of truth.   While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."   *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss.   *Twombly*, 550 U.S. at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* In addition, where, as here, there are allegations of fraud or mistake, Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   *See* Fed. R. Civ. P. 9(b).

III.

(The Substantive RICO Claims)

Section 1962(c) of RICO provides that

> [i]t shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign commerce,
> to conduct or participate, directly or indirectly, in the
> conduct of such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).   "To state a RICO claim, a plaintiff must plead the following

elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity."   *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir.

2012) (internal quotation marks omitted).   A "pattern of racketeering activity"

requires at least two predicate acts – i.e., certain offenses enumerated in 18 U.S.C.

§ 1961(1) – that occur within a ten-year period.   *See Moon v. Harrison Piping*

*Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citing 18 U.S.C. § 1961(5)).

As described above, in count one of the First Amended Complaint, Plaintiffs

allege that the ViSalus Defendants[5], O'Toole, Pacetti, Fortner, Jackson, Craig,

Wilson, Varon, Petrilli, and T. Kirkland violated Section 1962(c) (the "Section

1962(c) Claim").   (*See* First Am. Compl. at ¶¶ 117-200.)   These Defendants have

now moved to dismiss the Section 1962(c) Claim on various grounds.   The Court

---

[5] Previously defined herein as ViSalus, Goergen Sr., Goergen, Sarnicola, Blair, and
Mallen.

concludes the Section 1962(c) Claim is viable against some Defendants but not others.

A.

In the First Dismissal Order, the Court held that "in order to state a [Section] 1962(c) claim against any Defendant, Plaintiffs must allege that [that] Defendant actually committed two predicate acts."  (First Dismissal Order at 48, Pg. ID 929.) Four Defendants – Goergen Sr., Goergen, Varon, and Petrilli – challenge the Section 1962(c) Claim on the basis that the First Amended Complaint fails to allege that they personally committed two RICO predicate acts.  Plaintiffs counter that they have sufficiently pleaded that each of these Defendants committed at least two predicate acts of mail and/or wire fraud.   The Court agrees with the Defendants.  The Court will therefore dismiss the Section 1962(c) Claim against Goergen Sr., Goergen, Varon, and Petrilli.

Plaintiffs allege that Goergen Sr. committed mail and/or wire fraud through the following actions:

- Goergen Sr. appeared in a video "called 'Billionaire, Bob Goergen CEO Blyth Inc.'" in which he "predicted 'exponential growth' . . . for ViSalus."   An unidentified person or entity posted the video on YouTube. (First Am. Compl. at ¶130.)
- Defendant Blair interviewed and publicly praised Goergen Sr. for his "mentorship of the ViSalus business" and "involve[ment] in business decisions of [ViSalus], particularly since its near collapse in the 2008

7

recession."  ViSalus is alleged to have published a video of Blair's interview of Goergen Sr. on the internet.  (*Id.* at ¶133.)

- Goergen Sr. "[p]ublicly acknowledged [his] connection to the running and operation of ViSalus" and was identified on a website promoting the ViSalus Program as a member of the ViSalus "Executive Team." The author of the website is unidentified.  (*Id.* at first ¶138.[6])

- On two identified occasions, Goergen Sr. spoke at ViSalus events which ViSalus and other identified parties later published online.[7] (*See id.* at second ¶138.)

These allegations, even if true, would not establish that Goergen Sr. committed two acts of mail and/or wire fraud.  In order to commit mail and/or wire fraud, a defendant must, among other things, actually use the mails or wires and/or cause another to use the mails or wires.  *See, e.g.*, *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (elements of mail and wire fraud include the "use of the mails in furtherance of the scheme" and/or the "use [of] the wires in furtherance of the scheme to defraud").  Plaintiffs simply do not allege that Goergen Sr. either used the mails or wires on at least two occasions or caused someone else to do so.  Indeed, while Plaintiffs repeatedly allege – in the

---

[6] The Fist Amended Complaint contains two paragraphs labeled as paragraph 138. (*See* First Am. Compl. at 76-77, Pg. ID 1036-1037.)  It appears that both paragraphs labeled as paragraph 138 allege that Goergen Sr. committed mail and/or wire fraud.  (*See id.* at 119-121, Pg. ID 1079-1081.)

[7] The statements and videos identified in the second paragraph 138 are the same statements and videos previously identified in paragraphs 130 and 133.

passive voice – that Goergen Sr. was featured in videos published online, Plaintiffs fail to plead any facts that would support a finding that *Goergen Sr.* caused the videos to be published online, authorized their publication, or even had knowledge that the videos were posted on the internet.   Accordingly, the Section 1962(c) Claim fails as to Goergen Sr.

Plaintiffs assert that Goergen committed the following predicate acts of mail and/or wire fraud:

- Goergen "[p]ublicly acknowledged [his] connection to the running and operation of ViSalus" and was identified on a website promoting the ViSalus Program as a member of the ViSalus "Executive Team." The author of the website is unidentified.  (First Am. Compl. at first ¶138.)

- Goergen was "identified" on the ViSalus website as a "founding investor" in the company and a "leader[]" of the company's "board." (*Id.* at ¶139.)

- Goergen was identified in public statements and on the ViSalus website as the "Chief Operating Officer" and "Chief Strategy Officer" of ViSalus.  (*Id.*)

- Goergen attended a party promoting ViSalus at Sarnicola's home. Video of portions of the party were published online by an unidentified party as a way of promoting ViSalus.  (*See id.* at ¶141.)

- Goergen appeared at public events promoting ViSalus which were written about in stories posted on the internet by third parties.  (*See id.*)

These mail and/or wire fraud allegations are deficient for the same reasons that the mail and/or wire fraud allegations against Goergen Sr. were insufficient. Many of the allegations against Goergen are made in the passive voice and fail to plead that Goergen himself knew that any videos or articles would be posted online or that he caused them to be published online. Moreover, the allegations that Goergen appeared at public events (or, in the case of the party at Sarnicola's home, an apparently private event) and made public comments do not establish that Goergen used the mails and/or wires. And while these allegations and others made against Goergen are enough to state other plausible claims against him, the alleged conduct simply does not amount to mail or wire fraud. *See, e.g.*, *Heinrich*, 668 F.3d at 404. Plaintiffs have failed to identify two or more RICO predicate acts with respect to Goergen, and their Section 1962(c) Claim against him fails.

Plaintiffs allege that Varon and Petrilli committed the following predicate acts of mail and/or wire fraud:

- They agreed to be "featured in various ViSalus materials" and "were "knowing and willing participants in the promotion of the ViSalus pyramid scheme." (*Id.* at ¶164.)

- They appeared at various ViSalus events as "keynote speakers" and, at least one time, as the recipients of a $500,000 check. An unidentified party posted video of at least one of these public appearances on YouTube. (*Id.*)

10

- They conducted "numerous recruiting seminars" in which they emphasized the financial rewards individuals could gain from participating in the ViSalus Program. (*Id.*)

- They gave an "interview" – published by a third party on website not operated by ViSalus – in which they promote the ViSalus Program, claim that "hundreds" of people "won a free BMW" through the ViSalus Program, and otherwise claim that anyone can be successful if they sign up as a ViSalus IP. (*Id.* at ¶165.[8])

As the Court concluded with Goergen Sr. and Goergen, appearing at public events and making public statements at those events, standing alone, does not amount to mail and/or wire fraud. And there are no factual allegations that Varon or Petrilli caused the videos of their public appearances to be posted on the internet. Moreover, Plaintiffs have not alleged that Varon or Petrilli published and/or caused to be published any of the interviews they gave. Thus, Plaintiffs have not alleged that Varon or Petrilli committed at least two acts of mail or wire fraud. The Court therefore will dismiss Plaintiffs' Section 1962(c) Claim against Goergen Sr., Goergen, Varon and Petrilli.

---

[8] Plaintiffs also claim that paragraph 156 includes allegations against Petrilli (*see, e.g.,* First Am. Compl. at 144, Pg. ID 1104) but that paragraph does not relate to Petrilli. Instead, that paragraph states allegations against Defendant Jackson. (*See id.* at ¶156.)

11

B.

In the First Dismissal Order, the Court held that in order to sufficiently allege the causation element of their Section 1962(c) Claim, Plaintiffs "must allege a clear causal connection between [each] Defendant's alleged predicate acts and their injuries." (ECF #54 at 53, Pg. ID 934.) The Court explained that Plaintiffs needed to plead "a logical theory directly linking each Defendant's predicate acts to their alleged injuries." (*Id.*) A plaintiff can satisfy this requirement by pleading facts that "show that *the defendants' wrongful conduct* was a substantial and foreseeable cause of the injury and the relationship between the wrongful conduct and the injury is logical and not speculative." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013) (internal quotation marks omitted) (emphasis added).

In the Motions, Defendants argue that Plaintiffs have failed to satisfy these causation pleading requirements. Plaintiffs counter that they have alleged a logical theory directly linking each Defendant to their claimed injuries. The Court concludes that Plaintiffs have sufficiently alleged proximate cause as to ViSalus, Sarnicola, Blair, and Mallen, but have not done so with respect to the remaining

Defendants named in the Section 1962(c) Claim (O'Toole, Pacetti, Fortner, Jackson, Craig, Wilson, and T. Kirkland). [9]

1.

The proximate cause allegations against ViSalus, Sarnicola, Blair, and Mallen are sufficient to state a Section 1962(c) claim against these Defendants. Plaintiffs have alleged that these Defendants created and implemented the ViSalus Program, a fraudulent pyramid scheme that was intended to defraud individuals in Plaintiffs' position, and that the ViSalus Program did in fact defraud them. Stated another way, Plaintiffs contend that these Defendants devised a fraudulent scheme, "aimed" it at them, and hit their mark. For instance, Plaintiffs allege that Sarnicola, Blair, and Mallen:

- Were "co-founders and principle creators of the [ViSalus] pyramid scheme." (First Am. Compl. at ¶¶ 126, 212.)
- Were ViSalus's "top controlling management" and were "the company's frontmen to the public." (*Id.* at ¶131.)
- Were "personally involved in [ViSalus's] strategic decision-making[] and otherwise managed the significant affairs of [ViSalus]." (*Id.*)

---

[9] Because the Court has concluded that Plaintiffs have failed to plead the required predicate acts against Defendants Goergen Sr., Goergen, Varon, and Petrilli, it will not analyze the other requirements of Plaintiffs' Section 1962(c) Claim against these Defendants.

13

- "[A]ppeared at the ViSalus meetings and conventions . . . [and] allowed their presentations to be recorded and distributed" to promote the ViSalus Program. (*Id.*)

- "Distribute[d] professionally-edited videos posted on the [internet] which tout the success of the [ViSalus Program], [ViSalus], and themselves" and which promoted to potential recruits "how easy it is to start earning an income" through the ViSalus Program. (*Id.* at ¶90.)

- "[I]ntended to falsely convey the impression to people like Plaintiffs that participation as a ViSalus IP was legal; that they had a reasonable opportunity to make money; that people just like them were able to make generous income; and that the commissions or bonuses they would receive would come from the sale of desirable product." (*Id.* at ¶195.)

- "Directly authored and/or approved of the dissemination of the ViSalus compensation plan," which was given to each Plaintiff at the ViSalus events they attended and used to induce Plaintiffs to enroll as ViSalus IPs. (*Id.* at ¶196.)

- Had the "goal" of having potential recruits like Plaintiffs "subscribe, by the payment of money to ViSalus, to the compensation plan." (*Id.*)

- Had "personally [] active roles in promoting the ViSalus compensation plan and pitching the idea that the ViSalus compensation plan is a viable and attractive 'business opportunity.'" (*Id.* at ¶143; *see also* ¶144.)

- Implemented plans to "hugely expand[] and accelerat[e] the growth of the pyramid scheme" by "increasing recruitment of unsuspecting people to join the pyramid scheme." (*Id.* at ¶134.)

14

- "Control[led] and direct[ed] [] websites, web presentations, events, sponsored conventions, and speeches" promoting the ViSalus Program. (*Id.* at ¶171.)

Plaintiffs allege that the fraudulent mechanisms created and put in place by these Defendants induced them to sign up as ViSalus IPs and to lose the money they paid to ViSalus. (*See, e.g.*, *id.* at ¶8.)   Plaintiffs have therefore sufficiently pleaded that the actions of ViSalus, Sarnicola, Blair, and Mallen were a "substantial" and "foreseeable" cause of their alleged injuries. *In re ClassicStar Mare Lease Litig.*, 727 F.3d at 487.   Accordingly, Plaintiffs have sufficiently alleged that the predicate acts of these Defendants proximately caused their alleged injuries.[10]

---

[10] Certain language in the First Dismissal Order could arguably be read to stand for the proposition that where a RICO plaintiff alleges predicate acts of mail or wire fraud, he must connect his injury to a specific mailing or wiring in order to establish causation. (*See* First Dismissal Order at 52-53, Pg. ID 933-34.) That is not the rule, and the Court did not mean to so hold. As the Court explained, a RICO plaintiff must directly connect his injury to the defendant's predicate acts. Importantly, an alleged predicate act of mail or wire fraud consists of more than just the mailing or the wiring. Indeed, the mailing or wiring is simply the "hook" that brings the alleged fraud within the jurisdiction of the federal courts. The predicate act includes the scheme to defraud as well as the mailing or wiring. Thus, where a RICO plaintiff alleges predicate acts of mail or wire fraud, the causation inquiry may expand beyond the acts of mailing and wiring and may include a consideration of each defendant's personal conduct within the fraudulent scheme and whether that conduct directly injured the plaintiff. *See Wallace v. Midwest Fin. & Mortg. Serv.*, 714 F.3d 414, 419-21 (6th Cir. 2013) (finding causation satisfied where court was able to "trace a straight line" between defendants' conduct within a fraudulent scheme and plaintiff's injuries).

2.

Plaintiffs' causation allegations against Defendants O'Toole, Pacetti, Fortner, Jackson, Craig, Wilson, and T. Kirkland are deficient. Plaintiffs have not sufficiently alleged that the purportedly-fraudulent conduct by these Defendants "led directly to [their] injuries." *Bridge v. Phoenix Bond & Indem.*, 553 U.S. 639, 655 (2008). The Court will therefore dismiss the Section 1962(c) Claim against these Defendants.

Plaintiffs allege that these Defendants (among other things) promoted the ViSalus Program at recruiting events, in videos posted on the internet, and in advertisements. But Plaintiffs do not allege that they ever met any of these Defendants, saw any of these Defendants make presentations (either online or in person), watched or read any of the videos or promotional materials these Defendants allegedly disseminated, or engaged in any transactions with these Defendants. Instead, Plaintiffs allege that these Defendants made false statements in promotional materials and videos "that a prospective purchaser, *like each Plaintiff*, could easily find." (Pls.' Resp. Br. at 14, ECF #67 at 19, Pg. ID 1696) (emphasis added.) But Plaintiffs do not allege that they actually did "find" any of the alleged false statements these Defendants purportedly made, nor do Plaintiffs allege that any of the false statements by these Defendants *directly* impacted them (Plaintiffs) in any way. The link between the promotional activities of these

16

Defendants is too attenuated from Plaintiffs' injuries to satisfy the required causal connection required for Plaintiffs' Section 1962(c) Claim.

Plaintiffs respond that, under *Bridge, supra*, they need not plead that they personally relied on any statement any of these Defendants may have made.  While that is true, Plaintiffs still need to plead "some direct relation between the injury asserted and the injurious conduct alleged."  *Heinrich*, 668 F.3d at 405 (quoting *Holmes v. Sec. Investor Pro. Corp.*, 503 U.S. 258, 268 (1992)).  And they have failed to do so.  Plaintiffs have simply not alleged that "wrongful conduct" *by these Defendants* "was a substantial and foreseeable cause of the[ir] injur[ies]."  *In re ClassicStar Mare Lease Litig.*, 727 F.3d at 487.  Plaintiffs' causation allegations against these Defendants are therefore insufficient.

At oral argument, Plaintiffs' counsel offered the following theory of causation against these Defendants:  (1) they were videotaped accepting large fake checks or giving misleading pitches at ViSalus-sponsored events; (2) they intended that these videos would be shown at other ViSalus-sponsored events and made available on the internet; and (3) Plaintiffs saw these videos at ViSalus-sponsored events they attended.  (*See* January 20, 2016 Hrg. Tr., ECF #72 at 36-38, Pg. ID 1857-59.)  Plaintiffs' counsel insisted that these videos made Plaintiffs more susceptible to the sales pitch made by the ViSalus representatives at the events

Plaintiffs attended and thus caused Plaintiffs' injuries. (*See id.*)  This argument

fails for two reasons.

First, the First Amended Complaint does not allege that the Plaintiffs

actually saw any videos featuring these Defendants.  Rather, Plaintiffs allege, for

example, only that "[t]he [ViSalus events] attended by [Plaintiff] Kerrigan also

featured check-presentation ceremonies *like the one* in the Miami convention . . .

where, among others, Defendant Craig was shown with a $1M check and

Defendant Rachel Jackson with a $500,000 check."   (First Am. Compl. at ¶8)

(emphasis added.)   Allegations that Plaintiffs saw videos or re-enactments "like"

the ones in which the Defendants participated do not establish the required direct

link between Plaintiffs' injuries and alleged misconduct by *these* Defendants.

Second, and in any event, in *Heinrich, supra*, the Sixth Circuit rejected a

theory of causation much like Plaintiffs' theory based upon Defendants'

appearances in the videos.  The plaintiffs in *Heinrich* were parents seeking to adopt

children through an agency.   They claimed, among other things, that certain

individuals associated with the agency defrauded them into making payments to

adopt children who were not actually available to be adopted.   The plaintiffs

asserted RICO claims and alleged that the defendants committed predicate acts of

mail and wire fraud.  In an attempt to satisfy the causation element of their RICO

claim, the plaintiffs asserted that certain defendants caused their injury by sending

them false reference letters (in support of the agency) that made the plaintiffs more

willing to trust the agency's false promises of available children.  The Sixth Circuit

rejected this theory of RICO causation:

> [Plaintiffs' causation] argument appears to be that the positive references served as an inducement to do business with Waiting Angels. *But any injuries they may have suffered were not the direct result of the alleged fraudulent conduct. Rather, the false references helped put the [plaintiffs] in a position to be defrauded by other, unrelated representations concerning the availability of specific children or how adoption fees will be spent.* The false references, while perhaps a "but for" cause of the [plaintiffs'] injuries, did not proximately result in any harm to their business or property.

*Heinrich*, 668 F.3d at 405 (emphasis added).

The same analysis would apply here if the Plaintiffs had actually heard the

allegedly false statements allegedly made by these Defendants in the videos.  Like

the fraudulent reference letters in *Heinrich*, the videos that allegedly featured  these

Defendants would merely have "help[ed] put the [Plaintiffs] in a position to be

defrauded by other, unrelated representations" made by the ViSalus representatives

at the events Plaintiffs actually attended.[11]  For this additional reason, Plaintiffs'

---

[11]  The Court recognizes, as it did in the First Dismissal Order (*see* ECF #54 at 53-54 n.22, Pg. ID 934-35), that proximate cause is often better addressed at the summary judgment stage rather than on a motion to dismiss.  *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004).  The Court again notes, however, that the Sixth Circuit has, on multiple occasions, addressed proximate causation under Section 1962(c) at the pleading stage, and has found causation

causation allegations against Defendants O'Toole, Pacetti, Fortner, Jackson, Craig, Wilson, and T. Kirkland are deficient.

C.

Defendants ViSalus, Sarnicola, Blair, and Mallen argue that Plaintiffs have failed to state a Section 1962(c) Claim against them because Plaintiffs have not pleaded that they acted with scienter.  Plaintiffs can satisfy this requirement by pleading that these Defendants "acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Heinrich*, 668 F.3d at 404.  These Defendants maintain that the Plaintiffs have failed to meet this standard because "the line between a legitimate multi-level marketing system and an illegal pyramid scheme is blurry at best," (ECF #62 at 19, Pg. ID 1643), and Plaintiffs have not pleaded facts that "support a plausible inference that [these Defendants] knew that ViSalus [was] a pyramid scheme and thus acted with fraudulent intent in failing to disclose that supposed fact." (ECF #62 at 17, Pg. ID 1641) (emphasis removed).  The Court disagrees.[12]

_____

allegations deficient at that stage.  *See Heinrich*, 668 F.3d at 405-07 (alleged mail and wire fraud did not satisfy RICO proximate causation requirement); *Pik-Coal Co. v. Big Rivers Electric Corp.*, 200 F.3d 884 (6th Cir. 2000) (same).

[12] Because the Court has concluded that Plaintiffs have failed to plead the required causation against Defendants O'Toole, Pacetti, Fortner, Jackson, Craig, Wilson, and T. Kirkland, it will not analyze whether Plaintiffs have sufficiently pleaded that these Defendants acted with the requisite scienter.

20

The First Amended Complaint contains myriad specific allegations that Sarnicola, Blair, and Mallen (1) understood that the dividing line between a legitimate multi-level marketing company and an illegal pyramid scheme turned on whether the operation focused on recruitment of new members rather than upon making actual sales, (2) knew that the ViSalus Program focused more on recruiting new IPs than selling ViSalus's weight-loss products, and (3) created and implemented a system in which ViSalus promoters across the country would make fraudulent pitches in support of the ViSalus Program.  By way of example, Plaintiffs allege that:

- Sarnicola, Blair, and Mallen "had prior experience with recruiting-based network marketing schemes," and, "by 2005," knew that "ViSalus was operating a pyramid scheme, an enterprise in which recruiting members predominated over selling of product."  (First Am. Compl. at ¶125.)

- ViSalus's own website stated that Mallen "had a decade of network marketing experience prior to the founding of ViSalus." (*Id.* at ¶126) (internal quotation marks omitted.)

- Sarnicola "had a long history of involvement with multi-level marketing companies."  (*Id.* at ¶127.)

- Sarnicola, Blair, and Mallen "oversaw the operation of the [ViSalus] compensation plan" and were "personally involved in the company's strategic decision-making, and otherwise managed the significant affairs of [ViSalus]."  (*Id.* at ¶131.)

21

- Sarnicola, Blair, and Mallen "orchestrated" the hiring of distributors from other companies who were "presented as distributors just like innocent recruits when in fact" they were given far more favorable treatment than the recruits – treatment that unfairly enabled them to succeed while the recruits would fail. (*Id.* at ¶135.)

- Sarnicola, Blair, and Mallen "were aware that [ViSalus's] valuation depended on . . . illegal recruiting activities . . . fueled by recruiting bonuses." (*Id.* at ¶142.)

- Sarnicola, Blair, and Mallen "made all fundamental decisions regarding [the ViSalus Program's] operation and finances and knew that the true facts concerning the operation of the [program] fit every criterion of an illegal pyramid or were reckless to that possibility." (*Id.* at ¶187.)

Based on these and other allegations in the First Amended Complaint (many of which are identified above), the Court concludes that Plaintiffs have successfully pleaded that Defendants ViSalus, Sarnicola, Mallen, and Blair acted with the requisite scienter.

### D.

Defendant ViSalus seeks dismissal of Plaintiffs' Section 1962(c) Claim on the ground that "Plaintiffs have not pled the existence of a RICO enterprise distinct from ViSalus itself." (ECF #62 at 22, Pg. ID 1646.) The Court concludes that Plaintiffs have pled a distinct enterprise.

22

To plead a Section 1962(c) claim, a plaintiff "must allege . . . the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *In Re ClassicStar Mare Lease Litig*, 727 F.3d at 490 (internal quotation marks omitted).   Under this principle, "known as the 'non-identity' or 'distinctness' requirement," a corporation "may not be liable under Section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members.   An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Id.* (*quoting Begala v. PNC Bank*, 214 F.3d 776, 781 (6th Cir. 2000)).   But an organization can join with independent entities and individuals to form a distinct enterprise.   Thus, in *ClassicStar*, the Sixth Circuit held that the "distinctness" requirement was satisfied where, among other things, "the alleged RICO enterprise was comprised of other entities that were neither owned by [the defendant organization] nor acting as its agents." *Id.*

The allegations in the First Amended Complaint satisfy the "distinctness" requirement.   Plaintiffs have alleged that the enterprise consisted of ViSalus, its officers, and numerous *independent outside* promoters (the IPs).   Importantly, Plaintiffs allege that the IPs played a role in the enterprise that was wholly distinct from that of ViSalus.   Plaintiffs claim that IPs promoted ViSalus products and the

ViSalus lifestyle to unwitting recruits. (*See, e.g.*, First Am. Compl. at ¶¶ 96, 156, 158.)  Meanwhile, ViSalus, the corporate entity, provided the overall structure for the ViSalus Program and was responsible for the company's day-to-day operations, such as mailing out weight-loss products to customers and IPs who purchased them.  (*See id.* at ¶¶ 47, 176.)  That ViSalus and the IPs played different roles in the alleged scheme underscores that the overall enterprise was distinct from ViSalus.

ViSalus counters that Plaintiffs have not satisfied the standard for distinctness established by the United States Court of Appeals for the Seventh Circuit in *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997).   In *Fitzgerald*, the plaintiffs brought a RICO class action against Chrysler and its dealers alleging various acts of fraud related to the sale of vehicle warranties.  The Seventh Circuit held that the plaintiffs' RICO claim failed as to Chrysler because the plaintiffs had failed to plead that Chrysler and its dealers were sufficiently distinct. The Seventh Circuit stressed that the dealers had only an "incidental role in the alleged fraud" and did not add "an air of legitimacy" to the sale of the warranties.  *Id*. at 227-28.  The court concluded that Chrysler did "not establish[] dealerships in order to fool car buyers into thinking that they are not dealing with the 'racketeer' Chrysler, or to enable Chrysler to engage in fraud on a scale that would be impossible if it internalized the dealership function." *Id.* at 228.

But here, Plaintiffs allege that the IPs played more than an incidental role in the fraud – far more. Plaintiffs contend that the IPs played a central role in the overall scheme by duping potential recruits into signing up for the ViSalus Program. Plaintiffs also allege that the IPs added a critical "air of legitimacy" to the ViSalus Program by posing as false success stories and promoting the idea that anybody could become rich through the ViSalus Program. The alleged enterprise here thus has the two key features missing from the enterprise alleged in *Fitzgerald*. Thus, *Fitzgerald* does not support dismissal of the Section 1962(c) Claim against ViSalus.

## IV.

### (The RICO Conspiracy Claim)

Plaintiffs allege that all of the Defendants named in the First Amended Complaint violated Section 1962(d) of RICO by conspiring to violate Section 1962(c) (the "RICO Conspiracy Claim"). (*See* First Am. Compl. at ¶¶ 201-214.) Defendants argue that the RICO Conspiracy Claim fails as a matter of law because Plaintiffs have failed to allege that any of the Defendants committed a substantive violation of Section 1962(c). (ECF #62 at 27 n.17, Pg. ID 1651, citing *Heinrich*, 668 F.3d at 411; *see also* ECF #61 at 9-10, Pg. ID 1600-01.) The Court concludes that Plaintiffs have sufficiently alleged the RICO Conspiracy Claim against all of the Defendants other than Ropart Asset Management Fund, LLC, Ropart Asset

25

Management Fund II, LLC, Freedom Legacy, LLC, Wealth Builder International, Inc., and Residual Marketing, Inc. (hereinafter the "Entity Defendants").[13]   The Court will therefore dismiss the RICO Conspiracy Claim against the Entity Defendants only.

The Sixth Circuit has held that in order "[t]o plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement to violate the substantive RICO provision." *Heinrich*, 668 F.3d at 411 (internal quotation marks omitted). But this does not mean that in order to assert a RICO conspiracy claim against a particular defendant, a plaintiff must first assert a viable substantive RICO claim against *that defendant*. Indeed, the Sixth Circuit has expressly held that a defendant may be liable for RICO conspiracy under Section 1962(d) even where the defendant has not personally committed a substantive RICO violation. *See United States v. Driver*, 535 F.3d 424, 432 (6th Cir. 2008) (holding that even if the defendant did not violate Section 1962(c), he could still be found to have violated Section 1962(d)). Instead, in order to state a

---

[13] The Court has reviewed the RICO conspiracy allegations against the Entity Defendants and concludes they are insufficient to state a viable RICO conspiracy claim. The Entity Defendants are alleged to be wholly-owned and/or controlled by certain of the individual Defendants, but Plaintiffs have not pleaded factual allegations to support a finding that these entities entered into any agreement to violate Section 1962(c).

viable RICO conspiracy claim against a particular defendant, a plaintiff must sufficiently allege "that a co-conspirator violated Section 1962(c)" and that the defendant "agreed to further or facilitate the criminal endeavor by agreeing that someone, although not necessarily himself, would 'commit two predicate acts.'" *Siddle v. Crants*, 650 F. Supp. 2d 773, 785 (M.D. Tenn. 2009) (quoting *Driver*, 535 F.3d at 432).

Plaintiffs have satisfied this standard. As explained above, Plaintiffs have sufficiently alleged that Defendants ViSalus, Sarnicola, Blair, and Mallen committed substantive RICO violations under Section 1962(c). And Plaintiffs have sufficiently pleaded that those four Defendants and the remaining individual Defendants entered into an agreement under which they all agreed (1) to further the criminal endeavor and (2) that one of the members of the conspiracy would commit a pattern of predicate acts. This agreement "can be inferred from the individual defendants' involvement" in the alleged scheme. *Heinrich*, 668 F.3d at 411. *See also In Re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 638 (E.D. Ky. 2011) (conspiracy to violate RICO "may be inferred from circumstantial evidence which may reasonably be interpreted as participation in common plan").

The following allegations, among others, support an inference that the Defendants entered into a common plan or scheme to violate Section 1962(c) of RICO:

- Based on agreements made between them and Sarnicola, "Defendants O'Toole, Varon, Petrilli, Pacetti, Fortner, Wilson, and [T.] Kirkland all agreed to join [ViSalus] by leaving other network marketing companies between 2009 and 2011[] [and] to actively expand the promoter base for ViSalus."  (First Am. Compl. at ¶149.)

- Defendants O'Toole, Varon, Petrilli, Pacetti, Fortner, Wilson, and T. Kirkland, "in return for payments and inducements not made available to the targets of the pyramid scheme," agreed to "pitch[] the notion of wealth, BMW's and six-figure incomes if [targets of the scheme] 'joined' the [ViSalus] 'business opportunity.'"  (*Id.*)

- Defendants O'Toole, Varon, Petrilli, Pacetti, Fortner, Wilson, and T. Kirkland "understood that the role they were to play was to recruit as many unsuspecting people as possible into the ViSalus scheme, to pretend that they were simply people 'just like' unwitting participants invited to attend the ViSalus presentation[s], that they were to use scripted materials at the conventions, that they were to appear in ads and to give false testimonials. Each of them understood and knew, based on their prior experience, that the ViSalus plan promoted recruiting over product sales. Each of them understood that they were to use social media to coat the Internet in the message that ViSalus was a great income opportunity. Each of them understood that the terms of their distributor relationship with ViSalus was materially different than the people they were to recruit."  (*Id.*)

- Defendants O'Toole, Varon, Petrilli, Pacetti, Fortner, Wilson, and T. Kirkland "made false statements intended to be disseminated to unsuspecting recruits . . . all with the intent to lure people into the system that each [of these] Defendant[s] knew was highly unlikely to

28

make any money, or could only make money by committing illegal recruiting activities, i.e., victimizing someone else." (*Id.* at ¶150.)

- Defendant Fortner (1) was given "undisclosed special incentives, payments or deals to be placed within the commission-payment scheme ahead of or 'upline' of Plaintiffs and others" and "agreed that this arrangement be kept undisclosed from innocent recruits" (*id.* at ¶153), (2) "falsely claimed" to make hundreds of thousands of dollars from the ViSalus Program (*id.* ¶154), and (3) "[w]as a knowing and willing participant in the promotion of the ViSalus pyramid scheme." (*Id.* at ¶155.)

- Defendant Jackson (1) made "false and misleading" claims about her supposed "success" with ViSalus (*id.* at ¶156), (2) received "certain payments or benefits and agreed that this arrangement be kept from innocent recruits" (*id.*), and (3) "[w]as a knowing and willing participant in the promotion of the ViSalus pyramid scheme." (*Id.* at ¶157.)

- Defendant Craig (1) "was formerly the ViSalus Director of Sales, North America" (*id.* at ¶159), (2) "obtained [] substantial undisclosed benefits or payments promised by ViSalus," (*id.*), and (3) "was a knowing and willing participant in the promotion of the ViSalus pyramid scheme." (*Id.*)

- Defendant H. Kirkland "appeared and allowed herself to be portrayed as a 'successful' promoter holding a check which she knew was false. She knew or reasonably should have known that the compensation system she and her husband were selling, touting or offering to people like the Plaintiffs was a recruiting-based pyramid scheme." (*Id.* at ¶207.)

- Goergen acted as ViSalus's "Chief Operating Officer" and, later, was the company's "Chief Operating Officer." (*Id.* at ¶131.)

- In 2008, after Goergen Sr. invested substantial funds in ViSalus through a second company he controlled (*see id.* at ¶¶ 125-130), Goergen Sr. and Goergen "agreed" with ViSalus, Sarnicola, Blair, and Mallen "to pump up the ViSalus revenues by hugely expanding the growth of the pyramid scheme. This was with the goal of greatly increasing recruitment of unsuspecting people to join the pyramid scheme." (*Id.* at ¶134.)

- "From 2008-2013," Goergen[] Sr. and Goergen, along with Sarnicola, Blair, and Mallen, "controlled the direction and strategy of ViSalus's operation of the pyramid scheme." (*Id.* at ¶132.)

- Goergen Sr. and Goergen, together with the other ViSalus Defendants, "directly authored and/or approved of the dissemination of the ViSalus compensation plan…." (*Id.* at ¶196.)

From these allegations and others in the First Amended Complaint, the Court can infer that the Defendants, except for the Entity Defendants noted above, agreed to participate in a common plan that harmed Plaintiffs. Plaintiffs have therefore stated a sufficient claim under Section 1962(d) against these Defendants.

## V.

### (The Securities Fraud Claims Under Section 10b and Rule 10b-5)

In count three of the First Amended Complaint, Plaintiffs allege – as an alternative theory of liability to their claims under RICO – that the ViSalus

Defendants[14] violated Section 10b (5 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) of the federal securities laws.  (*See* First Am. Compl. at ¶¶ 215-223.) Under these provisions, "in connection with the purchase or sale of any security," it is unlawful

> (a) To employ any device, scheme, or artifice to defraud
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]

17 CFR § 240.10b-5(a)-(c).

Plaintiffs maintain that the ViSalus Defendants violated Rule 10b-5(b) by making material misrepresentations and/or omissions and violated Rules 10b-5(a) and (c) by operating a fraudulent scheme.  The Court will address these two theories of liability in turn.[15]

---

[14] Previously identified as ViSalus, Goergen Sr., Goergen, Sarnicola, Blair, and Mallen.

[15] Plaintiffs concede that the First Amended Complaint, as currently pleaded, does not expressly state a "scheme to defraud" claim under Rule 10b-5(a) and (c).  But Plaintiffs have argued both to the ViSalus Defendants and the Court that such a "scheme" claim can be inferred from the totality of their allegations.  The Court will thus analyze both the "misrepresentation" claim under Rule 10b-5(b) and the "scheme liability" claim for the sake of efficiency.

A.

To state a claim under Rule 10b-5(b), "a plaintiff must [plead] and prove: (1) a material misrepresentation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, and (5) loss causation." *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 157 (2008). In addition, a private plaintiff bringing a securities fraud claim under Rule 10b-5(b) must satisfy the requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 (the "PSLRA"). Among other things, the PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," 15 U.S.C. §78u-4(b)(1), and a plaintiff must "state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." 15 U.S.C. §78u-4(b)(2).

In their 10b-5(b) claim, Plaintiffs allege that the ViSalus Defendants:

> made material misrepresentations and/or omissions in connection with the sale of distributorships to Plaintiffs and the class. The Defendants falsely represented that they were conveying a legal business opportunity, when, in fact, they and each of them knew or recklessly ignored that Plaintiffs were purchasing an interest in an illegal pyramid scheme. . . . In the alternative, Defendants' actions omitted material facts, *i.e.*, that they were selling an interest in a pyramid scheme, in connection with the sale of distributorships.

32

(First Am. Compl. at ¶218).   At oral argument, Plaintiffs clarified that the misrepresentations and/or omissions underlying this claim appeared in (1) the ViSalus compensation plan and (2) various advertisements promoting the ViSalus Program.  (*See* Tr., ECF #72 at 68, Pg. ID 1889.)  The documents containing the claimed misrepresentations and/or omissions are attached to the First Amended Complaint as Exhibits A and B.  (*See* ECF ## 55-1 – 55-3.)

The ViSalus Defendants attack Plaintiffs' 10b-5(b) claim on several grounds.  First, the ViSalus Defendants argue that Plaintiffs have failed to plead that they relied on "a single misrepresentation or omission" when they signed up to become a ViSalus IP.  (*See* ECF #62 at 11-12, Pg. ID 1635-36.)   Plaintiffs acknowledged at oral argument that, as currently pleaded, the First Amended Complaint does not contain any allegations that Plaintiffs actually saw or read either the compensation plan or the ViSalus advertisements that form the entirety of Plaintiffs' 10b-5(b) claim.  (*See* Tr. at 70, Pg. ID 1891.)  But Plaintiffs' counsel represented to the Court that Plaintiffs could make such allegations if given the opportunity to file a Second Amended Complaint.  (*See id.*)  The Court will therefore dismiss Plaintiffs' 10b-5(b) claim but permit them to file a Second Amended Complaint amending this claim to allege that the *named* Plaintiffs (1)

read and relied upon the compensation plan and (2) saw and relied upon specific advertisements. That amendment will cure the current reliance deficiency.[16]

The ViSalus Defendants next argue that liability under Rule 10b-5(b) "is limited to the 'maker' of the misrepresentation or omission," *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), and that here "the only 'maker' of an alleged misrepresentation or mission is ViSalus." (ECF #62 at 3-4, Pg. ID 1627-28.) The ViSalus Defendants thus argue that Plaintiffs have failed to state a 10b-5(b) claim against any of them except for ViSalus. The Court agrees.

Notably, Plaintiffs' briefing offers no substantive response to the ViSalus Defendants' argument that ViSalus is the sole "maker" of the statements at issue. And at oral argument, Plaintiffs could not identify any "maker" of the advertisements other than ViSalus. With respect to the compensation plan, Plaintiffs argued only that Sarnicola, Blair, Mallen, Goergen Sr., and Goergen made the statements therein because they were the plan's "authors." (Hearing Tr. at 69, Pg. ID 1890; *see also* First Am. Compl. at ¶196.) But *Janus* expressly rejected the argument that authoring or drafting a statement is the same as making

---

[16] As stated above, Plaintiffs' Rule 10b-5(b) claim fails to state a claim against any of the ViSalus Defendants because Plaintiffs have failed to plead the required element of reliance. However, for the sake of efficiency and to provide maximum guidance to the parties, the Court will examine and rule on the ViSalus Defendants' remaining arguments with respect to the Rule 10b-5(b) claim on the assumption that Plaintiffs will be able to cure the lack of reliance allegations through the filing of a Second Amended Complaint.

the statement.  *See Janus*, 131 S. Ct. at 2303 (rejecting argument that "'make' should be defined as 'create'").  Moreover, the Supreme Court in *Janus* stressed that "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – *and only by* – the party to whom it is attributed," *Janus*, 131 S. Ct. at 2302 (emphasis added), and the only ViSalus Defendant identified in the compensation plan is ViSalus.  The plan never mentions, much less attributes its contents to, Sarnicola, Blair, Mallen, Goergen Sr., Goergen, or any other individual.  (*See* ECF #55-1.)  Because Plaintiffs have failed to rebut the ViSalus Defendants' argument that ViSalus is the sole "maker" of the statements in question, Plaintiffs' Rule 10b-5(b) claim fails as to all ViSalus Defendants except ViSalus.[17]

---

[17]  In a footnote in a section of Plaintiffs' response brief discussing a wholly separate issue – whether Plaintiffs have pleaded the required scienter for their Rule 10b-5 claim – Plaintiffs maintain that the ViSalus Defendants "acknowledge[d in the Motions] that responsibility for the business opportunity extends to the individuals who created it and caused it to be distributed."  (Pls.' Br. at 27 n.35, Pg. ID 1709.)  In support of this position, Plaintiffs' cite to a Section of Defendants' motion in which Plaintiffs contend the ViSalus Defendants "acknowledge" that, under *Janus*, the "'maker' of a statement is the 'person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  (ECF #62 at 4, Pg. ID 1628 (quoting *Janus*, 131 S. Ct. at 2302)).  But the ViSalus Defendants certainly have not "acknowledged" that any of them "made" the statements at issue.  It is conceivable that Plaintiffs could present a theory, supported by specific factual allegations and supporting case law, as to how the individual ViSalus Defendants qualify as the "makers" of the compensation plan.  But they have not yet done so.

ViSalus next argues that Plaintiffs' 10b-5(b) claim fails because Plaintiffs have failed to plead that ViSalus acted with the required scienter. (*See* ECF #62 at 7-11, Pg. ID 1631-35.) ViSalus contends that even if the knowledge of Sarnicola, Blair, and Mallen could be imputed to the company, *see In Re Omnicare Sec. Litig.*, 769 F.3d 455, 476 (6th Cir. 2014) (holding that under certain circumstances, the knowledge (and thus, scienter) of a company's officers or agents may be imputed to the company), "the facts alleged do not support a strong inference that any of the individual defendants . . . knew that ViSalus was a pyramid scheme." (*See id.* at 11, Pg. ID 1635.) ViSalus thus argues that Plaintiffs have fallen short of the demanding scienter standard that the PSLRA demands. (*See id.*)

The Court acknowledges that the PSLRA requires Plaintiffs to plead particular facts that "give[] rise to a strong inference" of scienter. 15 U.S.C. §78u-4(b)(1). But the Court concludes that this standard is satisfied here. As explained above, the First Amended Complaint contains detailed allegations that Sarnicola, Blair, and Mallen (1) knew the dividing line between a legitimate multi-level marketing company and an illegal pyramid scheme, (2) knew that ViSalus fell on the wrong side of that line, and (3) knew that promoters across the country were actively misleading people in an effort to sign up more IPs for the ViSalus Program. (*See, e.g.*, First Am. Compl. at ¶¶ 125-127, 131, 135, 142, 187.) These

allegations satisfy even the heightened scienter pleading standard under the PSLRA.

ViSalus also argues that the key omission identified by Plaintiffs – the failure to state in the compensation plan and promotional materials that the ViSalus Program was a pyramid scheme – is not actionable under Rule 10b-5(b) because ViSalus had no obligation to disclose that alleged fact.  ViSalus argues that that alleged fact constitutes "soft information," and it contends that "soft information" need only be disclosed "only if it is virtually as certain as hard facts."  (ECF #62 at 5, Pg. ID 1629, quoting *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 572 (6th Cir. 2008).)  But there is an exception to that rule: "if a complaint adequately alleges that the defendants knew of the illegal nature of their conduct at the time they made the allegedly material misstatement, courts will impose a duty of disclosure."  *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 707 (E.D. Mich. 2010).  As described above, Plaintiffs have sufficiently alleged in the First Amended Complaint that ViSalus (through its principals) knew that its conduct was an illegal and fraudulent pyramid scheme.[18]  Accordingly, ViSalus

---

[18] Defendants' counsel candidly conceded at oral argument that if the "factual allegations in the Complaint were sufficient to establish certain Defendants knew that what they were saying was a misrepresentation or omission" then the Court would have to "deny the motion with regards to those Defendants."  (January 20, 2016 Hrg. Tr., ECF #72 at 88, Pg. ID 1909.)

had a duty to disclose that alleged fact to potential ViSalus IPs, and the omission of that alleged is actionable.

B.

Plaintiffs also maintain that the ViSalus Defendants participated in a "scheme to defraud" in violation of Rules 10b-5(a) and (c).  These provisions make it illegal "to employ any device, scheme, or artifice to defraud" and "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b-5(a), (c).  "To state a claim based on conduct that violates Rule 10b-5(a) and (c), [a] plaintiff must allege that a defendant (1) committed a deceptive or manipulative act, (2) with scienter, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries."  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 492 (S.D.N.Y. 2005) (emphasis removed) (testing claims under 10b-5(a) and (c) against the same pleading standard).  In addition, because scheme liability claims "sound in fraud," a plaintiff must also satisfy the pleading requirements of Rule 9(b) by "specify[ing] what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on investors in the securities at issue." *Id.*  Finally, in order to state a viable scheme liability claim, a plaintiff must identify an

38

allegedly "deceptive or manipulative act" by the defendant *beyond* making a misstatement or omission (which is prohibited under Rule 10b5-(b)).  *See, e.g.*, *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 610 (6th Cir. 2005) ("Rules 10b-5(a) and (c) encompass conduct *beyond* disclosure violations") (emphasis added).

The ViSalus Defendants first argue that Plaintiffs' scheme liability claim under Rules 10b–5(a) and (c) fails because Plaintiffs have "not described . . . any inherently deceptive conduct that furthered the scheme[] which is separate and apart from the misrepresentations or omissions alleged in support of their Rule 10b-5(b) claims."   (Defs.' Supp. Br., ECF #73 at 2, Pg. ID 1933) (emphasis removed).  The Court disagrees.

As described above, Plaintiffs have alleged that the ViSalus Defendants knowingly created, implemented, and operated a pyramid scheme.  That conduct is inherently fraudulent wholly apart from any allegedly-misleading statements. *See e.g.*, *United States v. Gold Unlimited*, 177 F.3d 472, 484 (6th Cir. 1999) ("Unquestionably, an illegal pyramid scheme constitutes a scheme to defraud."). Simply put, the operators of a pyramid scheme engage in fraudulent and deceptive conduct even if the operators make no false statements to potential enrollees about the enrollees' chances for success.  Thus, the "operation of a pyramid scheme violates 10b-5's prohibition against engaging in an 'act, practice or course of

business which operates as a fraud or deceit upon any person.'" *Webster v. Omnitrition Int'l., Inc.*, 79 F.3d 776, 785 (9th Cir. 1996) (quoting 17 C.F.R. § 240.10b-5(c)); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 761 (N.D. Cal. 1997) ("[P]articipants may … be liable [under Rule 10b-5] for their involvement in a pyramid scheme.").[19]

The ViSalus Defendants also argue that Plaintiffs have failed to plead that they operated the alleged scheme with the required particularity. The Court again disagrees. As described above, the Plaintiffs have sufficiently alleged that the ViSalus Defendants created, structured, operated, funded, and controlled the alleged pyramid scheme. The Court is satisfied that the Plaintiffs have sufficiently pleaded their scheme liability claim against the ViSalus Defendants.

---

[19] A number of courts have held that a defendant may be liable under a scheme liability theory where he "arrang[ed] for the dissemination of false or misleading statements" that promoted a scheme to defraud. *SEC v. Farmer*, 2015 WL 5838867, at *15-16 (S.D. Tex. Oct. 7, 2015); *SEC v. Crushen*, 888 F. Supp. 2d 1299, 1308 (S.D. Fla. 2012) (granting summary judgment to plaintiff where plaintiff claimed, among other things, that defendant created a deceptive media campaign). Here, Plaintiffs have alleged that the ViSalus Defendants arranged for numerous individuals to falsely promote ViSalus across the country. Because the Court has concluded that the ViSalus Defendants' operation of the alleged pyramid scheme itself is inherently fraudulent conduct, it need not decide at this time whether the ViSalus Defendants could also be liable under the scheme liability theories advanced in *Farmer* and *Crushen*. If necessary, the Court can revisit this question at the summary judgment stage of the proceedings.

VI.

(The Securities Fraud Claim Under Section 12(2))

In count four of the First Amended Complaint, Plaintiffs allege that all Defendants violated Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2).  This section provides that any person who

> offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing such security from him.

In *Pinter v. Dahl*, 486 U.S. 622 (1988), the United States Supreme Court addressed the scope of a "seller" of a security under a related statute, 15 U.S.C. § 77l(1) ("Section 12(1)").  The Supreme Court held that in order to qualify as a "seller" under Section 12(1), a defendant must either (1) "pass[] title, or other interest in the security, to the buyer for value," *id.* at 642, or (2) "successfully solicit[] the purchase" of a security.  *Id.* at 649.  Thus, "[b]eing merely a 'substantial factor' in causing the sale . . . is not sufficient in itself to render a defendant liable" if the Defendant did not solicit *the* ultimate purchase. *Id.* at 654.

41

The Sixth Circuit "appl[ies] this test" for "seller" status to claims brought under Section 12(2).  *Smith v. Am. Nat'l Bank & Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992).

The Defendants argue that only ViSalus meets the definition of "seller" applicable to Section 12(2) claim.  The Court agrees and will dismiss the Section 12(2) claim against all Defendants except for ViSalus.

ViSalus is the only Defendant alleged to have passed to Plaintiffs any interest in a security.  Thus, the remaining Defendants could be deemed Section 12(2) "sellers" only if they "solicited" Plaintiffs' purchase of securities.  They did not.  "To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer," *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003),[20] and Plaintiffs do not allege that they had any direct contact with any of the remaining Defendants.  Thus, the remaining Defendants did not solicit any of the Plaintiffs' purchases and are not "sellers" under Section 12(2).

Plaintiffs counter that several federal courts have found a "solicitation" even in the absence of direct contact between a plaintiff and a defendant.  (*See* Pls.' Supp. Br., ECF #74 at 6-7, Pg. ID 1948-49, citing, among other cases, *In re Sirrom*

---

[20] *See also In re Nat'l Century Fin. Enters., Inc.*, 846 F. Supp. 2d 828, 904 (S.D. Ohio 2012) (noting that a "solicitation" requires direct contact); *Pullins v. Klimley*, 2008 WL 85871, at *16 (S.D. Ohio Jan. 7, 2000) ("To establish liability as a seller, a plaintiff must demonstrate direct and active participation in the solicitation of the immediate sale.").

*Capital Corp. Sec. Litig.*, 84 F. Supp. 2d 933, 945 (M.D. Tenn. 1999), *In re Trade Partners, Inc. Investors Litig.*, 2008 U.S. Dist. LEXIS 66464, at **66-68 (W.D. Mich. Aug. 15, 2008), and *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681 (M.D. Tenn. 2000).)  However, even if the Court adopted the broader view urged by Plaintiffs – that a solicitation does not require direct contact – that would be no help to Plaintiffs here.  A solicitor becomes a "seller" under Section 12(2) only if he solicits "*the* purchase" under attack, *Pinter*, 486 U.S. at 649 (emphasis added), and while Plaintiffs allege that the certain individual Defendants engaged in solicitation activities, they do not allege that they actually saw and/or were aware the specific activities by the individual Defendants.  Thus, even under the broader view of "solicitation" urged by Plaintiffs, the individual Defendants do not qualify as Section 12(2) "sellers."

ViSalus further argues that Plaintiffs' Section 12(2) claim fails because it (ViSalus) did not have a duty to disclose "soft information."  (*See* ECF #62 at 14-15, Pg. ID 1638-1639.)  But for all of the reasons stated above, the Court concludes that under the facts alleged in the First Amended Complaint, ViSalus did have a duty to disclose.  Thus, Plaintiffs may pursue their Section 12(2) claim against ViSalus.

VII.

(The Claim Under Section 903 of the MCPA)

In count six of the First Amended Complaint, Plaintiffs allege that all Defendants violated Section 903 of the MCPA.  (*See* First Am. Compl. at ¶¶ 235-244.)  Section 903 prohibits, among other things, deceptive practices in the conduct of trade or commerce.  *See* MCL § 445.903.  Plaintiffs allege that Defendants violated Section 903 of the MCPA "in that they authored or knowingly permitted and encouraged the dissemination of the ViSalus compensation plan."  (*Id.* at ¶237.)  All Defendants except for ViSalus have moved to dismiss Plaintiffs' Section 903 claim on the basis that Plaintiffs have failed to plead that Defendants committed a deceptive act with the required particularity.  (*See* ECF #62 at 27, Pg. ID 1651; ECF # 61 at 10-12, Pg. ID 1601-03.)  The Court concludes that this count fails against all Defendants because the First Amended Complaint does not currently contain an allegation that the Plaintiffs read and/or relied upon the compensation plan.  The Court will therefore dismiss the section 903 claim against all Defendants.  However, as described above with respect to Plaintiffs' Rule 10b-5(b) claim, Plaintiffs' counsel represented to the Court that this deficiency could be cured through the filing of a Second Amended Complaint.  The Court will allow such an amendment.  Once so amended, the Court concludes that this count will state a viable Section 903 claim against Defendants ViSalus, Sarnicola, Blair, and

Mallen, but not against any of the other Defendants.

As described in detail above, Plaintiffs allege that Sarnicola, Blair, Mallen, Goergen Sr., and Goergen drafted the misleading compensation plan and put in place the mechanisms through which ViSalus delivered the plan to potential IPs. (*See, e.g.*, First Am. Compl. at ¶196.) At the pleading stage, these allegations are sufficient to state a claim that Sarnicola, Blair, Mallen, Goergen Sr., and Goergen violated Section 903 once Plaintiffs file a Second Amended Complaint that alleges that they read and/or relied upon the compensation plan.

However, Plaintiffs have failed to sufficiently connect any of the remaining Defendants to their (the Plaintiffs') receipt and review of the compensation plan. For instance, Plaintiffs do not allege that any other Defendants gave them the plan, showed them the plan, told them to review the plan, established the marketing program that led to their review of the plan, and/or directed anyone else to show them the plan.  Thus, Plaintiffs have failed to plead the required specific facts necessary to state against these Defendants a viable Section 903 claim related to the compensation plan.

VIII.

(The Claim Under Section 911(3)(c) of the MCPA)

Plaintiffs allege in count six of the First Amended Complaint that Defendants violated MCL § 445.911.   (*See* First Am. Compl. at ¶243.) That provision bars a party from engaging in any

> method, act, or practice in trade or commerce declared by a circuit court of appeals or the supreme court of the United States to be an unfair or deceptive trade act or practice within the meaning of … 15 U.S.C. § 45(a)(1), in a decision which affirms or directs the affirmance of a cease and desist order issued by the [F]ederal [T]rade [C]omission . . . and *which is officially reported* not less than 30 days before the method, act, or practice on which the action is based occurs.

M.C.L. § 445.911(3)(c) (emphasis added).

However, Plaintiffs have failed to identify any "officially reported" decision of the United States Supreme Court or of a United States Court of Appeals that qualifies under this provision.   In the First Amended Complaint, Plaintiffs identified three decisions: *FTC v. Skybiz.com*, 57 Fed. App'x 374 (10th Cir. 2003); *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975), *aff'd sub nom. Turner v. FTC*, 520 F.2d 701 (D.C. Cir. 1978), and *Ger-Ro Mar, Inc. v. FTC*, 518 F.2d 33 (2d Cir. 1975).[21]   Both *Skybiz.com* and *In re Koscot* are unpublished decisions. And while Plaintiffs have argued that an "unpublished" decision qualifies as an

---

[21] Plaintiffs' counsel could not identify any other cases when questioned at oral argument.  (*See* Tr. at 99-100, Pg. ID 1920-1921.)

"officially reported" one for purposes of Section 911(3)(c), they have not cited any authority for that proposition. *Ger-Ro Mar*, which is an officially reported decision affirming in part a cease and desist order issued by the FTC, is no help to Plaintiffs. As Defendants accurately point out, the United States Court of Appeals for the Second Circuit in *Ger-Ro Mar* actually *reversed* that portion of the FTC's order finding the existence of a pyramid scheme. Thus, *Ger-Ro Mar* is not a reported decision affirming a cease and desist order directed at conduct like that alleged here. Because Plaintiffs have failed to identify any decision that qualifies under the statute, their claim under MCL § 445.911 fails as a matter of law.

## IX.

### (Unjust Enrichment)

In count seven of the First Amended Complaint, the Plaintiffs allege that all Defendants (except for ViSalus) were unjustly enriched. (*See* First Am. Compl. at ¶¶245-258.) Defendants seek dismissal of this claim on two grounds.

First, Defendants argue that "the facts alleged do not plausibly connect the enrichment each Defendant received and the benefit each Plaintiff conferred." (ECF #62 at 29, Pg. ID 1653; *see also* ECF #61 at 13, Pg. ID 1604.) But Plaintiffs have pleaded that the individual Defendants were "upline from the Plaintiffs" in the ViSalus pyramid and that this placement caused the Defendants to receive "bonuses and commissions . . . . [w]hich were necessarily funded by a portion of

47

the Plaintiffs' [purchases]." (First Am. Compl. at ¶250.) By alleging that each individual Defendant received some portion of the money Plaintiffs' paid to ViSalus (as that money was directly funneled upline), Plaintiffs have sufficiently connected their own losses to a gain by the individual Defendants.

Second, Defendants argue that "the unjust enrichment claim fails because there is no underlying tort claim remaining against the individual Defendants who were allegedly unjustly enriched." (ECF #62 at 29-30, Pg. ID 1653-54.) However, the Court is not aware of any authority that a claim for unjust enrichment under Michigan law must rest on an underlying tort, and Defendants have not cited any such authority. Unjust enrichment is a quasi-*contractual* remedy, and Michigan courts generally apply contractual, not tort-based, rules to unjust enrichment claims. *See, e.g.*, *Miller v. Laidlaw & Co. (UK) Ltd.*, No. 11-12086, 2012 WL 1068705, at *11 (E.D. Mich. Mar. 29, 2012) ("Claims for unjust enrichment are the equitable counterpart to a claim for breach of contract and Michigan courts have held that statute of limitations apply to equitable claims by analogy."). Defendants have not persuaded the Court that Plaintiffs' unjust enrichment claim fails because it does not rest on an underlying tort.

The Court does agree, however, that the unjust enrichment claim fails against the Entity Defendants[22].   The connection between the detriment to Plaintiffs and the alleged benefit to the Entity Defendants is simply too attenuated to state a viable unjust enrichment claim.   Plaintiffs have stated a viable unjust enrichment claim against the individual Defendants but not the Entity Defendants.

## X.

(Claim for Civil Conspiracy)

In count nine of the First Amended Complaint, Plaintiffs assert that all Defendants engaged in a civil conspiracy to commit various common law torts and other unlawful acts (such as violating RICO).   (*See* First Am. Compl. at ¶¶ 259-264.)   The Entity Defendants and Defendants Sarnicola, O'Toole, Pacetti, Fortner, Jackson, Craig, Wilson, Varon, Petrilli, T. Kirkland, H. Kirkland, Varon, and Petrilli (for purposes of this paragraph only, the "Promoter Defendants"), have now moved to dismiss this count on two grounds.   (*See* ECF #61 at 14-16, Pg. ID 1605-07.)

First, the Promoter Defendants and the Entity Defendants argue that Plaintiffs have failed to state a claim for civil conspiracy because Plaintiffs have not pleaded that each of the Promoter and Entity Defendants individually

---

[22] Previously defined herein as Ropart Asset Management Fund, LLC, Ropart Asset Management Fund II, LLC, Freedom Legacy, LLC, Wealth Builder International, Inc., and Residual Marketing, Inc.

committed a separate tort.  (*See id.* at 14, Pg. ID 1605.)  In support of this position, the Promoter Defendants and the Entity Defendants understandably rely on the portion of the First Dismissal Order in which the Court dismissed Plaintiffs' civil conspiracy claim because Plaintiffs had not pleaded "a separate, actionable tort as to each Defendant."  (First Dismissal Order at 70, Pg. ID 951.)  The Court rested this holding on the long-standing rule under Michigan law that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." (*Id.*, quoting *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003).)

Upon additional review, the Court concludes that it read the Michigan separate, actionable tort rule too broadly.  The rule states only that Plaintiffs must plead a "separate, actionable tort," *not* that such a tort must be pleaded against *each* member of the alleged conspiracy.  And the Court's broad reading – requiring an actionable tort to be pleaded against all alleged conspirators – renders the notion of a conspiracy superfluous: where all of the conspirators have personally committed an underlying tort, the conspiracy claim would simply duplicate the underlying tort claims.

Moreover, a defendant who enters into an agreement with another person who actually commits a tort or crime can plainly be liable for conspiracy even where the defendant does not personally commit the underlying tort or substantive

offense. *See, e.g.*, *Driver, supra* (holding that defendant may be liable for RICO conspiracy even where he does not personally commit an underlying substantive RICO violation); *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1056 (W.D. Tenn. 2009) ("Conspiracy . . . imposes liability on persons who, *although not actually committing a tort themselves*, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." (emphasis added)).  Thus, the Court concludes that under a proper application of Michigan's separate, actionable tort rule, in order to plead a viable conspiracy claim, a plaintiff must sufficiently plead (1) an underlying tort claim against at least one of the defendants and (2) that the other defendants entered into an agreement with the tortfeasor that included the commission of the tort.  Plaintiffs have done that.

Second, the Promoter Defendants and the Entity Defendants argue that Plaintiffs have failed to sufficiently plead that these Defendants entered into any conspiracy – with ViSalus or anyone else.  (*See* ECF #61 at 14-16, Pg. ID 1605-1607.)  But, as the Court explained in detail above, such an agreement among the Promoter Defendants may be inferred from the detailed factual allegations

included in the First Amended Complaint.[23]   (*See, e.g.*, First Am. Compl. at ¶212, Pg. ID 1409.)   The Promoter Defendants have therefore not presented any basis under which the Court may dismiss Plaintiffs' civil conspiracy claim.

## XI.

### (Claim Under Section 5 of the MFIL)

In count eleven of the First Amended Complaint, Plaintiffs allege that all Defendants violated Section 5 of the MFIL, MCL § 445.1505. (*See* First Am. Compl. at ¶¶ 270-274.)   Section 5(a) of the MFIL prohibits a person from "employ[ing] any device, scheme, or artifice to defraud" in connection with the filing, offer, sale, or purchase of any franchise.   M.C.L. § 445.1505(a).   Plaintiffs allege that Defendants violated this provision when they engaged in a "scheme" to defraud Plaintiffs by having them sign up for the ViSalus Program.   (*See* First Am. Compl. at ¶273.)   The Defendants argue that liability under Section 5 is limited to persons who offer or sell a franchise and that Plaintiffs' Section 5 claims should thus be dismissed against all Defendants other than ViSalus.   The Court agrees.

While Section 5 sets forth certain prohibited conduct, it does not contain its own private right of action authorizing a private plaintiff to sue for its violation.   A different section of the MFIL, Section 31, MCL § 445.1531, is the only provision

---

[23] The Court does agree, for the same reasons discussed above with respect to Plaintiffs' RICO claim under Section 1962(d), that Plaintiffs have failed to state a cognizable conspiracy claim against the Entity Defendants.

52

of the MFIL that creates a private right of action.  Thus, a plaintiff seeking to sue for a violation of Section 5 can only do so by bringing a claim under Section 31.

Section 31 authorizes a private civil action against a person "*who offers or sells a franchise in violation of Section 5*." MCL § 445.1531 (emphasis added). Thus, Section 31 "only imposes liability on a person who offers or sells a franchise in violation of [Section] 5." *Franchise Mgmt. Unlimited, Inc. v. Am.'s Favorite Chicken*, 561 N.W.2d 123, 129 (Mich. Ct. App. 1997).  Since ViSalus is the only Defendant who offered or sold an alleged franchise to Plaintiffs, the claim for violation of Section 5 of the MFIL fails as to all other Defendants.

## XII.

### (Conclusion and Summary of Ruling)

For the reasons stated above, **IT IS HEREBY ORDERED** that the Motions (ECF ## 61, 62) are **GRANTED IN PART AND DENIED IN PART** as described above.  In summary, the Court dismisses the following claims:

- Count one is **DISMISSED** against all Defendants *except for* ViSalus, Sarnicola, Blair, and Mallen.
- Count two is **DISMISSED** against the Entity Defendants *only*.
- Plaintiffs' 10b-5(b) claim in count three is **DISMISSED** against all Defendants.
- Count four is **DISMISSED** against all Defendants *except for* ViSalus.
- Count six is **DISMISSED** against all Defendants.
- Count nine is **DISMISSED** against the Entity Defendants *only*.

- Count eleven is **DISMISSED** against all Defendants *except for* ViSalus.

The Court will convene a telephone call with counsel for all parties to discuss the filing of a Second Amended Complaint; the possible curing of the pleading deficiencies identified herein; and the next steps in this action.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 9, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 9, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113