UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KERRIGAN, et al,

      Plaintiffs,

vs.

VISALUS, INC., et al

      Defendants.

_____/

Case No. 2:14-cv-12693
Hon. Matthew F. Leitman

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## VISALUS DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................... ii

ISSUE PRESENTED............................................................................ iv

CONTROLLING AUTHORITIES...........................................................v

INTRODUCTION ................................................................................1

LEGAL STANDARD AND ARGUMENT ............................................4

    A.    PLAINTIFFS' COUNSEL DOES NOT HAVE A CONFLICT OF INTEREST THAT WOULD REQUIRE THE COURT TO STRIKE THE CLASS ALLEGATIONS..............................................5

        1.    Defendants Attempt To Create Conflict Situation By Creating An Imaginary Defendant.............................................8

        2.    Plaintiffs' Counsel Is Not Required To Take Conflicting Positions ...................................................................11

        3.    Defendants' Argument That Plaintiffs' Counsel Would Be Suing Its Own Clients If Appointed Class Counsel In Byrd Is Absurd ...................................................................15

        4.    Plaintiffs' Counsel Is Not Seeking To Recover From A Single Defendant In The Three Lawsuits And There Is No Blanket Rule That Plaintiffs' Counsel Cannot Represent Different Plaintiffs In Different Actions Against ViSalus ......................................16

    CONCLUSION .................................................................................20

i

# INDEX OF AUTHORITIES

## Cases

*Billingsley v. Bachinskas*, 78 F.R.D. 407 (N.D. Tex. 1978)....................................11

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998).....13

*Forde v. Anjoy Travel Ltd.,* 94 F.R.D. 41(S.D.N.Y. 1982) ....................................10

*Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, (3d Cir. 1973) ..........................11

*Honolulu Fed. Sav. & Loan Ass'n v. Verex Assur., Inc*., 116 F.R.D. 474, (D. Haw. 1987)..........................................................................................................................11

*Imhoff Inv., LLC v. SamMichaels, Inc.,* No. 10-10996, 2012 WL 2036765, at *2 (E.D. Mich. May 21, 2012) ........................................................................ 4, 6, 7

*In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ, 1897, 2011 WL 2581755, at *6 n. 8 (S.D.N.Y. Apr. 29, 2011) ..................................................................................8

*In re Payment Card Interchange Fee & Merch. Disc.Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) ......................................................................................................13

*In re Ready–Mixed Concrete Antitrust Litig.,* 261 F.R.D. 154, 168 (S.D.Ind.2009) 5

*Kuper v. Quantum Chem. Corp.,* 145 F.R.D. 80, 82–83 (S.D. Ohio 1992) ............20

*Moore v. Margiotta*, 581 F. Supp. 649, 652–53 (E.D.N.Y. 1984) ..........................20

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999)...................................... 13, 18

*Pipes v. Life Investors Ins. Co. of America*, 254 F.R.D. 544, 550 (E.D. Ark. 2008) ........................................................................................................................13

*Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014) ...............................18

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) ..............................13

## <u>Other Authorities</u>

*Newberg on Class Actions* § 3:75 (5th ed.) .............................................................19

## <u>Rules</u>

Fed. R. Civ. P. 23(a).......................................................................................4

Fed. R. Civ. P. 23(a)(4)..................................................................................4

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................5

## **ISSUE PRESENTED**

Does Plaintiffs' counsel have a conflict of interest that would require the Court to strike the class allegations in this lawsuit?

Plaintiffs' Answer: No.

## <u>CONTROLLING AUTHORITIES</u>

### <u>Cases</u>

*Imhoff Inv., LLC v. SamMichaels, Inc.,* 2012 WL 2036765, at *2 (E.D. Mich. May 21, 2012)

*Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014)

### <u>Rules</u>

Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(a)(4)

Fed. R. Civ. P. 23(g)(1)(A)

## **INTRODUCTION**

After having substantially lost every motion in this case for 2 ½ years, usually after advancing contradictory and confused positions, Defendants' latest (untimely) motion to strike the class allegations is possibly the least plausible motion filed to date. It is probably not a coincidence that this latest motion is filed on the eve of a hearing in November which should finally settle the issues which claims should be directed to the more than 40 defendants who participated in this long-running fraudulent scheme, and hopefully, will shortly lead to class certification for the over 387,000 individual promoter class members to recover the approximately $360 million in losses they suffered.[1]  [Dkt. # 115 at Memorandum p.1].

Let us put this motion in perspective. The instant case was filed in July, 2014, with the Court finding in two rulings that the compensation plan recruitment scheme described an inherently fraudulent pyramid scheme [See Dkt. # 75]. Plaintiffs spent the next two years in discovery finding out which of the dozens of companies and LLC's set up by various promoters, the defendant "Founders," the Goergen family participants, and the Ropart Asset Management private equity funds have legal

---

[1] The class definition being sought is:
> The class consists of individuals who reside in the United States and Canada who became Independent Promoters between July 9, 2008 and the present who have lost money they paid to ViSalus.

[Dkt.# 115 at Motion p. 2]

1

culpability. The Second and Third Amended Complaints set forth why and how over 40 defendants managed the scheme, sucked it dry, and distributed over $150 million to themselves and each other, while leaving the company essentially collapsed. In the meantime, the Founder Defendants and Defendant Todd Goergen, who have continued to run ViSalus before and after the *Kerrigan* lawsuit, concocted a fraudulent equity scheme—an unregistered securities offering tacked on top of the Compensation Plan that pays for recruiting, and which was designed to entice new promoters to keep the sinking (or sunk) ViSalus company afloat for another couple of years.

The *Byrd* plaintiffs[2] and proposed class—"Independent Promoters …who have lost money they paid toViSalus"– is composed of about 700 (as best we can tell at this time) people, each of whom is also a class member of *Kerrigan*, differing only that the conduct forming the basis of *Byrd* occurred after *Kerrigan* was filed and was based on an offering that most of the *Kerrigan* class members did not act on. As the Byrd complaint itself articulates, Ms. Byrd was not aware of the *Kerrigan* litigation when she was induced to become a promoter, and was only given the *Kerrigan* complaint by a Colorado state securities attorney who opened an investigation into the securities offering she complained about. Ms. Byrd, and

---

[2] *Caprece Byrd, et al. v. ViSalus, Inc., et al.*, Case No. 4:17-cv-12626 (E.D. Mich.) ("*Byrd*").

2

subsequently a number of other promoters retained Plaintiffs' counsel to pursue the claim as a class.

After *Kerrigan* was filed and its business practices put at issue, and particularly its lack of real, arms-length customers, some of the defendants in *Kerrigan*, in 2017 decided to sell directly to customers on Amazon, and in the process ruin one of its promoters' business, a program of direct sales through Amazon developed by Michael Gehart. Thus, Gehart, an Independent Promoter who suffered a loss of money paid to ViSalus— also a *Kerrigan* class member when the Kerrigan class gets certified—retained Plaintiffs' counsel to pursue an individual claim unique to him through which he could not recover as a *Kerrigan* class member.[3]

Neither of these cases present a conflict of interest. Each case has exactly the same interest: to recover damages from an overlapping pool of culpable parties for the same conduct arising out of a collapsed pyramid scheme. Defendants' motion is a fabrication composed of "what ifs" and essentially misrepresentations. Plaintiffs' counsel can fairly and adequately protect the interests of this class (and Michael Gehart and the *Byrd* class) and is committed to zealously representing its clients. Defendants' Motion must be denied.

---

[3] *Michael Gehart v. ViSalus Inc., et al.*, Case No. 4:17-cv-12132 (E.D. Mich.) ("*Gehart*").

3

## LEGAL STANDARD AND ARGUMENT

The prerequisites for maintaining any class action are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Defendants' Motion to Strike Class Allegations does not take issue with the class number, the common questions of law or fact common to the class, or the claims or defenses of the representative parties, but is based solely on the fourth prerequisite, and not even the representative parties' ability, but on Plaintiffs' counsels' ability to fairly and adequately protect the interests of the class. "To satisfy the fourth prerequisite for class-action status, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." *Imhoff Inv., LLC v. SamMichaels, Inc.,* 2012 WL 2036765, at *2 (E.D. Mich. May 21, 2012) (citing Fed. R. Civ. P. 23(a)(4)). "This is a two-pronged inquiry, "one relates to the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; the other relates to the adequacy of class counsel's representation."" *Id.* (citing *In re Ready–Mixed Concrete Antitrust Litig.,* 261 F.R.D. 154, 168

4

(S.D.Ind.2009)). Rule 23 provides four guidelines for the Court to consider when determining the adequacy of class counsel's representation:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

*Id.* at *2 (citing Fed. R. Civ. P. 23(g)(1)(A)).

Defendants' Motion does not raise issue with any of the four guidelines above, rather bases its entire Motion to Strike the Class Allegations by challenging counsels' adequacy on the ground of violation of professional ethics and an alleged "conflict."

### A.   PLAINTIFFS' COUNSEL DOES NOT HAVE A CONFLICT OF INTEREST THAT WOULD REQUIRE THE COURT TO STRIKE THE CLASS ALLEGATIONS

That this alleged "conflict" does not exist - - and Defendants' counsel knows it does not exist-- is plain from the relief sought by this bogus motion.  Striking the class allegations would not cure an actual conflict of interest. If representing *Gehart* or *Byrd* ethically conflicted with representing the class, then having Plaintiffs continue to represent the individual parties (Kerrigan, Valli, and Mikovich) is equally an ethical problem not cured by striking the class allegations. But no one who wrote this motion seriously believes there is a conflict. Rather, it is a last ditch effort to gin up something between now and class certification.

5

Efforts like this have been tried and failed. "When assessing the adequacy of counsel, courts must distinguish and disregard 'petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class.'" *Imhoff Inv., LLC v. SamMichaels, Inc.*, 2012 WL 2036765, at *2 (E.D. Mich. May 21, 2012) (citation omitted). Defendants' Motion is exactly that – petty and manufactured, and an attempt to distract the Court from its proper focus under Rule 23.

The most obvious reason why there is no conflict is because everyone in each of the three cases represented by the Plaintiffs' counsel has the same goal and interest. Every member of the *Byrd* class is also simultaneously a class member of the *Kerrigan* litigation, and every dollar of the *Byrd* class losses is recoverable if and when the RICO and securities claim in *Kerrigan* proceed to trial on a class basis. Same with Michael Gehart. He is almost without doubt a money-losing promoter (Defendants do not claim otherwise) and would be entitled to a portion of the *Kerrigan* class recovery. Both *Byrd* plaintiffs and Gehert thus have exactly the same aim and goal as the *Kerrigan* class: to succeed in the *Kerrigan* class. What the *Byrd* plaintiff class and Gehart *also* have are additional claims not available to the *Kerrigan* class, claims that arose after that suit was filed and based on different wrong doing. That fact does not create a conflict, and no case, no matter how badly misread by Defendants, says so. Neither do the professional rules. Rule 1.7(a)

6

provides that a "directly adverse" representation is prohibited; subsection (b) limits "materially adverse" representation.

The utter failure to come to grips with this basic fact leads to the second articulated basis for the motion to strike – that Plaintiffs' counsel has an alleged conflict because the Defendants don't have enough money to pay all their clients for the harms they have caused. The argument is equally perverse (especially since Defendants take no issue with flaunting their wealth gained from Plaintiffs' money). First, each of the three cases has a different group of Defendants for any judgment against them, and second, Defendants have offered no back-up to this position or provided any evidence that the assets of each of the named Defendants is insufficient to recover any judgment against them.

 The fact that Defendants have chosen to raise ethical issues against Plaintiffs' Counsel here rather than before attorney discipline board is further evidence that Defendants are attempting to divert the Court from the real issues at hand. *See, e.g., Imhoff Inv., LLC v. SamMichaels, Inc.,* 2012 WL 2036765, at *2 (E.D. Mich. May 21, 2012) ("Defendants sometimes challenge class counsel's adequacy on the ground of violation of professional ethics in connection with the class litigation ... [Most courts] have directed the defendants to bring any ethical complaints they have in the proper legal disciplinary forums and have not barred class certifications grounded on any determination of the merits of such ethical complaints") (quoting *In re Dynex*

*Capital, Inc. Sec. Litig.,* No. 05 Civ, 1897, 2011 WL 2581755, at *6 n. 8 (S.D.N.Y. Apr. 29, 2011)). There is no "real" conflict of interest (or other ethical violation) in Plaintiffs' counsels' representation of Michael Gehart or the Plaintiffs and purposed class in the *Byrd* litigation that would require Plaintiffs' counsel to be dismissed from this lawsuit and require the court to strike the class allegations.

### 1. Defendants Attempt To Create Conflict Situation By Creating An Imaginary Defendant

Defendants claim that Plaintiffs' counsel cannot represent Michael Gehart and the interests of this class or the *Byrd* class by claiming Gehart is an (imaginary) defendant in this case. Defendants claim Gehart *could* be a Defendant in this litigation and the *Byrd* litigation by rattling off some general similarities between himself and the Independent Promoter Defendants in this litigation and Defendant Vincent Owens in the *Byrd* litigation, and then compound on the argument by claiming that since he is or could be a potential defendant Plaintiffs' counsel must consider him as a potential source of recovery in order to adequately represent the Plaintiffs and the putative class here. Then Defendants' go as far as claiming that if Plaintiffs' Counsel is going to zealously represent Gehart, and *if* he is a viable defendant in this case, then his strongest defense is that ViSalus is not a pyramid scheme – which is obviously adverse to the interests of this case and class.

Not only is this confusing, it is entirely invented. As things actually exist, Gehart is not a defendant in this litigation, and he is not a defendant in the *Byrd*

8

litigation because he didn't do anything to become a defendant. The Individual Promoter Defendants are culpable because they knew about the pyramid scheme, acted to further the scheme, and were paid big money to sell the dream to promoters like Kerrigan and Gehart. Of course, to this day each of the defendants claim there was no scheme or they knew nothing—apparently Gehart alone out of all the people involved was the mastermind with scienter to establish, perpetuate, and/or carry out the scheme to defraud the Plaintiffs and class here.

Plaintiffs' counsel is not required to take the "adverse" position that ViSalus is not a pyramid scheme. To the contrary, the fact that it is a pyramid scheme is part of Gehart's RICO claim, and is plastered all over the complaint filed on his behalf. [Dkt. # 1 at Pars. 1, 7, 10, 26, 72, 82, 91, etc.].[4] Gehart's sharing of ViSalus marketing materials on his social media pages, or the fact that he achieved their rank of Ambassador, hardly implicates Gehart in Defendant's scheme (if this were the standard there would be hundreds if not thousands of distributors that would have to be named since ViSalus provided every new distributor with marketing materials to share and scripts to use to try and recruit others).   Gehart did not materially

---

[4] Gehart's complaint spells this out in Par. 91:

> The association-in-fact has a longevity sufficient to permit those associates to pursue the enterprise's purpose - - the establishment and perpetuation of an unlawful pyramid scheme and the operation of a fraudulent pyramid scheme. That scheme is described in the *Kerrigan et al. v. ViSalus* litigation currently pending.

misrepresent ViSalus's worth and an "equity payout" in order to induce hundreds of people to invest in the Founders Equity Incentive Plan as did Vincent Owens and the other defendants in the *Byrd* litigation. In short, all Defendant's social media "evidence" shows is that Gehart did what every promoter who got sucked into the pyramid scheme did, including Kerrigan himself, who got the other name plaintiffs involved in the dream.

Of the over 400,000 promoters identified in *Kerrigan*, approximately 85% lost money, including, most likely, Gehart. Even if Gehart himself is not among that 85%, are Defendants seriously suggesting that each of the approximately 60,000 promoters who did not lose money should be named as a defendant? If Defendants really believed that Gehart should have been a defendant, then he should have been brought into this litigation as a third-party defendant. If Gehart is so important, where was the F.R.C.P. 19(a) motion? Of course, Defendants would then have had to explain why the thousands of promoters who are not members of the class, because they made a little money, should not themselves be joined in the litigation.

The cases Defendants cite on this issue provide no support. They involve a class representative (not the class counsel) with interests antagonistic to the class. In *Forde v. Anjoy Travel Ltd.,* 94 F.R.D. 41(S.D.N.Y. 1982), the class representative's theory of liability is different from the other class members. In *Honolulu Fed. Sav. & Loan Ass'n v. Verex Assur., Inc*., 116 F.R.D. 474, (D. Haw.

1987), the class representative's position as an intermediary created a conflict between the plaintiffs and the class.  In *Billingsley v. Bachinskas*, 78 F.R.D. 407 (N.D. Tex. 1978), the plaintiff had a conflict because he had been employed by the defendant so he could not act as a class representative.  Defendants attempt to apply these cases to the adequacy of counsel with *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, (3d Cir. 1973), but *Greenfield* stands for nothing of the sort.  In *Greenfield*, inadequacy of the counsel was due to counsel's failure to provide adequate notice to the absent class members as it had promised the court it would. *Id.* at 830-31.  Gehart is not attempting to serve as a class representative in either this case or the *Byrd* litigation and Defendants have failed to provide any support that Plaintiffs' counsels' representation of Gehart is antagonistic to the class here.

### 2. Plaintiffs' Counsel Is Not Required To Take Conflicting Positions

The basis of this litigation is that, whether by RICO, federal securities, or state law, ViSalus and the Defendants named here orchestrated an illegal pyramid scheme. Plaintiffs' counsel never need to take the position in the *Gehart* litigation (as set forth above) or in the *Byrd* litigation (where the pyramid scheme legality or illegality does not make a difference with respect to the securities fraud) that ViSalus

and the Defendants here were not operating an illegal pyramid scheme – the only position that would be inconsistent with the potential class here.[5]

Defendants badly misread the complaints in each case if they seriously claim that they offer different factual positions. Defendants seem to claim that plaintiffs' complaints say something different with respect to the demand for product and product sales, but this is untrue. Each suit filed by Plaintiffs' counsel alleges (and will prove if necessary) that there was little to no demand for product by real customers.[6] Far from being "conflicting" or contrary, the facts supporting Gehart's claim are only conflicting and inconvenient for the *Defendants* in *Kerrigan*, since their "customer" claims turn out to be *Amazon* customers buying the product directly

---

[5] In *Byrd*, the Complaint states in Par. 2 with the words, "Defendant ViSalus is a failed pyramid scheme." In *Gehart*, the Complaint, in Par. 1, starts "when he joined, Plaintiff did not know that ViSalus operated an illegal pyramid scheme."

[6] As Gehart's complaint alleges, in Par. 25:

> What Plaintiff did not know until he was in the system was that customers were few, and the real payments could only come from recruiting others into the system.

And the RICO scheme described beginning in Par. 31 begins with the paragraph entitled "Lack Of Real Customers." The fact that Gehart had to sell product to customers outside of the ViSalus system only supports this point, not contradicts it. The people that did actually like the product did not want to be bothered with ViSalus's incessant recruiting tactics and purchased the product from Gehart on Amazon outside of ViSalus's system.

12

online rather than through the promoters who paid $499 or $999 so they could sell to few "customers."

The *Byrd* complaint is also consistent. See FAC, Dkt. # 30, Pars. 9, 59, 227, and elsewhere. More to the point, whether there was or was not "demand" for the product is not the basis for or relevant to *Byrd*. The fake equity offered as part of the Founders Equity Incentive Plan was offered because the product sales within the system could not support the bonuses it was paying out to its professional promoters. Each of the newly-recruited promoters in *Byrd* articulates why they joined and how much money they lost as promoters.

All of the cases that Defendants' cite in their motion to support their argument that Plaintiff's counsel must take adverse positions to represent the clients involved in the three litigations are out of place - they involve adversity between the sub-classes as part of a settlement[7] or inadequate class representatives,[8] neither of which an issue here.  None of the plaintiffs in any action are requesting the court to order

_____

[7] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (the class was divided between holders of present and future claims thus requiring separate counsel for each); *In re Payment Card Interchange Fee & Merch. Disc.Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) (counsel could not represent a class seeking injunctive relief and a class seeing monetary relief in the same litigation); and *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) (class sub-groups had conflicting interests).

[8] *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010); *Pipes v. Life Investors Ins. Co. of America*, 254 F.R.D. 544, 550 (E.D. Ark. 2008)

ViSalus to stop operating in its entirety and the adequacy of the class representative is not the issue in dispute.

Defendants' final argument, that a judgment in this litigation would render any stock in ViSalus "valueless" thus equating to conflict between the Plaintiffs and class here and the *Byrd* litigation, is nonsensical. The *Byrd* Complaint alleges that the plaintiffs were fraudulently induced to buy a security that has no value based on false representations of current performance and lies about future dividends. A judgment against ViSalus and the Founders would only confirm this to be true. And Defendants apparently concede that the equity they were offering to promoters was fake ("The Founders Equity Incentive Plan, which Plaintiffs' counsel mischaracterizes as an actual securities offering, is a phantom equity incentive plan…") (Defs.' Mtn. at 18).[9] The theoretical fact that Defendants claim that distributors *could* receive a cash payout (or what they called a "dividend" before getting sued for securities fraud) if the distributor remains active and at the qualifying rank whenever ViSalus decides to determine who it will pay if it does decide to pay, and all at its sole discretion (all of which is another part of the fraudulent inducement claim) based on the value of the company does not *actually*

---

[9] The *Byrd* equity plan is being investigated by two securities agencies, in Colorado and Michigan.

14

create a conflict for Plaintiffs' counsel or cause issue with Plaintiffs' counsels'
ability to zealously advocate for its clients.

### 3.    Defendants' Argument That Plaintiffs' Counsel Would Be Suing Its Own Clients If Appointed Class Counsel In *Byrd* Is Absurd

Defendants have either misread the proposed class definition in the *Byrd*
litigation or are intentionally misrepresenting the class definition. The Individual
Promoter Defendants named here are not class members in *Byrd*. Every member of
the *Byrd* class is a money-losing promoter who got suckered into investing $25,000,
$40,000 or more to "earn" "equity." If Defendants gave away some of that "equity"
internally to their co-Defendants (as apparently they did to several promoters,
including a *Byrd* and *Kerrigan* defendant, Gary J. Reyonds), these few people are
not and would not be members of the *Byrd* class and no, they would not become
Plaintiffs' counsels' new clients upon certification.  This should be clear from the
proposed class definition in both the original complaint and the first amended
complaint filed in the *Byrd* litigation, which expressly *excluded* the Individual
Promoter Defendants from the class.[10] If appointed class counsel in *Byrd,* Plaintiffs'
counsel would not be suing its own clients.

---

[10] In the original complaint the class described consisted of "all those who purchased
or otherwise acquired ViSalus securities, or were informed by ViSalus that they were
"unit holders" of such equity in the course of an offering called "Founders Equity
Incentive Plan." ***Excluded from the Class are Defendants,*** the officers and directors
of the Company, members of their immediate families and their legal

    **4.**      **Plaintiffs' Counsel Is Not Seeking To Recover From A Single Defendant In The Three Lawsuits And There Is No Blanket Rule That Plaintiffs' Counsel Cannot Represent Different Plaintiffs In Different Actions <u>Against ViSalus</u>**

Defendants claim that Plaintiffs' counsel is attempting to recover from a single defendant with a finite amount of resources, and therefore, suing on behalf of *Byrd* and *Gehart* on the heels of *Kerrigan* presents a conflict with respect to *Kerrigan*. There are two problems associated with this argument.

First, there is no "single" pool of money nor there is not a *single* defendant in any one of the lawsuits, rather multiple and different defendants named in each of the three suits, and these defendants present different "pools" of money available for recovery. The damages thus far articulated in the *Kerrigan* case are approximately $350 million. There are four general "pools" of money potentially available to compensate the plaintiff class. The $15 million D & O policy covering the Founders

---

representatives, heirs, successors or assigns and, any person or entity in which Defendants have or had a controlling interest." (emphasis added) 2:17-cv-12626-LJM-SDD Doc # 1 at 20. In the First Amended Complaint, the class described consists of "all those who purchased or otherwise acquired ViSalus securities, or were informed by ViSalus that they were "unit holders" of such equity in the course of an offering called the "Founders Equity Incentive Plan." ***Excluded from the Class are Defendants, those individuals identified as defendants in the Kerrigan lawsuit who may have obtained equity "units" in the Plan***, their agents, and others who obtained their "units" without investment, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and, any person or entity in which Defendants have or had a controlling interest." (emphasis added). 4:17-cv-12626-MFL-DRG Doc # 30 at 22.

16

and ViSalus for the 2014 policy year and a series of contractual agreements to pay a portion of defense costs from ViSalus's former owner, Blyth, Inc. is one "pool." The Founders personally, and through their various companies pulled out a large amount of money from the operation between 2011 and 2013, as much as $90 million, comprising another "pool." The Ropart Asset Management/Goergen defendants, who pulled out at least $55 million between 2008 and 2012 are a third "pool." And the Individual Promoter Defendants, and their associated companies, pulled out approximately $15-20 million, comprising the last leg of the "pool."[11] Each of these has different defenses and the Plaintiffs' claims against each may proceed for damages in different years and under different legal theories.

---

[11] Visalus, Inc., Nick Sarnicola, Robert Goergen, Sr., Todd Goergen, Ryan Blair, Blake Mallen, Frank Varon, Kyle Pacetti, Jr., Michael Craig, Timothy Kirkland, Holley Kirkland, Aaron Fortner, Rachel Jackson, Tara Wilson, Anthony Lucero, Rhonda Lucero, Jake Trzcinski, Gary J. Reynolds, Kevin Merriweather, Ropart Asset Management Fund, LLL, Ropart Asset Management Fund II, LLC, Rock Ridge Asset Management Company, LLC, Ropart Asset Management, LLC, Living Trust Dated 9/30/1991 F/B/O Robert B. Goergen, OCD Marketing, Inc., Hashtag One, LLC, Power Couple, Inc., Arriveby 25, Inc., Bam Ventures, Inc., Jason O'Toole International Holdings, Inc., Gooder, LLC, Red Letters, LLC, M-Power Path, Inc., A Berry Good Life, Inc., Network Dynamics America Corp., Freedom Legacy, LLC, Residual Marketing, Inc., Got Heart Global, Inc., Jaketrz, Inc., Mojos Legacy, LLC, Beachlifestyle Enterprises, LLC, Wealth Builder International LLC, Prospex Automated Wealth Systems, Inc., 9248-2587 Quebec, Inc., Jason O'Ttoole, and Lori Petrilli. In *Byrd*, in addition to ViSalus, the founders and several top promoters, including Ashley Sarnicola and Vincent Owens (not previously named as a defendant) are named as defendants.

The *Byrd* class damages are believed to be $15 million, and, as noted elsewhere, are largely subsumed into the *Kerrigan* damages in that every *Byrd* plaintiff by definition is a money-losing promoter. But *Byrd* and in all likelihood Gehart, *expand* rather than contract, the potential recovery pool. The *Kerrigan* litigation is defended by 2014 D&O policies issued in 2014, while ViSalus was a subsidiary of Blyth, Inc. But the *Byrd* litigation will trigger ViSalus D&O policies issued since 2015, with their own indemnity provision, thus adding to the recovery pool. ViSalus's general commercial insurance may cover have coverage obligations over Gehart's claim from 2017. The Plaintiffs and the class here, Michael Gehart, and the plaintiffs and the class involved in the *Byrd* litigation have not sued a single defendant and are not all competing for the same pool of resources.

Second, although Defendants attempt to imply there is a blanket rule prohibiting an attorney currently representing another class against the same defendant from serving as class counsel, there is no blanket rule. Class counsel may represent two classes, even in related cases, as long as the litigant's interests do not inherently conflict. *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014).  In *Sandoval*, the court denied to disqualify class counsel due to potential conflicts of interest (analyzing both the *Ortiz* and *Lou* cases cited by Defendants here) because the defendants had only raised speculative concerns about a conflict of interest. *Id.* at 1047.  The *Sandoval* court noted:

18

The treatise *Newberg on Class Actions* § 3:75 (5th ed.) takes a more nuanced approach:

Like a lawyer in any litigation, a class action attorney may not simultaneously represent two clients if those clients' interests are directly adverse or if there is significant risk that the dual representation will materially limit the lawyer's representation of one client. Such attorney conflicts, like those of the class representative, are material to the question of whether the proposed class counsel can adequately represent the class; but as with class representatives, only client conflicts that are material and presently manifest—rather than merely trivial, speculative, or contingent on the occurrence of a future event—will affect the adequacy of class counsel. *Id.* (internal footnotes omitted).

According to *Newberg,* "[i]n general, class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." *Id. Newberg* notes that concurrent representation may be beneficial in some situations, and that courts have found counsel inadequate due to conflicts where "the recovery of one group in one forum inherently conflicts with the recovery of the other." *Id. Newberg* sets forth examples such as where a limited fund means that the recovery of one claimant will cut directly into recovery by another, where substantive law permits recovery by only one or the other set of litigants, where one client is litigating an appeal to a class action settlement in which another client claimed recovery, and where counsel's actions have generated conflicts between class representatives and the class. *Id.*

*Id.* at 1047.

Here, the interests of Plaintiffs and the proposed class, Michael Gehart, and the plaintiffs and proposed class in the *Byrd* litigation do not inherently oppose one another.  Defendants have offered no evidence of the financial status of each of the Defendants named in each litigation, or any real conflict, but rather theoretical and

19

manufactured conflicts of interest.   All plaintiffs are not vying for relief from the same limited source as in *Kuper v. Quantum Chem. Corp.,* 145 F.R.D. 80, 82–83 (S.D. Ohio 1992) as Defendants' claim, but rather multiple defendants and resources (inconsistent with *Moore v. Margiotta*, 581 F. Supp. 649, 652–53 (E.D.N.Y. 1984), where counsel could not elucidate that there was a difference in the funds that the two classes were seeking).   There simply is no conflict that requires curing and no reasoning behind striking the class allegations in this suit.

## CONCLUSION

Defendants have failed to set forth any sort of ethical violation or any other reason for this Court to strike the class allegations in this lawsuit.   Plaintiffs' counsel does not have a conflict in representing multiple plaintiffs in multiple lawsuits against ViSalus and the several other defendants named in the suits. Defendants' Motion merely fabricates a conflict as an attempt to dismiss Plaintiffs' counsel and ask the court to strike the class allegations, and accordingly, should be denied.

Respectfully submitted,

SOMMERS SCHWARTZ, P.C.

s/ Andrew Kochanowski
Andrew Kochanowski (P55117)
Sarah L. Rickard (P78767)
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
akochanowski@sommerspc.com
srickard@sommerspc.com

PREBEG, FAUCETT & ABBOTT, PLLC
Matthew J.M. Prebeg
(TX Bar No: 00791465)
Brent T. Caldwell
(TX Bar No: 24056971)
8441 Gulf Freeway, Suite 307
Houston, TX 77017
(832) 743-9260
mprebeg@pfalawfirm.com
bcaldwell@pfalawfirm.com

WEXLER WALLACE LLP
Edward A. Wallace
(IL Reg. No. 6230475)
Adam Prom
(IL Reg. No. 6317283)
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
(312) 589-6272
EAW@wexlerwallace.com
ap@wexlerwallace.com

Dated:  October 12, 2017

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 12, 2017, I electronically filed the forgoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record on the ECF Service List.

<u>s/ Andrew Kochanowski</u>
Andrew Kochanowski (P55117)
Sommers Schwartz, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
akochanowski@sommerspc.com
