UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KERRIGAN, *et al*.,

      Plaintiffs,                           Case No. 14-cv-12693
                                          Hon. Matthew F. Leitman

v.

VISALUS, INC., *et al*.,

      Defendants.
_____/

## ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF ## 168, 169, 170), (2) ALLOWING PLAINTIFFS TO FILE A FOURTH AMENDED COMPLAINT, AND (3) TERMINATING AS MOOT PLAINTIFFS' MOTION TO FILE A CORRECTED THIRD AMENDED COMPLAINT (ECF # 179)

In this complex putative class action, Plaintiffs Timothy Kerrigan, Lori Mikovich, and Ryan Valli allege that the Defendants, nearly 50 individuals and entities, many of which have overlapping ownership structures and contractual relationships, conned them into joining a fraudulent pyramid scheme. Plaintiffs filed this action in 2014 (*see* ECF #1), and the Court has previously issued two substantive opinions that resolved motions to dismiss Plaintiffs' initial Complaint (*see* ECF #54; 112 F.Supp.3d 580 (E.D. Mich. 2015)) and Plaintiffs' First Amended Complaint (*see* ECF #65; 2016 WL 892804 (E.D. Mich. Mar. 9, 2016)).[1]

_____

[1] A detailed recitation of Plaintiffs' primary allegations can be found in the Court's earlier opinions.

On March 8, 2017, Plaintiffs filed a Third Amended Complaint, the operative pleading in this action. (*See* ECF #131.) The parties have now filed four motions with respect to the Third Amended Complaint:

- Defendants Ropart Asset Management, LLC, Ropart Asset Management Fund, LLC, Ropart Asset Management Fund II, LLC, Rock Ridge Asset Management Company, LLC, the Living Trust dated 9/30/91 f/b/o Robert B. Goergen, and HashTag One, LLC have moved to dismiss Count I (violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*) and Count II (conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*) of the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and Count VII (unjust enrichment) and Count IX (civil conspiracy) under Federal Rule of Civil Procedure 12(b)(1) (*see* ECF #170);

- Defendants Robert Goergen, Sr. and Todd Goergen have moved to dismiss Count I of the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (*see* ECF #169);

- Defendants Jason O'Toole, Kyle Pacetti, Jr., Prospex Automated Wealth Systems, Inc., and Gooder, LLC have moved to dismiss Count I of the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6); O'Toole and Pacetti have moved to dismiss Count III (violations of 5 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a) and (c)) of the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6); and Defendants A Berry Good Life, Inc., ArriveBy25, Inc., BAM Ventures, Inc., BeachLifestyle Enterprises, LLC, Michael Craig, Aaron Fortner, Freedom Legacy, LLC, Gooder, LLC, Got Heart Global, Inc., Rachel Jackson, Jaketrz, Inc., Holley Kirkland, Timothy Kirkland, Anthony Lucero, Rhonda Lucero,

M-Power Path, Inc., Kevin Merriweather, Mojos Legacy, LLC, Network Dynamics America Corp., Jason O'Toole, Jason O'Toole International Holdings, Inc., OCD Marketing, Inc., Kyle Pacetti, Jr., Lori Petrilli, Power Couple, Inc., Prospex Automated Wealth Systems, Inc. Red Letters, LLC, Residual Marketing, Inc., Gary J. Reynolds, Jake Trzcinski, Frank Varon, Wealth Builder International LLC, Tara Wilson, and 9248-2587 Quebec, Inc. have moved to dismiss Count II of the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(b) and Count VII of the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(1)[2] (*see* ECF #168); and

- Plaintiffs have moved to file a "corrected" Third Amended Complaint, which includes certain revisions to the factual allegations Plaintiffs have made (*see* ECF #179)

The Court held a hearing on these motions on December 8, 2017. For the reasons stated in this Order, the Court **GRANTS** Defendants' motions to dismiss. In addition, the Court will allow Plaintiffs to file a Fourth (and final) Amended Complaint subject to the requirements set forth below. Finally, the Court **TERMINATES AS MOOT** Plaintiffs' motion to file a corrected Third Amended Complaint.

---

[2] Defendant Power Couple has not moved to dismiss Count VII (Plaintiffs' unjust enrichment claim).

# I

In the context of resolving the prior motions to dismiss, the Court told Plaintiffs that "[a]ssessing the sufficiency" of their allegations was "challenging because many of [their] [] allegations [were] overly broad and imprecise." (ECF #54 at Pg. ID 915; 122 F.Supp.3d at 600-01.) More specifically, the Court rejected Plaintiffs' attempts "lump" Defendants "together" using defined terms "without specifically identifying which of the Defendants engaged in which of the conduct alleged." (*Id.*) The Court told Plaintiffs that their "imprecise" use of defined terms was "particularly confusing because it [was] obvious from Plaintiffs' own narrative that Plaintiffs [did] not – and [could] not – [have] literally [meant] that *each* Defendant engaged in the alleged acts." (*Id.*; emphasis in original.)

In the Third Amended Complaint, Plaintiffs again "lump[ed] together" various Defendants through the use of imprecise defined terms. And Plaintiffs also introduced a new pleading device in which they treated an individual and a corporate entity with which the individual is affiliated as a single unit. In this device, Plaintiffs combined entities and affiliated individuals into a single defined term that included both the name of the individual and the name of an entity divided by a slash (hereinafter, the "person/entity pleading device"). The use of these imprecise definitions and pleading devices has made it unnecessarily difficult (if not impossible in some instances) for the Court and the Defendants to determine

which allegations Plaintiffs have made against which Defendants.

Plaintiffs respond that each time they used a defined term or the person/entity pleading device, they literally meant that "each of those Defendants was actually engaged in the alleged act." (Resp. to Mot. to Dismiss, ECF #172 at Pg. ID 7422.) But that cannot be true. Consider the following examples:

- In paragraph 17 of the Third Amended Complaint, Plaintiffs defined the term "RAM" to include Defendants Ropart Asset Management, LLC, Ropart Asset Management Fund, LLC, Ropart Asset Management Fund II, LLC, and Rock Ridge Asset Management Company, LLC. (Third Am. Compl. at ¶17, ECF #131 at Pg. ID 6608.) Plaintiffs then alleged that "RAM" was, among other things, "an investor in ViSalus" and a "lender of funds" to ViSalus. (*Id.*) But, Plaintiffs acknowledge that two of the entities included in the definition of "RAM" – Ropart Asset Management, LLC and Rock Ridge Asset Management Company, LLC – only "manage[d] the investment[s]" *other* Defendants made in ViSalus. (Pla.s' Resp. Br., ECF #171 at Pg. ID 7303.)

- In paragraph 134, Plaintiffs alleged that "RAM and its executives … provided almost daily advisory and management services to the ViSalus operation." (Third Am. Compl. at ¶134, ECF #131 at Pg. ID 6674.) But Plaintiffs acknowledge that two of the entities in "RAM" – Ropart Asset Management Fund I, LLC and Ropart Asset Management Fund II, LLC – only "invested in and provided funding to ViSalus." (Pla.s' Resp. Br., ECF #171 at Pg. ID 7306.)

- In paragraph 223, Plaintiffs alleged that Todd Goergen/RAM/Hashtag One "silently invest[ed] in ViSalus when he [sic] knew or reasonably

should have known that ViSalus was operating as a pyramid scheme." (Third Am. Compl. at ¶223, ECF #131 at Pg. ID 6783.) But, as noted above, Plaintiffs recognize that only two of the entities in the defined term "RAM" – Defendants Ropart Asset Management Fund I, LLC and Ropart Asset Management Fund II, LLC – invested in ViSalus. (Pla.s' Resp. Br., ECF #171 at Pg. ID 7303.) In addition, Plaintiffs recognize that HashTag One did not invest in ViSalus but, instead, *received* payments that allegedly "diverted funds away from the ViSalus operation." (*Id.* at Pg. ID 7314.) It is further unclear, due to the use of the person/entity pleading device, if Todd Goergen allegedly took these actions in his personal capacity, in his capacity as shareholder or manager of RAM and HashTag One, or in some combination of those capacities.

- In paragraph 271, Plaintiffs alleged that "Todd Goergen/RAM/HashTag One" "le[nt] his name and credibility as a CEO of a publicly-traded, legitimate business by appearing at conventions, and giving 'interviews' extolling ViSalus's future in front of potential distributors." (Third Am. Compl. at ¶271, ECF #131 at Pg. ID 6809.) This paragraph further alleges that Todd Goergen/RAM/HashTag One "serv[ed] on [ViSalus's] Board of Directors and ma[de] public statements of support and confidence that ViSalus was a legitimate seller of weight-loss products." (*Id.*) It is unclear, due to the use of the person/entity pleading device, if Todd Goergen allegedly took these actions in his personal capacity, in his capacity as shareholder or manager of RAM and HashTag One, or in some combination of those capacities.

- In paragraph 19, Plaintiffs defined the term "Robert Goergen, Sr." to include both Robert Goergen, Sr. personally *and* Robert's trust, Defendant Living Trust dated 9/30/1991 f/b/o Robert B. Goergen (the "Trust"). (*See*

6

*id.* at ¶19, Pg. ID 6609.)   In paragraph 132, Plaintiffs alleged that the defined term Robert Goergen, Sr. is a "sophisticated business [person]." (*Id.* at ¶132, Pg. ID 6673.)   That paragraph further alleged that Robert Goergen, Sr. was "involved in ViSalus." (*Id.*)   In addition, in paragraph 136, Plaintiffs alleged that Robert Goergen, Sr. "had a supporting role and provided financial advice" to ViSalus. (*Id.* at ¶136, Pg. ID 6675.)   It is not possible for the Trust to be a "sophisticated business person."   In addition, Plaintiffs acknowledge that the Trust only "provided significant funding to ViSalus through its interest in RAM."[3] (Pla.s' Resp. Br., ECF #171 at Pg. ID 7304.)   Therefore, the Plaintiffs own submissions suggest that they did not really mean to allege that the Trust directly provided advice to, or was actively involved in, ViSalus.

- In paragraph 211, Plaintiffs alleged that, with other Defendants, "Robert Goergen Sr. … directly authored and/or approved of the dissemination of the ViSalus Compensation Plan that was made part of the IP distribution rights purchased by the Plaintiffs." (Third Am. Compl. at ¶211, ECF #131 at Pg. ID 6776-77.)   But, the term "Robert Goergen, Sr." included the Trust, and, as noted above, Plaintiffs acknowledge that the Trust's participation was limited to investing capital in investment funds that themselves invested in ViSalus. (Pla.s' Resp. Br., ECF #171 at Pg. ID 7304.)

---

[3] This allegation quoted above in which Plaintiffs allege that the Trust invested in "RAM" further illustrates the confusion created by Plaintiffs' use of defined terms. Plaintiffs have acknowledged that the Trust *did not invest* in all of the entities that comprise the defined term "RAM."   They have explained that it invested in Ropart Asset Management Fund I, LLC and/or Ropart Asset Management Fund II, LLC. (*See* Resp. to Mot. to Dismiss, ECF #171 at Pg. ID 7304.)

- In paragraph 24, Plaintiffs introduced the defined term "Corporate Defendants," which appears to be a term that refers "collectively" to Defendants ViSalus, Ropart Asset Management, LLC, Ropart Asset Management Fund, LLC, Ropart Asset Management Fund II, LLC, Rock Ridge Asset Management Company, LLC, Robert Goergen, Sr., the Trust, Todd Goergen, Ryan Blair, Nick Sarnicola, Blake Mallen, and HashTag One. (Third Am. Compl. at ¶24, ECF #131 at Pg. ID 6613.) This defined term may also include Defendants OCD Marketing, Inc., Power Couple, Inc., ArriveBy25, Inc., and BAM Ventures, Inc. Plaintiffs then used the term "Corporate Defendants" throughout the Third Amended Complaint where they could not have plausibly or possibly meant to include all of the Defendants that are included in that term. For example, in paragraph 153, Plaintiffs alleged that the Corporate Defendants "met regularly through board meetings, strategy sessions, monthly sales reviews, and in Blyth board meetings, to discuss the precise numbers of new recruits brought in each month, which promoters were recruiting the most, which promoters sold the most number of ESS kits, and so on." (*Id.* at ¶153, Pg. ID 6684.) But, as noted above, Plaintiffs acknowledge that at least some of the entities included in the defined term "Corporate Defendants" (including the Trust, Ropart Asset Management I, LLC, and Ropart Asset Management II, LLC) were merely investors in ViSalus. (Pla.s' Resp. Br., ECF #171 at Pg. ID 7304-06.)

- In paragraph 223, Plaintiffs made repeated allegations that certain grouped Defendants, such as "Fortner/Residual Marketing/GHGI," "Wilson/ABGL," "O'Toole/Prospex/O'Toole Int'l Holdings," and "Petrilli/9248," "appear[ed] in print and electronic promotions to give legitimacy to the idea that anyone could achieve six- and seven- figure

success in the 'business opportunity' when he/she knew that their own success and financial payments were the result of hidden arrangements that would not be made available to persons who were being recruited." (Third Am. Compl. at ¶223, ECF #131 at Pg. ID 6786-87.)  These allegations appear to refer to the actions by the individual Defendants, not the entity Defendants, and Plaintiffs have not pleaded any facts that could plausibly establish either that the entities made these appearances or that the individuals were appearing on behalf of the entities.  It is further unclear from the allegations in the Third Amended Complaint if the individuals, entities, or both were promoters/distributors with ViSalus and had entered into agreements with ViSalus.  Finally, to the extent these paragraphs allege that the individuals were "performing recruiting acts on behalf of ViSalus," it is unclear whether these acts were undertaken by the individual Defendant, the entity, or the individual on behalf of the entity.

As a result of these allegations, and others, it is again not reasonably possible for the Court to "appropriately evaluate" the "sufficiency [of the allegations] against each individual Defendant." (ECF #54 at Pg. ID 918; 122 F.Supp.3d at 601.) Accordingly, the Court will **GRANT** Defendants' motions to dismiss and **DISMISS** the Third Amended Complaint.

However, the Court will allow Plaintiffs to file a Fourth Amended Complaint subject to the following requirements.  In such a pleading:

- Plaintiffs shall not use *any* defined terms to refer to more than one

Defendant[4];

- Plaintiffs shall not group together more than one Defendant using the person/entity pleading device; and

- Plaintiffs shall not add any new Defendants in the Fourth Amended Complaint (other than Michael Gehart, if appropriate) nor may they add any new claims in that pleading.

Plaintiffs shall file any Fourth Amended Complaint within 30 days of this Order.[5]  After Plaintiffs file the Fourth Amended Complaint, the Court will schedule a telephonic status conference with counsel for all parties to discuss next steps in this action.  Defendants shall not answer or respond in any way to the Fourth Amended Complaint unless and until ordered to do so by the Court following that telephonic conference.

## II

Even though the Court has decided to dismiss the Third Amended Complaint because of the pleading deficiencies identified above, the Court will address some of the substantive arguments raised in the pending motions in order to provide the parties with additional guidance.

---

[4] If Plaintiffs wish to use a defined term to refer to a single Defendants with a long name, they may do so.

[5] The Court does not intend to allow Plaintiffs to file any additional amendments after it files the Fourth Amended Complaint.

**A**

Defendants Gooder, LLC and Prospex Automated Wealth Systems, Inc. argue that Plaintiffs' RICO claim fails because Plaintiffs have not sufficiently identified at least two predicate acts that Gooder or Prospex committed. (*See* Mot. to Dismiss, ECF #168 at Pg. ID 7053-54.) In the Third Amended Complaint, Plaintiffs alleged that Gooder and Prospex committed the RICO predicate acts of wire fraud based on certain emails that were sent between various ViSalus promoters. (*See* Third Am. Compl. at Pg. ID 6763, 6755.) Gooder and Prospex insist these allegations are insufficient because they never sent or received the emails in question. (*See* Mot. to Dismiss, ECF #168 at Pg. ID 7053-54.)

As the Court has previously held, in order to state a cognizable RICO claim against a particular defendant, a plaintiff "must allege that the defendant actually committed two predicate acts." (ECF #54 at Pg. ID 929; 112 F.Supp.3d at 606.) However, where the alleged predicate acts are mail or wire fraud, a plaintiff need not allege that a defendant personally used the mails or wires. Indeed, "[a] defendant may commit mail [or wire] fraud even if he personally has not used the mails [or wires]." *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997). *See also United States v. Vanover*, 815 F.2d 81, at *1 (6th Cir. 1987) (Table) ("The mail and wire fraud statutes do not require [a plaintiff to allege] that [a] defendant himself use[d] the wire or the mail . . . ."). "It is sufficient to show that [a defendant] caused

mailings or wire to be used." *Vanover*, 815 F.2d at *1 (internal quotation omitted). And a defendant causes the mail or wires to be used when the defendant knows "that use of the mails [or wires] would follow in the ordinary course of business, or [when a] reasonable person would have foreseen use of the mails [or wire]." *United States v. Kennedy*, 714 F.3d 951,959 (6th Cir. 2013); *Frost*, 125 F.3d at 354 (same).[6] Therefore, Plaintiffs are not required to plead that a Defendant personally sent or received an email or document in order to state a viable RICO claim against that Defendant. Instead, Plaintiffs need only plead (in addition to the other required elements) specific facts showing that the Defendant used the mails or wires or caused the mails or wires to be used.

## B

The Trust argues that Plaintiffs' RICO and RICO conspiracy counts fail because, among other things, "[a]t best, the [Third Amended Complaint] alleges that [the Trust] [was a] passive investor[]" in entities other than ViSalus. (Mot. to Dismiss, ECF #170 at Pg. ID 7278.) Thus, the Trust insists that Plaintiffs have not

---

[6] *See also In re ClassicStar Mare Lease Litig.*, 2011 WL 3608456, at *10 (E.D. Ky. Aug. 15, 2011) ("Neither 18 U.S.C. §§ 1341 nor 1343, the mail and wire fraud statutes, require that the defendant personally make the relevant communication, only that his actions cause another to use the mail or wires. To satisfy the particularity requirement, a plaintiff need only allege that each RICO defendant participated in a scheme to defraud knowing or having reason to anticipate the use of the mail or wires would occur and that each such use would further the fraudulent scheme.").

sufficiently alleged that it participated in the alleged RICO enterprise. The Court agrees that the Third Amended Complaint does not sufficiently allege that the Trust participated in the alleged RICO enterprise.[7]

In order to plead sufficient participation, a RICO plaintiff must allege that a defendant "participate[d]" in the "enterprise's affairs … by either making decisions on behalf of the enterprise or by knowingly carrying [those decisions] out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). Plaintiffs do not appear to have alleged any facts in the Third Amended Complaint that the Trust invested any capital in ViSalus directly or that the Trust had any direct involvement with ViSalus at all. Instead, Plaintiffs alleged only that (1) the Trust invested capital in Defendants Ropart Asset Management Fund I, LLC and Ropart Asset Management Fund II, LLC (2) those management funds later invested capital in ViSalus, and (3) the Trust "received a significant portion of a $50+ million payout from the ViSalus operation in 2008-2012." (Third Am. Compl. at ¶19, ECF #131 at Pg. ID 6609.) Nor have Plaintiffs alleged any specific facts that could plausibly establish that at the time the Trust invested capital in the Ropart Fund entities that the Trust knew

_____

[7] A defendant such as the Trust may be liable under 18 U.S.C. § 1962(d) for entering into a RICO conspiracy even if the defendant did not personally participate in the affairs of the RICO enterprise through a pattern of racketeering activity. *See*, *e.g.*, *United States v. Driver*, 535 F.3d 424, 432 (6th Cir. 2008) ("To prove a RICO conspiracy charge, it is not necessary to show that the defendant committed two predicate acts himself or agreed to commit two predicate acts himself.").

13

that those entities would invest that capital in ViSalus, that the Trust intended for the capital it invested in the Ropart Fund entities to be invested in ViSalus, or that the Trust had any control over the capital once it was invested with the Ropart Fund entities. And while Plaintiffs alleged in the Third Amended Complaint that Robert Goergen, Sr. "own[s] and control[s]" the Trust and both Ropart Fund entities and that Todd Goergen "manage[d]" those entities (*id.* at ¶17, Pg. ID 6608), Plaintiffs have not alleged specific facts showing that either Robert Goergen, Sr. or Todd Goergen was acting on behalf of the Trust when the Ropart Fund entities decided to invest in ViSalus. Simply put, the allegations against the Trust appear too attenuated to plausibly establish that the Trust participated in the enterprise's affairs. *See Fowler*, 535 F.3d at 418. Plaintiffs may attempt to address the deficiencies identified above in their Fourth Amended Complaint.

## C

In the Third Amended Complaint, Plaintiffs claimed that Defendants ViSalus, Sarnicola, Blair, Mallen, Todd Goergen, and Robert Goergen, Sr. violated Section 10b of the Securities Exchange Act (5 U.S.C. § 78j(b)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5). (*See* Third Am. Compl. at ¶¶ 226-34, ECF #131 at Pg. ID 6792-96.) This claim rested on Plaintiffs' allegation that they read and/or relied on the ViSalus Compensation Plan. (*See, e.g., id.* at ¶10, 14, 15, Pg. ID 6603-07; alleging that Plaintiffs "relied" on

misrepresentations and omissions in the Compensation Plan). But Plaintiffs now concede that they did not necessarily read or rely on the Compensation Plan. Indeed, each of the named Plaintiffs testified at their depositions that they did not read or rely on the Compensation Plan. (*See* Kerrigan Dep. at 49, ECF #180-3 at Pg. ID 7895; Mikovich Dep. at 28, ECF #180-4 at Pg. ID 7901; Valli Dep. at 30-31, ECF #180-5 at Pg. ID 7907-08.)

Plaintiffs propose to cure this problem by filing a "corrected" Third Amended Complaint in which they seek to "clarify and correct factual allegations [in the Third Amended Complaint] … so that the alleged facts are better aligned with the testimony given by the named [P]laintiffs." (ECF #179 at Pg. ID 7584.) For example, in the proposed "corrected" Third Amended Complaint, Plaintiffs allege that Plaintiff Timothy Kerrigan became aware of the Compensation Plan "*and/or the business opportunity advertised by ViSalus*," and that he became aware of the Plan or business opportunity at the ViSalus presentations he attended "*and/or through explanation of the pertinent portions [of the plan] by others*." (ECF #179-2 at ¶10, Pg. ID 7609; emphasis added.) Likewise, Plaintiffs allege in the proposed "corrected" Third Amended Complaint that Plaintiff Lori Mikovich "initially relied upon explanations of the Compensation Plan *and/or the ViSalus business opportunity*."[8] (*Id.* at Pg. ID 7610; emphasis added.) The proposed "corrected"

_____

[8] Plaintiffs also seek to now allege that "[t]he pertinent portions of the Compensation

Third Amended Complaint also adds the following sentences at paragraphs 226 and

228:

> 226. The Defendants conveyed their misrepresentations or omissions contained in the Compensation Plan and/or advertisements to the plaintiffs and the class through a nationwide marketing system whereby ViSalus agents, employees, and/or IPs would represent to recruits that ViSalus and its Compensation Plan was a legitimate, legal, business opportunity offering a reasonable chance to legally make money, but omitted that the business was in fact an illegal pyramid scheme.
>
> . . .
>
> 228. In addition, the Plaintiffs and other class members *received, either by reading, viewing, or hearing, and relied upon the misrepresentations or misrepresentations by omission of pertinent portions of the Compensation Plan and/or ViSalus business opportunity* which were presented to Plaintiffs and class members by other IPs and/or ViSalus agents or employees….

(*Id.* at ¶¶ 226, 228, Pg. ID 7613-14; emphasis added.)

The Rule 10b-5(b) claim in the proposed "corrected" Third Amended

Complaint is not sufficiently pleaded.  In order to state a viable claim under Rule

10b-5(b), Plaintiffs must identify, among other things, (1) the specific statements

upon which they relied, (2) the portion of the statement that was false or the omitted

---

Plan were initially presented to Mikovich by another IP, in her case, Kerrigan." (ECF #179-2 at Pg. ID 7610.)  However, it is difficult to understand how Kerrigan could possibly have presented the "pertinent portions" of that plan when he testified he never read the Plan and never "walk[ed] through" the plan with anyone. (Kerrigan Dep. at 49, ECF #180-3 at Pg. ID 7895.)

facts that rendered the statement false, and (3) the person or entity who made the statement. *See Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); 15 U.S.C. § 78u-4(b). Plaintiffs' proposed revisions to their factual allegations do not satisfy this standard. Their proposed revisions do not clearly identify a specific statement on which Plaintiffs relied. Some of the proposed revisions also include so many qualifiers and alternatives as to render them almost unintelligible. Indeed, some of the proposed revised allegations stretch the concept of alternative pleading beyond its breaking point.[9] If Plaintiffs seek to assert a Rule 10b-5(b) claim in the Fourth Amended Complaint, they must satisfy the standard identified above and all other requirements of a Rule 10b-5(b) claim.

**D**

Many of the Defendants argue that Plaintiffs' unjust enrichment claim fails because Plaintiffs do not have standing to bring that claim against each Defendant. (*See* Mot. to Dismiss, ECF #170 at Pg. ID 7282.) More specifically, these Defendants say that Plaintiffs "have not pleaded facts that plausibly establish that each [Defendant] was unjustly enriched at Plaintiffs' expense." (*Id.*) These

---

[9] The Court cautions Plaintiffs concerning their use of "and/or" allegations in the Fourth Amended Complaint. As noted above, Plaintiffs' use of such allegations in the Third Amended Complaint rendered some of Plaintiffs' assertions fatally indefinite and unreasonably difficult to understand. If Plaintiffs choose to include "and/or" allegations in the Fourth Amended Complaint, they should take care not to create similar problems.

Defendants further insist that Plaintiffs have not and cannot allege that any of the Defendants, except for Defendant Power Couple, Inc., "received any money from the Plaintiffs." (*Id.*)  In support of this argument, Defendants have submitted the affidavit of Zorica Bosev, the Director of Commissions and Global Support for ViSalus. (*See* Bosev Supplemental Aff., ECF #177-1.)  Bosev swears under oath that "none of the named Defendants were upline from any of the three [named] Plaintiffs, and none of the Defendants received any bonuses or commissions from the Plaintiffs' enrollment fees, except for Defendant Power Couple." (*Id.* at ¶5, Pg. ID 7565.)

The Court agrees with Defendants that each named Plaintiff must have individual standing to pursue an unjust enrichment claim. To establish such standing in the Fourth Amended Complaint, each named Plaintiff must plead facts that could plausibly establish that each Defendant named in the unjust enrichment count was unjustly enriched at that Plaintiff's expense.

Next, if Plaintiffs do sufficiently plead an unjust enrichment claim in the Fourth Amended Complaint, the Court will allow Plaintiffs to conduct limited jurisdictional discovery in order to allow Plaintiffs to test the veracity of Ms. Bosev's affidavit. *See*, *e.g.*, *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005) (concluding, after jurisdictional discovery, that Defendants' motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

should be denied); *In re MPF Holdings U.S. LLC*, 701 F.3d 449, 457 (5th Cir. 2012) ("[S]ome jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact."); *Massachusetts School of Law at Andover, Inc. v. American Bar Assoc.*, 107 F.3d 1026, 1042 (3d Cir. 1997) (stating "rule" that when subject-matter jurisdiction is called into doubt, "jurisdictional discovery should be allowed unless the plaintiff's claim is clearly frivolous") (internal quotations omitted). The Court will rule on the subject matter jurisdiction question following the completion of this limited discovery.

## E

Defendants Todd Goergen and Robert Goergen, Sr. argue that Plaintiffs' RICO claim fails because Plaintiffs have failed to plead that Todd and Robert, Sr. each committed at least two predicate acts of mail fraud and/or wire fraud. (*See* Mot. to Dismiss, ECF #169.) The Goergens insist that the only predicate acts Plaintiffs have identified are the sending of various emails and documents and that Plaintiffs have not sufficiently pleaded that the Goergens either sent the emails or documents in question or caused them to be sent. (*See* Third Amended Compl. at Pg. ID 6720-6723.)

At the December 8, 2017, hearing, counsel for Plaintiffs told the Court that if it granted Plaintiffs the opportunity to amend the Third Amended Complaint, Plaintiffs could identify specific emails that the Goergens sent or caused to be sent

as part of the alleged RICO enterprise. (*See* 12/8/2017 Hearing Tr. at 125-16, ECF #193 at Pg. ID 8213-14.) Because the Court will allow Plaintiffs to file a Fourth Amended Complaint, it will allow Plaintiffs to add the allegations with respect to the Goergens that their counsel identified at the hearing in that pleading (or to plead sufficient facts showing that the Goergens caused the mails or wires to be used).

### III

For the reasons stated above, **IT IS HEREBY ORDERED** that:

- Defendants' motions to dismiss (ECF ## 168, 169, and 170) are **GRANTED**;

- Plaintiffs' motion to file a corrected Third Amended Complaint (ECF #179) is **TERMINATED AS MOOT**;

- Plaintiffs may file a Fourth Amended Complaint no later than 30 days from the date of this Order; and

- Defendants shall not answer or otherwise respond to a Fourth Amended Complaint until ordered to do so by the Court following a telephonic status conference that the Court will schedule after Plaintiffs file the Fourth Amended Complaint.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: January 24, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 24, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764